# No. 13-3963-CV

## In The United States Court Of Appeals
## For The Second Circuit

JEFFREY LLOYD, On Behalf of Himself and Those Similarly Situated,
Susan Hyman, Lawrence R. Kaufmann, Alan B. Krichman, Graeme Patey, Peter Piccoli,
Scott Vanhoogstraat, Joshua Strouse, Jeffrey Lammert, Jennifer Zaat-Hetelle,
Robert M. Johnson, and Samir Makar,

*Plaintiffs-Appellees*,

Ellen Szymkiewicz, On Behalf of Herself and Those Similarly Situated,

*Plaintiff*,

v.

J.P. MORGAN CHASE & CO. and CHASE INVESTMENT SERVICES CORP.,

*Defendants-Appellants.*

On Appeal From The United States District Court
For The Southern District Of New York
Case No. 11-Cv-09305-LTS-HBP

## JOINT APPENDIX

Rachel M. Bien
Deirdre Aaron
Adam T. Klien
Ossai Miazad
OUTTEN & GOLDEN LLP
3 Park Avenue
29th Floor
New York, NY 10016
T.  212.245.1000
F.  646.509.2079

*Attorneys for Appellees*

Sam S. Shaulson
Thomas A. Linthorst
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
T.  212.309.6718
F.  212.309.6001

*Attorneys for Appellants JPMorgan Chase & Co. and J.P. Morgan Securities, LLC* (as successor in interest to Chase Investment Services Corp.)

# INDEX OF JOINT APPENDIX

| | |
|---|---|
| Docket | App.1 |
| Notice Of Appeal, filed Oct. 8, 2013 (ECF No. 125). | App.31 |
| Memorandum Order, filed Sept. 9, 2013 (ECF No. 116). | App.33 |
| First Amended Class Action Complaint, filed Apr. 19, 2012 (ECF No. 31). | App.48 |
| Notice Of Motion To Compel Arbitration And Dismissal Or, Alternatively, To Stay Claims By Plaintiff Laurence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman And Jeffrey Lammert, filed Jan. 14, 2013 (ECF No. 65). | App.66 |
| Declaration of Thomas A. Linthorst In Support Of Defendants' Motion To Compel Arbitration And Dismissal Or, Alternatively, To Stay Claims By Plaintiff Laurence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman And Jeffrey Lammert, with Exhibits 1-3, filed Jan. 14, 2013 (ECF No. 70). | App.68 |
| Declaration of Rachel Bien In Opposition To Defendants' Motions To Compel Arbitration and Dismiss Or, Alternatively, To Stay Claims By Plaintiff Lawrence Kaufman And Certain Opt-In Plaintiffs, with Exhibits G-I, filed Mar. 29, 2013 (ECF No. 79). | App.109 |

Case 13-3963, Document 47, 01/30/2014, 1146547, Page3 of 177

APPEAL, CASREF, ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:11-cv-09305-LTS-HBP

Lloyd et al v. J.P. Morgan Chase & Co. et al
Assigned to: Judge Laura Taylor Swain
Referred to: Magistrate Judge Henry B. Pitman
Related Case: 1:12-cv-02197-LTS-HBP
Cause: 29:201 Denial of Overtime Compensation

Date Filed: 12/19/2011
Jury Demand: Plaintiff
Nature of Suit: 710 Labor: Fair
Standards
Jurisdiction: Federal Question

| Date Filed | # | clear | Docket Text |
|---|---|---|---|
| 12/19/2011 | 1 | 0.9 MB | COMPLAINT against Chase investment Services Corp., J.P. Morgan Chase & Co.(Filing Fee $ 350.00, Receipt Number 24840)Document filed by Jeffrey Lloyd, Ellen Szymkiewicz.(js) (Entered: 12/20/2011) |
| 12/19/2011 | | | SUMMONS ISSUED as to Chase investment Services Corp., J.P. Morgan Chase & Co. (js) (Entered: 12/20/2011) |
| 12/19/2011 | | | Case Designated ECF. (js) (Entered: 12/20/2011) |
| 12/22/2011 | 2 | 412.0 KB | NOTICE OF APPEARANCE by Elizabeth Hartley Wagoner on behalf of Jeffrey Lloyd, Ellen Szymkiewicz (Wagoner, Elizabeth) (Entered: 12/22/2011) |
| 12/22/2011 | 3 | 420.2 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE 29 U.S.C § 216(b). Document filed by Susan Hyman.(Wagoner, Elizabeth) (Entered: 12/22/2011) |
| 12/27/2011 | | | CASE DECLINED AS NOT SIMILAR. Case referred as similar to 06-CV-15305 and declined by Judge George B. Daniels and returned to wheel for assignment. (pgu) (Entered: 12/27/2011) |
| 12/27/2011 | 4 | 31.1 KB | NOTICE OF CASE ASSIGNMENT to Judge Laura Taylor Swain. Judge Unassigned is no longer assigned to the case. (pgu) (Entered: 12/27/2011) |
| 12/27/2011 | | | Magistrate Judge Henry B. Pitman is so designated. (pgu) (Entered: 12/27/2011) |
| 12/29/2011 | 5 | 411.9 KB | NOTICE OF APPEARANCE by Rachel Megan Bien on behalf of Susan Hyman, Jeffrey Lloyd, Ellen Szymkiewicz (Bien, Rachel) (Entered: 12/29/2011) |
| 01/03/2012 | 6 | 416.0 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA, 29 U.S.C. 216b. Document filed by Lawrence R. Kaufmann.(Wagoner, Elizabeth) (Entered: 01/03/2012) |

**App.1**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page4 of 177

| 01/09/2012 | 7 | 0.5 MB | SUMMONS RETURNED EXECUTED. J.P. Morgan Chase & Co. served on 12/30/2011, answer due 1/20/2012. Service was accepted by MARA VELASCO. Document filed by Lawrence R. Kaufmann; Jeffrey Lloyd; Ellen Szymkiewicz; Susan Hyman. (Wagoner, Elizabeth) (Entered: 01/09/2012) |
|---|---|---|---|
| 01/09/2012 | 8 | 0.5 MB | SUMMONS RETURNED EXECUTED. Chase investment Services Corp. served on 12/30/2011, answer due 1/20/2012. Service was accepted by MARA VELASCO. Document filed by Lawrence R. Kaufmann; Jeffrey Lloyd; Ellen Szymkiewicz; Susan Hyman. (Wagoner, Elizabeth) (Entered: 01/09/2012) |
| 01/12/2012 | 9 | 40.9 KB | ORDER FOR INITIAL PRETRIAL CONFERENCE: It is hereby ORDERED that a pre-trial conference will be held in the above-captioned matter on March 15, 2012 at 2:00p.m. in Courtroom No. 11C, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007.ORDERED that counsel for Plaintiff(s) must serve a copy of this Initial Conference Order within fourteen (14) calendar days following the date of this order, on each Defendant that has already been served with the summons and complaint, that a copy of this Initial Conference Ordermust be served with any subsequent process that brings in additional parties, and that proof of such service must be filed promptly with the Court. IT IS SO ORDERED.Initial Conference set for 3/15/2012 at 02:00 PM in Courtroom 11C, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 1/11/2012) (ama) (Entered: 01/12/2012) |
| 01/17/2012 | 10 | 8.8 KB | NOTICE OF APPEARANCE by Thomas Anton Linthorst on behalf of Chase investment Services Corp., J.P. Morgan Chase & Co. (Linthorst, Thomas) (Entered: 01/17/2012) |
| 01/17/2012 | 11 | 77.0 KB | NOTICE OF APPEARANCE by Sam Scott Shaulson on behalf of Chase investment Services Corp., J.P. Morgan Chase & Co. (Shaulson, Sam) (Entered: 01/17/2012) |
| 01/18/2012 | 12 | 41.5 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Sam S. Shaulson dated 1/17/2012 re: Defendants' responsive pleading is currently due on January 20, 2012. If the Court grants this request for a thirty (30) day extension, Defendants' responsive pleading would be due February 19, 2012. ENDORSEMENT: The Request is granted. So Ordered. Chase investment Services Corp. answer due 2/19/2012; J.P. Morgan Chase & Co. answer due 2/19/2012. (Signed by Judge Laura Taylor Swain on 1/18/2012) (rdz) (Entered: 01/18/2012) |
| 02/03/2012 | 13 | 435.8 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A.. Document filed by Alan B. Krichman.(Wagoner, Elizabeth) (Entered: 02/03/2012) |
| 02/21/2012 | 14 | | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Sam S. Shaulson dated 2/17/12 re: Counsel for JPMorgan Chase & Co. and Chase Investment Services Corp request a brief extension of time, |

**App.2**

| | | | |
|---|---|---|---|
| | | 46.7 KB | until 2/27/12 to answer, move or otherwise respond to the complaint. ENDORSEMENT: The request is granted. Chase investment Services Corp. answer due 2/27/2012; J.P. Morgan Chase & Co. answer due 2/27/2012. (Signed by Judge Laura Taylor Swain on 2/17/2012) (mro) (Entered: 02/21/2012) |
| 02/27/2012 | 15 | 9.3 KB | **FILING ERROR - CORPORATE PARENT/OTHER AFFILIATE NOT ADDED -** RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Shaulson, Sam) Modified on 2/28/2012 (lb). (Entered: 02/27/2012) |
| 02/27/2012 | 16 | 35.4 KB | ANSWER to 1 Complaint. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Shaulson, Sam) (Entered: 02/27/2012) |
| 02/28/2012 | | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Sam Scott Shaulson to RE-FILE Document 15 Rule 7.1 Corporate Disclosure Statement,. ERROR(S): Corporate Parents were not added. Please re-file this document and when prompted: Are there any corporate parents or other affiliates?, select the YES radio button and enter the Corporate Parent(s) or Affiliate(s). (lb)** (Entered: 02/28/2012) |
| 02/28/2012 | 17 | 7.5 KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by J.P. Morgan Chase & Co.. (Shaulson, Sam) (Entered: 02/28/2012) |
| 02/28/2012 | 18 | 10.0 KB | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Banc One Capital Holdings, LLC for Chase investment Services Corp.. Document filed by Chase investment Services Corp..(Shaulson, Sam) (Entered: 02/28/2012) |
| 02/29/2012 | 19 | 9.1 KB | MOTION to Transfer Case. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) (Entered: 02/29/2012) |
| 02/29/2012 | 20 | 82.1 KB | MEMORANDUM OF LAW in Support re: 19 MOTION to Transfer Case.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 02/29/2012) |
| 02/29/2012 | 21 | 1.6 MB | DECLARATION of Thomas A. Linthorst in Support re: 19 MOTION to Transfer Case.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit 1 - Lloyd Complaint, # 2 Exhibit 2 - Lloyd Answer, # 3 Exhibit 3 - Alakozai First Amended Complaint, # 4 Exhibit 4 - Alakozai Second Amended Complaint, # 5 Exhibit 5 - Answer to Alakozai Second Amended Complaint, # 6 Exhibit 6 - 10-K Excerpts, # 7 Exhibit 7 - Form ADV) (Linthorst, Thomas) (Entered: 02/29/2012) |
| 03/05/2012 | 22 | | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 3/2/2012 re: Counsel for the Plaintiff writes to |

**App.3**

| | | | |
|---|---|---|---|
| | | 43.4 KB | request an extension of the deadline to oppose Defendants' motion to transfer to 3/30/2012 and Defendants reply to 4/13/2012. ENDORSEMENT: The foregoing requests are granted. (Responses due by 3/30/2012. Replies due by 4/13/2012.) (Signed by Judge Laura Taylor Swain on 3/5/2012) (ab) (Entered: 03/05/2012) |
| 03/09/2012 | 23 | 84.5 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A Linthorst dated 3/8/2012 re: Request for the Court to postpone the 3/15 pretrial conference. ENDORSEMENT: The conference is adjourned to 6/1/2012, at 10:00 am and the related deadlines are modified accordingly. (Initial Conference reset for 6/1/2012 at 10:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 3/9/2012) (cd) (Entered: 03/09/2012) |
| 03/13/2012 | 24 | 117.3 KB | Letter addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 3/12/2012 re: We represent JPMorgan Chase & Co. and Chase Investment Services Corp. ("CISC") (collectively, "Defendants") in the above matter. We write regarding Defendants' pending Motion to Transfer Venue. (Dkt. Nos. 19-21). Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(rdz) (Entered: 03/13/2012) |
| 03/30/2012 | 25 | 0.6 MB | MEMORANDUM OF LAW in Opposition re: 19 MOTION to Transfer Case.. Document filed by Susan Hyman, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lloyd, Ellen Szymkiewicz. (Bien, Rachel) (Entered: 03/30/2012) |
| 03/30/2012 | 26 | 0.9 MB | DECLARATION of Rachel Bien in Opposition re: 19 MOTION to Transfer Case.. Document filed by Susan Hyman, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lloyd, Ellen Szymkiewicz. (Attachments: # 1 Exhibit A)(Bien, Rachel) (Entered: 03/30/2012) |
| 04/11/2012 | 27 | 423.3 KB | NOTICE of Record of Party's Death. Document filed by Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lloyd, Ellen Szymkiewicz. (Wagoner, Elizabeth) (Entered: 04/11/2012) |
| 04/13/2012 | 28 | 38.3 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 4/11/2012 re: counsel for Defendants write to request that Defendants be permitted to file a reply that does not exceed twelve (12) pages. ENDORSEMENT: So Ordered. (Signed by Judge Laura Taylor Swain on 4/13/2012) (pl) (Entered: 04/13/2012) |
| 04/13/2012 | 29 | 169.1 KB | REPLY MEMORANDUM OF LAW in Support re: 19 MOTION to Transfer Case.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 04/13/2012) |
| 04/13/2012 | 30 | 3.4 MB | DECLARATION of Thomas A. Linthorst in Support re: 19 MOTION to Transfer Case.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit A - Adam T. Klein Letter Dated Feb. 21, 2012)(Linthorst, Thomas) (Entered: 04/13/2012) |
| 04/19/2012 | 31 | | FIRST AMENDED COMPLAINT amending 1 Complaint against |

**App.4**

| | | | |
|---|---|---|---|
| | | 1.4 MB | Chase investment Services Corp., J.P. Morgan Chase & Co. with JURY DEMAND.Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. Related document: 1 Complaint filed by Jeffrey Lloyd, Ellen Szymkiewicz.(cd) (mro). (Entered: 04/24/2012) |
| 05/03/2012 | 32 | 110.6 KB | ANSWER to 31 Amended Complaint,. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Shaulson, Sam) (Entered: 05/03/2012) |
| 05/30/2012 | 33 | 83.5 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 5/25/2012 re: Defendants respectfully request that the Court postpone the June 1st pre-trial conference and related conferring and reporting obligations until the Court rules on Defendants' Motion to Transfer this case to the Central District of California. ENDORSEMENT: The conference is adjourned to June 29, 2012, at 9:45 a.m. ( Initial Conference set for 6/29/2012 at 09:45 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 5/29/2012) (jfe) (Entered: 05/30/2012) |
| 06/25/2012 | 34 | 17.2 KB | ORDER: The initial pretrial conference scheduled for June 29, 2012, is hereby adjourned to Thursday, September 13, 2012, at 12:00 noon. ( Initial Conference set for 9/13/2012 at 12:00 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 6/25/2012) (pl) (Entered: 06/25/2012) |
| 07/13/2012 | 35 | 40.6 KB | STIPULATION AND ORDER REGARDING SUBSTITUTION OF OPT-IN PLAINTIFF ELLEN SZYMKIEWICZ'S EXECUTOR: IT IS HEREBY STIPULATED AND AGREED, by and between counsel for Plaintiffs and Defendants, that: 1. Plaintiffs' contemplated motion to substitute Plaintiff Szymkiewicz's husband, Joseph Szymkiewicz, as her representative in this action, is due on or before September 10, 2012; 2. Defendants reserve their right to oppose Plaintiffs' motion for substitution. ( Motions due by 9/10/2012.) (Signed by Judge Laura Taylor Swain on 7/13/2012) (ja) (Entered: 07/13/2012) |
| 08/14/2012 | 36 | 230.6 KB | MEMORANDUM ORDER re: 19 MOTION to Transfer Case, filed by Chase investment Services Corp., J.P. Morgan Chase & Co. Defendants have moved to transfer this action to the Central District of California, where a similar action is pending. The Court has reviewed thoroughly the parties' submission and, for the following reasons, Defendants' motion to transfer is denied. An initial pretrial conference is scheduled for Thursday, September 13, 2012 at 12:00 p.m. in Courtroom 11C. ( Initial Conference set for 9/13/2012 at 12:00 PM in Courtroom 11C, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 8/14/2012) (ja) (Entered: 08/14/2012) |
| 09/06/2012 | 37 | 85.3 KB | ENDORSED LETTER: addressed to Judge Laura Taylor Swain from Sam S. Shaulson dated 8/24/2012 re: For the reasons set forth above Defendants request that the Court postpone the September 13 pre-trial conferences and related conferring and reporting requirements until the Judicial Panel Rules on Plaintiff's MDI petition. ENDORSEMENT: |

**App.5**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page8 of 177

| | | The adjournment request is denied. So Ordered. (Signed by Judge Laura Taylor Swain on 9/6/2012) (js) (Entered: 09/07/2012) |
|---|---|---|
| 09/06/2012 | 38<br><br>44.6 KB | Letter addressed to Judge Laura Taylor Swain from Rachel Bien dated 8/29/2012 re: Counsel for the Plaintiffs write in response to Defendants' August 24. 2012letter, in which they ask the Court to adjourn the September 13, 2012 scheduling conference, further delaying the commencement of discovery in this case. Plaintiffs oppose their request. As Defendants indicated in their letter, Plaintiffs do not intend to file an MDL petition. Even if the Ciullo plaintiffs had contemplated filing a petition, they have not done so and thus there is no reason to adjourn the scheduling conference at this point. Document filed by Susan Hyman, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lloyd, Ellen Szymkiewicz.(js) (Entered: 09/07/2012) |
| 09/14/2012 | 39<br><br>49.1 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 9/12/2012 re: Request to adjourn the 9/13/2012 case management conference. ENDORSEMENT: The conferences are adjourned to 9/24/2012 at 2:30 pm. ( Case Management Conference reset for 9/24/2012 at 02:30 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 9/13/2012) (cd) (Entered: 09/14/2012) |
| 09/24/2012 | | Minute Entry for proceedings held before Judge Laura Taylor Swain: Initial Pretrial Conference held on 9/24/2012. IPTC held and adj to 11/7/2012 at 3:00pm. (cd) (Entered: 09/26/2012) |
| 09/24/2012 | | Set/Reset Hearings: Initial Conference reset for 11/7/2012 at 03:00 PM before Judge Laura Taylor Swain. (cd) (Entered: 09/26/2012) |
| 10/15/2012 | 40<br><br>8.8 KB | **FILING ERROR - NOT ALL CORPORATE PARENTS/OTHER AFFILIATES WERE ADDED -** SUPPLEMENTAL RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent JPMorgan Chase & Co. for Chase investment Services Corp.. Document filed by Chase investment Services Corp..(Linthorst, Thomas) Modified on 10/16/2012 (lb). (Entered: 10/15/2012) |
| 10/16/2012 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Thomas Anton Linthorst to RE-FILE Document 40 Rule 7.1 Corporate Disclosure Statement,. ERROR(S): Not All Corporate Parents were added. Please re-file this document and when prompted: Are there any corporate parents or other affiliates?, select the YES radio button and enter the Corporate Parent(s) or Affiliate(s). (lb)** (Entered: 10/16/2012) |
| 10/17/2012 | 41<br><br>9.7 KB | SUPPLEMENTAL RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Other Affiliate Chase Investment Services Corp. for Chase investment Services Corp. Identifying Other Affiliate JPMorgan Securities, LLC for Chase investment Services Corp. Identifying Other Affiliate JPMorgan Broker-Dealer Holdings, Inc. for Chase investment Services Corp., J.P. Morgan Chase & Co.. Document |

**App.6**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page9 of 177

| | | | |
|---|---|---|---|
| | | | filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 10/17/2012) |
| 10/18/2012 | 42 | 1.0 MB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE 29 U.S.C.. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit Consent to Join)(Bien, Rachel) (Entered: 10/18/2012) |
| 10/23/2012 | 43 | 0.5 MB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A., 29 U.S.C. § 216. Document filed by Graeme Patey.(Bien, Rachel) (Entered: 10/23/2012) |
| 10/25/2012 | 44 | 0.9 MB | NOTICE OF APPEARANCE by Deirdre Anne Aaron on behalf of Susan Hyman, Lawrence R. Kaufmann, Jeffrey Lloyd, Graeme Patey (Aaron, Deirdre) (Entered: 10/25/2012) |
| 11/05/2012 | 45 | 26.9 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A., 29 U.S.C. § 216. Document filed by Peter Piccoli.(Aaron, Deirdre) (Entered: 11/05/2012) |
| 11/07/2012 | 46 | 42.6 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 11/6/12 re: Counsel writes on behalf of the parties to request a one week extension of the case management conference scheduled for 11/7/12. ENDORSEMENT: The conference is adjourned to November 16, 2012, at 9:45am. The parties are requested to file the initial conference report on the ECF system. ( Case Management Conference set for 11/16/2012 at 09:45 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 11/7/2012) (mro) Modified on 11/9/2012 (mro). (Entered: 11/08/2012) |
| 11/09/2012 | 47 | 2.6 MB | INITIAL REPORT OF PARTIES BEFORE PRETRIAL CONFERENCE. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd.(Aaron, Deirdre) (Entered: 11/09/2012) |
| 11/12/2012 | 48 | 183.3 KB | MOTION for Blair Joseph Robinson to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7968820. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Text of Proposed Order)(Robinson, Blair) (Entered: 11/12/2012) |
| 11/13/2012 | | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 48 MOTION for Blair Joseph Robinson to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7968820. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 11/13/2012) |
| 11/15/2012 | 49 | 135.0 KB | INITIAL REPORT OF PARTIES BEFORE PRETRIAL CONFERENCE. *Stipulation Supplemental to Initial Report* Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd.(Bien, Rachel) (Entered: 11/15/2012) |
| | | | |

**App.7**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page10 of 177

| 11/16/2012 | 50 | STIPULATION AND ORDER CONCERNING PRODUCTION OF ELECTRONICALLY STORED INFORMATION: All Parties are bound by and subject to the terms of this Order. The Parties agree each party shall bear the cost of its own production. In the event, however, a Party requests the production of cumulative or repetitive information or information that otherwise imposes an undue burden, or is from a source that is not reasonably accessible due to undue burden or cost, the producing Party may object. Upon objection, the Parties shall work in good faith to resolve the issue, for instance by producing samples or summaries of such documents. In the event the parties are unable to resolve theirdifferences, the parties may proceed consistent with the Federal Rules of Civil Procedure, including Rule 26(b)(2), and any applicable Local Rules. (Signed by Judge Laura Taylor Swain on 11/16/2012) (ft) (Entered: 11/16/2012) |
| --- | --- | --- |
|  |  | 274.8 KB |
| 11/16/2012 | 51 | PRE-TRIAL SCHEDULING ORDER: A copy of this Pre-Trial Scheduling Order shall be served with any subsequent process that brings in additional parties. Proof of such service must be filed promptly with the Court. All applications to amend pleadings or join parties, or amendments or joinders as of right must be made by 12/31/2012. All non-expert witness discovery in this matter must be completed by 4/30/2013. All expert witness discovery must be completed by 4/30/2013, and as further set forth in this order. Pretrial Conference set for 3/22/2013 at 11:45 AM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 11/16/2012) (mt) (Entered: 11/16/2012) |
|  |  | 58.9 KB |
| 11/16/2012 |  | Set/Reset Deadlines: Joinder of Parties due by 12/31/2012. (mt) (Entered: 11/26/2012) |
| 11/16/2012 |  | Minute Entry for proceedings held before Judge Laura Taylor Swain: Initial Pretrial Conference held on 11/16/2012. PTC Scheduling Order to follow. Next PTC is scheduled for 3/22/2013 at 11:45 am. (js) (Entered: 11/27/2012) |
| 11/19/2012 | 52 | **DOCUMENT REFERRED TO JUDGE FOR APPROVAL -** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, with prejudice against the defendant(s) Chase investment Services Corp., J.P. Morgan Chase & Co. pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Ellen Szymkiewicz.(Bien, Rachel) Modified on 11/20/2012 (ml). (Entered: 11/19/2012) |
|  |  | 1.8 MB |
| 11/20/2012 |  | **\*\*\*NOTE TO ATTORNEY - DOCUMENT REFERRED TO JUDGE FOR APPROVAL. Note to Attorney Rachel Bien Document 52 Stipulation of Voluntary Dismissal,, was referred to Judge Laura Taylor Swain for approval. (ml)** (Entered: 11/20/2012) |
| 11/26/2012 | 53 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A., 29 U.S.C. § 216. Document filed by Scott Vanhoogstraat. |
|  |  | 0.7 |

**App.8**

| | | | |
|---|---|---|---|
| | | MB | (Bien, Rachel) (Entered: 11/26/2012) |
| 11/27/2012 | 54 | 30.4 KB | STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41 (a)(1)(A)(ii) REGARDING CLAIMS OF ELLEN SZYMKIEWICZ: IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the parties, that: (1.) On April 11, 2012, Plaintiffs filed a Notice on Record of Plaintiff Ellen Szymkiewicz's Death, ECF No. 27; and (2.) The Claims of Ms. Szymkiewicz are hereby dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). SO ORDERED. (Signed by Judge Laura Taylor Swain on 11/27/2012) (ama) (Entered: 11/27/2012) |
| 11/30/2012 | 55 | 194.0 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A., 29 U.S.C. § 216. Document filed by Joshua Strouse.(Bien, Rachel) (Entered: 11/30/2012) |
| 12/04/2012 | 56 | 1.2 MB | CONSENT TO BECOME PARTY PLAINTIFF. Document filed by Jeffrey Lammert.(Aaron, Deirdre) (Entered: 12/04/2012) |
| 12/12/2012 | 57 | 92.9 KB | CERTIFIED TRUE COPY OF MDL ORDER FROM THE MDL PANEL DENYING TRANSFER....that the motion, pursuant to 28 U.S.C. 1407(c), for transfer of the action to the United States District Court - Southern District of New York, be, and the same hereby is denied. (Signed by MDL Panel on 12/11/2012) (sjo) (Entered: 12/12/2012) |
| 12/14/2012 | 58 | 20.8 KB | ORDER: In light of this decision, counsel in the Lloyd and Ciullo action are directed to confer and inform the Court by letter, no later than January 4, 2013, of the following. 1. Whether the above-captioned cases should be consolidated; and 2. Whether there is agreement on appointment of lead counsel in the above-captioned cases and, if not how counsel in the two cases propose to proceed. SO ORDERED. (Signed by Judge Laura Taylor Swain on 12/14/2012) (ama) Modified on 12/18/2012 (ama). (Entered: 12/14/2012) |
| 01/03/2013 | 59 | 42.3 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 1/2/13 re: Counsel for the Lloyd Plaintiffs writes jointly with counsel for Plaintiff Ciullo to request a brief extension of the 1/4/13 deadline to respond to the Court's 12/4/12 order until 1/11/13. ENDORSEMENT: The extension request is granted. (Signed by Judge Laura Taylor Swain on 1/2/2013) (mro) (Entered: 01/03/2013) |
| 01/14/2013 | 60 | 55.0 KB | Letter addressed to Judge Laura Taylor Swain from Rachel Bien dated 1/11/13 re: Counsel writes in response to the Court's December 14, 2012 Order directing the parties to confer and inform the Court about whether the above-referenced matters should be consolidated and whether counsel has any agreement regarding the appointment of lead counsel. The parties have conferred in response to the Court's order and believe that the matters should not be consolidated at this time. Document filed by the Lloyd Plaintiffs. (mro) (Entered: 01/14/2013) |
| 01/14/2013 | 61 | | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM** |

**App.9**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page12 of 177

| | | | |
|---|---|---|---|
| | | 93.9 KB | **MENU - (SEE CORRECTED DOCUMENT #62)**- NOTICE of Motion for Conditional Certification under 29 USC 216(b). Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) Modified on 1/17/2013 (kj). (Entered: 01/14/2013) |
| 01/14/2013 | 62 | 93.9 KB | MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd.(Bien, Rachel) (Entered: 01/14/2013) |
| 01/14/2013 | 63 | 229.1 KB | MEMORANDUM OF LAW in Support re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 01/14/2013) |
| 01/14/2013 | 64 | 8.1 MB | AFFIDAVIT of Rachel Bien in Support re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S)(Bien, Rachel) (Entered: 01/14/2013) |
| 01/14/2013 | 65 | 9.9 KB | MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 66 | 85.8 KB | MEMORANDUM OF LAW in Support re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 67 | 10.1 KB | MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 68 | 101.6 KB | MEMORANDUM OF LAW in Support re: 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 69 | | DECLARATION of Thomas A. Linthorst in Support re: 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey*.. Document filed |

**App.10**

| | | | |
|---|---|---|---|
| | | 26.2 MB | by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D-1, # 6 Exhibit D-2, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J)(Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/14/2013 | 70 | 3.5 MB | DECLARATION of Thomas A. Linthorst in Support re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4)(Linthorst, Thomas) (Entered: 01/14/2013) |
| 01/16/2013 | 71 | 193.8 KB | STIPULATION AND PROTECTIVE ORDER... regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Laura Taylor Swain on 1/16/2013) (rjm) (Entered: 01/16/2013) |
| 01/22/2013 | 72 | 108.3 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain, from Thomas A. Linthorst, dated 1/18/2013, re: proposed briefing schedule and page extension for the recently-filed motions - Plaintiffs' Motion for Conditional Certification (ECF. No. 62), and Defendants' Motions to Compel Arbitration (ECF Nos. 65 and 67). In light of additional discovery (including several depositions) to be conducted before Defendants oppose the Motion for Conditional Certification, as well as several other intervening deadlines in other matters, the parties respectfully request that the deadlines for Plaintiffs and Defendants to oppose the above motions be extended from January 28, 2013 to March 4, 2013, and the Reply briefs in support of such motions shall be filed on March 18, 2013. The parties agree that Defendants will have at least two weeks from the completion of the previously-noticed depositions to file their Opposition to the Motion for Conditional Certification and expect that this schedule will accommodate that agreement. If, for any reason those depositions are not completed at least two weeks before March 4, 2013, the parties will notify the Court and propose a revised briefing schedule accordingly. The parties further request permission to file Opposition briefs to these motions of up to 30 pages in length. ENDORSEMENT: The proposed briefing schedule is approved. In light of the need for discovery, the motions (docket entries 62, 65, and 67) are hereby terminated without prejudice for statistical purposes. A request to restore the motions to the calendar must accompany the opposition papers. The page extension requests are also granted. (Signed by Judge Laura Taylor Swain on 1/22/2013) (ja) (Entered: 01/23/2013) |
| 03/05/2013 | 73 | 38.4 KB | Letter addressed to Judge Laura Taylor Swain from John Halebian dated 3/4/2013 re: We are counsel to plaintiff Kenneth Ciullo in one of the above-captioned actions and are writing on behalf of all parties to clarify a request for an extension of the discovery period that was made |

**App.11**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page14 of 177

|  |  |  | jointly last week by defendants' counsel and further discussed with one of your law clerks in telephone conferences last Friday. Document filed by Kenneth Ciullo.(ft) (Entered: 03/05/2013) |
|------------|----|----------|---|
| 03/05/2013 | 74 | 71.8 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 2/27/2013 re: Joint request seeking an extension of the briefing schedule and discovery. ENDORSEMENT: The requests are granted. The fact and expert witness discovery deadlines are extended to 7/21/2013 and the related deadlines are modified accordingly. The 3/22/2013, pretrial conference is adjourned to 7/12/2013, at 10:30 am. ( Fact Discovery due by 7/31/2013. Responses due by 3/29/2013, Replies due by 4/12/2013. Pretrial Conference reset for 7/12/2013 at 10:30 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 3/4/2013) (cd) (Entered: 03/05/2013) |
| 03/29/2013 | 75 | 232.5 KB | MEMORANDUM OF LAW in Opposition re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Shaulson, Sam) (Entered: 03/29/2013) |
| 03/29/2013 | 76 | 26.2 MB | DECLARATION of Thomas A. Linthorst in Opposition re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit Emmert Declaration Ex. 1, # 12 Exhibit Emmert Declaration Ex. 2, # 13 Exhibit Emmert Declaration Ex. 3, # 14 Exhibit Emmert Declaration Ex. 4, # 15 Exhibit Emmert Declaration Ex. 5, # 16 Exhibit Emmert Declaration Ex. 6, # 17 Exhibit Emmert Declaration Ex. 7, # 18 Exhibit Emmert Declaration Ex. 8, # 19 Exhibit K, # 20 Exhibit L, # 21 Exhibit Bibergal Declaration Ex. A, # 22 Exhibit Bibergal Declaration Ex. B, # 23 Exhibit Bibergal Declaration Ex. C, # 24 Exhibit Bibergal Declaration Ex. D, # 25 Exhibit Bibergal Declaration Ex. E, # 26 Exhibit M, # 27 Exhibit Isner Declaration Ex. A, # 28 Exhibit N, # 29 Exhibit O, # 30 Exhibit P, # 31 Exhibit Q, # 32 Exhibit R, # 33 Exhibit S, # 34 Exhibit T, # 35 Exhibit U, # 36 Exhibit V, # 37 Exhibit W, # 38 Exhibit X, # 39 Exhibit Y, # 40 Exhibit Z)(Shaulson, Sam) (Entered: 03/29/2013) |
| 03/29/2013 | 77 | 235.0 KB | MEMORANDUM OF LAW in Opposition re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*.. Document filed by Susan Hyman, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lammert. (Bien, Rachel) (Entered: 03/29/2013) |
| 03/29/2013 | 78 | 230.2 KB | MEMORANDUM OF LAW in Opposition re: 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey*.. Document filed |

**App.12**

| | | |
|---|---|---|
| | | by Graeme Patey, Peter Piccoli, Scott Vanhoogstraat, Jennifer Zaat-Hetelle, Robert M. Johnson. (Bien, Rachel) (Entered: 03/29/2013) |
| 03/29/2013 | 79<br><br>7.2 MB | DECLARATION of Rachel Bien in Opposition re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert.*, 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey.*. Document filed by Susan Hyman, Robert M. Johnson, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lammert, Graeme Patey, Peter Piccoli, Scott Vanhoogstraat, Jennifer Zaat-Hetelle. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Bien, Rachel) (Entered: 03/29/2013) |
| 04/01/2013 | 80<br><br>20.7 KB | ORDER FOR ADMISSION PRO HAC VICE granting 48 Motion for Blair Joseph Robinson to Appear Pro Hac Vice. Blair Joseph Robinson is admitted to practice Pro Hac Vice in the above captioned case in the Cnited States District Court for the Southern District of New York. (Signed by Judge Laura Taylor Swain on 4/1/2013) (ft) (Entered: 04/01/2013) |
| 04/03/2013 | 81<br><br>38.9 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 3/29/2013 re: We represent Defendants JPMorgan Chase & Co. and Chase Investment Services Corp. (now J.P. Morgan Securities, LLC) (collectively, "Defendants") in the above matter. Enclosed please find a courtesy copy of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and Declaration of Thomas A. Linthorst with accompanying exhibits, filed today via electronic case filing. (Dkt. Nos. 75, 76). Pursuant to the Court's January 22, 2013 Order (Dkt. No. 72), Defendants also request that the following Motions, previously filed on January 14, 2013, be restored to the Court's calendar. ENDORSEMENT: The Clerk of Court is directed to restore the referenced motions (docket entries 62, 65 and 67) to the calendar. (Signed by Judge Laura Taylor Swain on 4/2/2013) (ft) (Entered: 04/03/2013) |
| 04/05/2013 | 82<br><br>73.9 KB | MOTION to Seal Document 64 Affidavit in Support of Motion,, 76 Declaration in Opposition to Motion,,,,, *Pursuant to Parties' Stipulation and Protective Order*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co...(Linthorst, Thomas) (Entered: 04/05/2013) |
| 04/05/2013 | 83<br><br>102.4 KB | MEMORANDUM OF LAW in Support re: 82 MOTION to Seal Document 64 Affidavit in Support of Motion,, 76 Declaration in Opposition to Motion,,,,, *Pursuant to Parties' Stipulation and Protective Order*. MOTION to Seal Document 64 Affidavit in Support of Motion,, 76 Declaration in Opposition to Motion,,,,, *Pursuant to* |

**App.13**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page16 of 177

| | | | |
|---|---|---|---|
| | | | *Parties' Stipulation and Protective Order*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 04/05/2013) |
| 04/10/2013 | [84](#) | 73.7 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Deidre Aaron dated 4/8/2013 re: The parties request permission to file Reply briefs to these motions of up to 15 pages in length, in light of the numerous legal issues raised in the opposition briefs. ENDORSEMENT: The request is granted. (Signed by Judge Laura Taylor Swain on 4/10/2013) (ft) (Entered: 04/10/2013) |
| 04/12/2013 | [85](#) | 78.5 KB | REPLY MEMORANDUM OF LAW in Support re: [67](#) MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 04/12/2013) |
| 04/12/2013 | [86](#) | 0.7 MB | DECLARATION of Thomas A. Linthorst in Support re: [85](#) Reply Memorandum of Law in Support of Motion,. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # [1](#) Exhibit 1)(Linthorst, Thomas) (Entered: 04/12/2013) |
| 04/12/2013 | [87](#) | 85.0 KB | REPLY MEMORANDUM OF LAW in Support re: [65](#) MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 04/12/2013) |
| 04/12/2013 | [88](#) | 211.6 KB | REPLY MEMORANDUM OF LAW in Support re: [62](#) MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 04/12/2013) |
| 04/12/2013 | [89](#) | 1.2 MB | DECLARATION of Rachel Bien in Support re: [62](#) MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA*.. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # [1](#) Exhibit T, # [2](#) Exhibit U, # [3](#) Exhibit V, # [4](#) Exhibit W, # [5](#) Exhibit X, # [6](#) Exhibit Y, # [7](#) Exhibit Z, # [8](#) Exhibit AA, # [9](#) Exhibit BB)(Bien, Rachel) (Entered: 04/12/2013) |
| 04/19/2013 | [90](#) | 70.6 KB | Letter addressed to Judge Laura Taylor Swain from Rachel Bien dated 4/17/2013 re: We represent the Lloyd Plaintiffs in the above-referenced matter. We write jointly with counsel for Plaintiff Ciullo to oppose Defendants' request that the Court disregard two arguments made in Plaintiffs' reply brief or permit Defendants to file a sur-reply. Defendants badly distort the record by arguing that Plaintiffs made "new arguments" in their reply brief. Each argument simply responded to arguments made or issues raised by Defendants in their opposition brief.(ama) (Entered: 04/19/2013) |
| 04/19/2013 | [91](#) | | ENDORSED LETTER addressed to Judge Laura Taylor Swain from |

**App.14**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page17 of 177

| | | |
|---|---|---|
| | 66.5 KB | Thomas A. Linthorst dated 4/17/2013 re: We represent Defendants JPMorgan Chase & Co. and J.P. Morgan Securities, LLC (as successor in interest to Chase Investment Services Corp.) in the above cases. We write to request leave to submit a brief sur-reply of no more than four pages in response to two new arguments and requests for affirmative relief raised in Plaintiffs' Reply Memorandum of Law in Support of their Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA. (Dkt. No. 88). ENDORSEMENT: Defendants may file a 4 page sur-reply by April 26, 2013. Plaintiffs may file a 4 page sur-reply by May 3, 2013. No further submissions. SO ORDERED. (Signed by Judge Laura Taylor Swain on 4/19/2013) (ama) (Entered: 04/19/2013) |
| 04/26/2013 | 92 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** SUPPLEMENTAL MEMORANDUM OF LAW in Opposition re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA. Sur-Reply to Plaintiffs' Motion*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Affidavit in support of Sur-Reply)(Shaulson, Sam) Modified on 4/29/2013 (ldi). (Entered: 04/26/2013) |
| 04/26/2013 | 93 | MOTION to Seal *Certain Documents attached to the Declaration of Rachel Bien in Support of Plaintiffs' Reply Memorandum of Law*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) (Entered: 04/26/2013) |
| 04/26/2013 | 94 | MEMORANDUM OF LAW in Support re: 93 MOTION to Seal *Certain Documents attached to the Declaration of Rachel Bien in Support of Plaintiffs' Reply Memorandum of Law.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 04/26/2013) |
| 04/26/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Note to Attorney Sam Scott Shaulson to RE-FILE Document 92 Memorandum of Law in Opposition to Motion. Use the event type Reply Memorandum of Law in Opposition to Motion found under the event list Replies, Opposition and Supporting Documents. NOTE: You must file the attached Declaration in Opposition to Motion separately, using the event found under event list Replies, Opposition and Supporting Documents. (ldi)** (Entered: 04/29/2013) |
| 04/29/2013 | 95 | REPLY MEMORANDUM OF LAW in Opposition re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Shaulson, Sam) (Entered: 04/29/2013) |
| 04/29/2013 | 96 | DECLARATION of Thomas A. Linthorst in Opposition re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Shaulson, Sam) (Entered: |

**App.15**

| | | | |
|---|---|---|---|
| | | | 04/29/2013) |
| 04/29/2013 | 97 | 29.1 KB | NOTICE OF APPEARANCE by Ossai Miazad on behalf of Susan Hyman, Robert M. Johnson, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lammert, Jeffrey Lloyd, Graeme Patey, Peter Piccoli, Joshua Strouse, Scott Vanhoogstraat, Jennifer Zaat-Hetelle (Miazad, Ossai) (Entered: 04/29/2013) |
| 04/29/2013 | 98 | 259.6 KB | NOTICE OF APPEARANCE by Justin Mitchell Swartz on behalf of Susan Hyman, Robert M. Johnson, Lawrence R. Kaufmann, Alan B. Krichman, Jeffrey Lammert, Jeffrey Lloyd, Graeme Patey, Peter Piccoli, Joshua Strouse, Scott Vanhoogstraat, Jennifer Zaat-Hetelle (Swartz, Justin) (Entered: 04/29/2013) |
| 05/03/2013 | 99 | 0.5 MB | REPLY MEMORANDUM OF LAW in Support re: 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.*. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 05/03/2013) |
| 05/06/2013 | 100 | 122.3 KB | Letter addressed to Judge Laura Taylor Swain from Rachel Bien dated 5/2/2013 re: We represent the Lloyd Plaintiffs in the above-referenced matter. We write to provide an update to the Court regarding a matter discussed in Plaintiffs' opposition to Defendants' Motion to Compel Arbitration and Dismiss, or, Alternatively, to Stay the Claims of Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli, and Graeme H. Patey. See ECF No. 78 at 16-17. Document filed by Susan Hyman, Jeffrey Lloyd, Graeme Patey, Joshua Strouse, Ellen Szymkiewicz, Scott Vanhoogstraat.(ft) (Entered: 05/06/2013) |
| 05/06/2013 | 101 | 23.2 KB | ORDER granting 82 Motion to Seal Document. Defendants' Motion That Certain Confidential Material Submitted with Plaintiffs' Motion for Conditional Certification and Defendants' Opposition Thereto Be Filed Under Seal is GRANTED. (Signed by Judge Laura Taylor Swain on 5/6/2013) Filed in associated case 11-cv-9305. (ft) Modified on 5/7/2013 (ft). (Entered: 05/07/2013) |
| 05/06/2013 | | | Transmission to Sealed Records Clerk. Transmitted re: 101 Order on Motion to Seal Document to the Sealed Records Clerk for the sealing or unsealing of document or case. (ft) (Entered: 05/07/2013) |
| 05/07/2013 | 102 | 75.0 KB | Letter addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 5/6/2013 re: We represent Defendants JPMorgan Chase & Co. and J.P. Morgan Securities, LLC (as successor in interest to Chase Investment Services Corp.) in the above cases and write in response to the letter from Rachel Bien, Esq. dated May 2. 2013, in which Ms. Bien purports to update the Court regarding a complaint pending before the National Labor Relations Board ("NLRB" or "Board"). Document filed by J.P. Morgan Chase & Co. (ft) (Entered: 05/07/2013) |
| 05/21/2013 | 103 | | ORDER granting 93 Motion to Seal. IT IS on this 21 day of May 2013, hereby ORDERED that Defendants' Motion That Certain Confidential |

**App.16**

| | | |
|---|---|---|
| | 21.1 KB | Material Submitted with Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Conditional Certification Be Filed Under Seal is GRANTED. ENDORSEMENT: This order resolves docket entry NO. 93. (Signed by Judge Laura Taylor Swain on 5/21/2013) Filed in associated case 12-cv-2197. (ft) Modified on 5/21/2013 (ft). (Entered: 05/21/2013) |
| 05/21/2013 | | Transmission to Sealed Records Clerk. Transmitted re: 103 Order on Motion to Seal to the Sealed Records Clerk for the sealing or unsealing of document or case. (ft) (Entered: 05/21/2013) |
| 05/21/2013 | 104 / 83.6 KB | NOTICE of Supplemental Authority in Support of Defendants Motions To Compel Arbitration and Dismiss, or, Alternatively, to Stay Certain Plaintiffs Claims re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*., 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 05/21/2013) |
| 05/24/2013 | 105 / 497.4 KB | RESPONSE re: 104 Notice (Other), Notice (Other), Notice (Other) *Plaintiffs' Response to Defendants' Notice of Supplemental Authority.* Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Miazad, Ossai) (Entered: 05/24/2013) |
| 05/24/2013 | 106 / 75.5 KB | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A., 29 U.S.C. § 216. Document filed by Samir Makar.(Aaron, Deirdre) (Entered: 05/24/2013) |
| 06/03/2013 | 107 / 84.3 KB | NOTICE of of Supplemental Authority (Dixon) in Support of Defendants Motions To Compel Arbitration and Dismiss, or, Alternatively, to Stay Certain Plaintiffs Claims re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert*., 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 06/03/2013) |
| 06/07/2013 | 108 / 24.0 KB | REVISED SCHEDULING ORDER: Non-Expert Witness Discovery due by 10/31/2013. Each party must make its expert witness disclosures described in Rule 26(a)(2) of the Federal Rules of Civil Procedure concerning expert(s), if any, to be offered on issues as to which such party has the burden of proof or otherwise in support of the party's case, no later than September 30, 2013. Rebuttal disclosures must be made no later than October 30, 2013. Such disclosures must be made in writing, signed, and served, but must not be filed with the Court. Expert Witness Discovery due by 11/29/2013. All class certification discovery |

**App.17**

| | | |
|---|---|---|
| | | must be completed by October 31, 2013. The Parties shall confer and make a written report and proposal with respect to any necessary additional discovery within 30 days after the decision on the motion for collective action certification. (Signed by Judge Laura Taylor Swain on 6/7/2013) (ft) (Main Document 108 replaced on 6/10/2013) (ft). (Entered: 06/10/2013) |
| 06/10/2013 | 109 <br> 45.2 KB | Letter addressed to Judge Laura Taylor Swain from Ossai Miazad dated 6/4/2013 re: We represent the Lloyd Plaintiffs in the above-referenced matters. We write jointly with Plaintiff Ciullo to request a three-month extension of the current discovery deadline for non-expert and class certification discovery from July 31, 2013 to October 31, 2013, and an additional one month thereafter to November 29, 2013 for the close of expert discovery. Document filed by Jeffrey Lloyd.(ft) (Entered: 06/10/2013) |
| 07/01/2013 | 110 <br> 98.9 KB | NOTICE of Supplemental Authority (Amex) in Support of Defendants Motions To Compel Arbitration and Dismiss, or, Alternatively, to Stay Certain Plaintiffs Claims re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert.*, 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey..* Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 07/01/2013) |
| 07/10/2013 | 111 <br> 36.5 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 7/8/2013 re: Request to adjourn the 7/12/2013 pretrial conference. ENDORSEMENT: The conference is adjourned to 9/20/2013, at 11:30 am. ( Pretrial Conference reset for 9/20/2013 at 11:30 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 7/9/2013) (cd) (Entered: 07/10/2013) |
| 07/15/2013 | 112 <br> 18.4 KB | RESPONSE re: 110 Notice (Other), Notice (Other), Notice (Other). Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Aaron, Deirdre) (Entered: 07/15/2013) |
| 08/13/2013 | 113 <br> 1.7 MB | NOTICE of Supplemental Authority (Sutherland & Raniere) in Further Support of Defendants' Motions to Compel Arbitration and Dismiss re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert.*, 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey..* Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit)(Linthorst, Thomas) (Entered: 08/13/2013) |
| 08/28/2013 | 114 <br> 0.8 | RESPONSE re: 113 Notice (Other), Notice (Other), Notice (Other) *Plaintiffs' Response to Defendants' Notice of Supplemental Authority.* Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. |

**App.18**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page21 of 177

| | | MB | (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Miazad, Ossai) (Entered: 08/28/2013) |
|---|---|---|---|
| 09/04/2013 | 115 | 112.3 KB | RESPONSE re: 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert.*, 114 Response, 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey. in response to Plaintiffs' Response to Defendants' Notice of Supplemental Authority*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 09/04/2013) |
| 09/09/2013 | 116 | 86.4 KB | MEMORANDUM ORDER granting 62 Motion to Certify Class; denying 65 Motion to Compel Arbitration; granting 67 Motion to Compel Arbitration. For the foregoing reasons, Plaintiffs' motion for conditional certification is granted. Defendant's motion to compel arbitration as to opt-in plaintiffs Johnson, Zaat-Hetelle, Vanhoogstraat, Piccoli and Patey is granted, and the claims of those plaintiffs are dismissed without prejudice to arbitration. Defendants' motion to compel arbitration as to named plaintiff Kaufmann and Opt-in plaintiffs Hyman, Krichman and Lammert is denied. This Memorandum Order resolves docket entry nos. 62, 65 and 67. (Signed by Judge Laura Taylor Swain on 9/9/2013) (ja) (Entered: 09/10/2013) |
| 09/17/2013 | 117 | 21.3 KB | ORDER: The Court issued a revised scheduling order on June 7, 2013 (docket entry no. 108) requiring the parties to confer and make a written report and proposal with respect to any necessary additional discovery within thirty (30) days after the decision on Plaintiffs' motion for collective action certification. This Court issued its decision on the motion for collective action certification on September 9, 2013 (docket entry no. 116). The pretrial conference currently scheduled for September 20, 2013 at 11 A.M. is hereby adjourned to October 25, 2013 at 3:30 P.M. to allow the parties time to confer and prepare the report. The parties must file their written report and proposal with respect to any necessary additional discovery at least seven (7) calendar days before the pretrial conference. (Pretrial Conference set for 10/25/2013 at 03:30 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 9/17/2013) (rsh) (Entered: 09/17/2013) |
| 09/20/2013 | 118 | 79.2 KB | CONSENT LETTER MOTION for Extension of Time *to Submit a Joint Proposed Form of Notice and Request to Reschedule October 25, 2013 Pre-Trial Conference* addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated September 20, 2013. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 09/20/2013) |
| 09/23/2013 | 119 | | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated 9/20/2013 re: Request that the parties be granted an additional week to meet and confer regarding the form of notice. ENDORSEMENT: The extension of the submission deadline to |

**App.19**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page22 of 177

| | | | |
|---|---|---|---|
| | | 57.6 KB | 10/1/2013 is granted. The conference is adjourned to 11/1/2013, at 10:00 AM. ( Pretrial Conference reset for 11/1/2013 at 10:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 9/23/2013) (cd) (Entered: 09/23/2013) |
| 09/24/2013 | 132 | 356.4 KB | INTERNET CITATION NOTE: Material from decision with Internet citation re: 116 Order on Motion to Certify Class, Order on Motion to Compel Arbitration. (sj) (Entered: 11/06/2013) |
| 09/26/2013 | 120 | 3.8 MB | LETTER MOTION for Local Rule 37.2 Conference re: ESI Discovery addressed to Judge Laura Taylor Swain from Rachel Bien dated 09-26-2013. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bien, Rachel) (Entered: 09/26/2013) |
| 10/01/2013 | 121 | 21.4 KB | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Henry B. Pitman. Motions referred to Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 10/1/2013) (mt) (Entered: 10/01/2013) |
| 10/01/2013 | 122 | 48.7 KB | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 9/26/2013 re: We write jointly with Plaintiff Ciullo pursuant to Local Rule 37.2 and Your Honor's individual practices to request an informal conference with the Court regarding Defendants' failure to produce certain Electronically Stored Information ("ESI"), which consists of emails from an agreed-upon list of custodians. Plaintiffs respectfully request an order compelling the ESI, or in the alternative, permission to file a motion to compel...Plaintiffs therefore respectfully request that the Court order Defendants to: (1) provide Plaintiffs with information concerning the volume of documents resulting from the search terms and a sampling of such documents within three days; (2) begin production of the ESI on a rolling basis within five days after promptly meeting and conferring with Plaintiffs regarding any modifications to the search terms; and (3) complete all production within 30 days. ENDORSEMENT: These cases are now referred to Magistrate Judge Pitman for general Pretrial Management including discovery disputes. The parties are requested to contact Judge Pitman's chambers regarding the above - described discovery dispute and to schedule a status conference. The November 1, 2013 conference before the undersigned is marked off the calendar in light of the reference to Judge Pitman. (Signed by Judge Laura Taylor Swain on 10/1/2013) (mt) (Entered: 10/01/2013) |
| 10/01/2013 | 123 | 2.2 MB | JOINT LETTER addressed to Judge Laura Taylor Swain from Rachel Bien dated 10-01-2013 re: Joint Proposal of Notice to Potential Opt-in Plaintiffs. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Bien, Rachel) (Entered: 10/01/2013) |
| 10/02/2013 | 124 | | SUPPLEMENTAL LETTER addressed to Judge Laura Taylor Swain |

**App.20**

| | | | |
|---|---|---|---|
| | | 0.9 MB | from Rachel Bien dated 10-02-2013 re: Joint Proposal of Notice to Potential Opt-in Plaintiffs. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit E)(Bien, Rachel) (Entered: 10/02/2013) |
| 10/08/2013 | 125 | 165.8 KB | NOTICE OF APPEAL from 116 Order on Motion to Certify Class, Order on Motion to Compel Arbitration,,,,,,,. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. Filing fee $ 455.00, receipt number 0208-8954051. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit)(Linthorst, Thomas) (Entered: 10/08/2013) |
| 10/09/2013 | | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 125 Notice of Appeal. (tp) (Entered: 10/09/2013) |
| 10/09/2013 | | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 88 Reply Memorandum of Law in Support of Motion filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 116 Order on Motion to Certify Class, Order on Motion to Compel Arbitration, 35 Stipulation and Order, Set Deadlines/Hearings, 85 Reply Memorandum of Law in Support of Motion, filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 104 Notice (Other), Notice (Other), Notice (Other) filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 107 Notice (Other), Notice (Other), Notice (Other) filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 22 Endorsed Letter, Set Motion and R&R Deadlines/Hearings, 82 MOTION to Seal Document 64 Affidavit in Support of Motion, 76 Declaration in Opposition to Motion, *Pursuant to Parties' Stipulation and Protective Order*. MOTION to Seal Document 64 Affidavit in Support of Motion, 76 Declaration in Opposition to Motion, *Pursuant to Parties' Stipulation and Protective Order* filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 70 Declaration in Support of Motion, filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 84 Endorsed Letter, 117 Order, Set Hearings, 12 Endorsed Letter, Set Deadlines, 122 Endorsed Letter, 57 MDL Order Denying Transfer Motion, 63 Memorandum of Law in Support of Motion filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 72 Endorsed Letter, Terminate Motions, 24 Letter, filed by Chase Investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 65 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert* filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 27 Notice (Other) filed by Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 1 Complaint filed by Jeffrey Lloyd, Ellen Szymkiewicz, 74 Endorsed Letter, Set Deadlines/Hearings, 47 Initial Report of Parties Before Pretrial Conference filed by Lawrence |

**App.21**

R. Kaufmann, Jeffrey Lloyd, 108 Scheduling Order, 59 Endorsed Letter, Terminate Deadlines, 48 MOTION for Blair Joseph Robinson to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7968820. **Motion and supporting papers to be reviewed by Clerk's Office staff** filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 94 Memorandum of Law in Support of Motion, filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 19 MOTION to Transfer Case filed by Chase Investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 113 Notice (Other), filed by Chase investment Services Corp., Chase Investment Services Corp., J.P. Morgan Chase & Co., 119 Endorsed Letter, Set Deadlines/Hearings, 79 Declaration in Opposition to Motion, filed by Graeme Patey, Robert M. Johnson, Scott Vanhoogstraat, Susan Hyman, Peter Piccoli, Jennifer Zaat-Hetelle, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lammert, 66 Memorandum of Law in Support of Motion, filed by Chase Investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 83 Memorandum of Law in Support of Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 71 Protective Order, 106 Consent to Become Party Plaintiff filed by Samir Makar, 53 Consent to Become Party Plaintiff filed by Scott Vanhoogstraat, 29 Reply Memorandum of Law in Support of Motion filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 110 Notice (Other), Notice (Other), Notice (Other) filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 11 Notice of Appearance filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 7 Summons Returned Executed filed by Susan Hyman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 61 Notice (Other), filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 68 Memorandum of Law in Support of Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 75 Memorandum of Law in Opposition to Motion filed by Chase Investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 118 CONSENT LETTER MOTION for Extension of Time *to Submit a Joint Proposed Form of Notice and Request to Reschedule October 25, 2013 Pre-Trial Conference* addressed to Judge Laura Taylor Swain from Thomas A. Linthorst dated September 20, 2013. filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 69 Declaration in Support of Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 38 Letter, filed by Susan Hyman, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 100 Letter, filed by Graeme Patey, Joshua Strouse, Scott Vanhoogstraat, Susan Hyman, Jeffrey Lloyd, Ellen Szymkiewicz, 96 Declaration in Opposition to Motion filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 86 Declaration in Support filed

**App.22**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page25 of 177

by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 23 Endorsed Letter, Set Deadlines/Hearings, 102 Letter, filed by J.P. Morgan Chase & Co., 98 Notice of Appearance, filed by Graeme Patey, Robert M. Johnson, Joshua Strouse, Scott Vanhoogstraat, Susan Hyman, Peter Piccoli, Jennifer Zaat-Hetelle, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Jeffrey Lammert, 95 Reply Memorandum of Law in Oppisition to Motion filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 43 Consent to Become Party Plaintiff filed by Graeme Patey, 60 Letter, 42 Consent to Become Party Plaintiff filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 32 Answer to Amended Complaint filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 15 Rule 7.1 Corporate Disclosure Statement, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 121 Order Referring Case to Magistrate Judge, 13 Consent to Become Party Plaintiff filed by Alan B. Krichman, 58 Order, 78 Memorandum of Law in Opposition to Motion, filed by Graeme Patey, Robert M. Johnson, Scott Vanhoogstraat, Peter Piccoli, Jennifer Zaat-Hetelle, 91 Endorsed Letter, 52 Stipulation of Voluntary Dismissal, filed by Ellen Szymkiewicz, 105 Response filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 34 Order, Set Hearings, 124 Letter, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 54 Stipulation and Order of Dismissal, 3 Consent to Become Party Plaintiff filed by Susan Hyman, 18 Rule 7.1 Corporate Disclosure Statement filed by Chase investment Services Corp., Chase Investment Services Corp., 20 Memorandum of Law in Support of Motion filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 21 Declaration in Support of Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 8 Summons Returned Executed filed by Susan Hyman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 81 Endorsed Letter, 101 Order on Motion to Seal Document, 17 Rule 7.1 Corporate Disclosure Statement filed by J.P. Morgan Chase & Co., 49 Initial Report of Parties Before Pretrial Conference filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 26 Declaration in Opposition to Motion filed by Susan Hyman, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 87 Reply Memorandum of Law in Support, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 25 Memorandum of Law in Opposition to Motion filed by Susan Hyman, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Ellen Szymkiewicz, 44 Notice of Appearance filed by Graeme Patey, Susan Hyman, Lawrence R. Kaufmann, Jeffrey Lloyd, 2 Notice of Appearance filed by Jeffrey Lloyd, Ellen Szymkiewicz, 80 Order on Motion to Appear Pro Hac Vice, 92 Memorandum of Law in Opposition to Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 4 Notice of Case Assignment/Reassignment, 114 Response, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 77 Memorandum of Law in Opposition to

**App.23**

Motion, filed by Susan Hyman, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lammert, 73 Letter, filed by Kenneth Ciullo, 9 Order for Initial Pretrial Conference, 16 Answer to Complaint filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 64 Affidavit in Support of Motion, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 5 Notice of Appearance filed by Susan Hyman, Jeffrey Lloyd, Ellen Szymkiewicz, 31 Amended Complaint, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 6 Consent to Become Party Plaintiff filed by Lawrence R. Kaufmann, 89 Declaration in Support of Motion, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 109 Letter, filed by Jeffrey Lloyd, 14 Endorsed Letter, Set Deadlines, 30 Declaration in Support of Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 93 MOTION to Seal *Certain Documents attached to the Declaration of Rachel Bien in Support of Plaintiffs' Reply Memorandum of Law* filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 123 Letter, filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 112 Response filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 99 Reply Memorandum of Law in Support of Motion filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 120 LETTER MOTION for Local Rule 37.2 Conference *re: ESI Discovery* addressed to Judge Laura Taylor Swain from Rachel Bien dated 09-26-2013 filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 62 MOTION to Certify Class *and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA* filed by Lawrence R. Kaufmann, Jeffrey Lloyd, 125 Notice of Appeal, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 115 Response, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 28 Endorsed Letter, 103 Order on Motion to Seal, 41 Rule 7.1 Corporate Disclosure Statement, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 45 Consent to Become Party Plaintiff filed by Peter Piccoli, 51 Scheduling Order, 36 Order, Set Deadlines/Hearings, 39 Endorsed Letter, Set Deadlines/Hearings, 111 Endorsed Letter, Set Deadlines/Hearings,, 10 Notice of Appearance filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 46 Endorsed Letter, Set Hearings, 37 Endorsed Letter, 50 Stipulation and Order, 97 Notice of Appearance, filed by Graeme Patey, Robert M. Johnson, Joshua Strouse, Scott Vanhoogstraat, Susan Hyman, Peter Piccoli, Jennifer Zaat-Hetelle, Alan B. Krichman, Lawrence R. Kaufmann, Jeffrey Lloyd, Jeffrey Lammert, 90 Letter, 33 Endorsed Letter, Set Hearings, 76 Declaration in Opposition to Motion, filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 55 Consent to Become Party Plaintiff filed by Joshua Strouse, 67 MOTION to Compel Arbitration *and Dismiss or, Alternatively, to Stay Claims by Opt-In Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott VanHoogstraat, Peter Piccoli and Graeme H. Patey* filed by Chase investment Services Corp., J.P. Morgan Chase & Co., Chase Investment Services Corp., 40 Rule 7.1 Corporate

**App.24**

| | | |
|---|---|---|
| | | Disclosure Statement, filed by Chase investment Services Corp., Chase Investment Services Corp., 56 Consent to Become Party Plaintiff filed by Jeffrey Lammert were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/09/2013) |
| 10/17/2013 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 10/17/2013. Oral argument is set for October 28, 2013 at 2:00 p.m. Order to follow. (bh) (Entered: 10/17/2013) |
| 10/17/2013 | 126 | ORDER: Defendants shall provide hit reports for the agreed upon search terms and custodians on a rolling basis; such production shall be completed no later than November 11, 2013. Samples of the documents responsive to the agreed upon search terms, or the non-privileged documents from a particular custodian's files responsive to the search terms, shall be produced on a rolling basis; such production shall be complete no later than November 27, 2013. I shall hear oral argument on the parties' disputes concerning the notice to be sent to potential opt-ins on October 28, 2013 at 2:00 p.m. in Courtroom 18A, United States Courthouse, 500 Pearl Street, New York, New York 10007. Oral Argument set for 10/28/2013 at 02:00 PM in Courtroom 18A, United States Courthouse, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (Signed by Magistrate Judge Henry B. Pitman on 10/17/2013) Copies Mailed By Chambers. (ft) (Entered: 10/18/2013) |
| 10/28/2013 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Oral Argument on notice to be sent to potential opt-ins held on 10/28/2013. Order to follow. (bh) (Entered: 10/29/2013) |
| 10/29/2013 | 127 | ORDER: A conference having been held on October 28, 2013, during which various issues concerning the form of the proposed notice to be sent to potential opt- ins in plaintiffs were discussed, for the reasons stated on the record in open court, it is hereby ORDERED that: 1. The notice shall be sent to all potential opt- ins, regardless of whether defendants contend they are subject to a binding arbitration agreement. This Order is without prejudice to defendants' right to assert an arbitration clause or any similar contractual provision which may limit a plaintiff's ability to opt-in to this action as further set forth in this order. (Signed by Magistrate Judge Henry B. Pitman on 10/29/2013) Copies Sent By Chambers. (lmb) (Entered: 10/29/2013) |
| 11/04/2013 | 128 | TRANSCRIPT of Proceedings re: Proceeding held on 10/28/2013 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/2/2013. Redacted Transcript Deadline set for 12/9/2013. Release of Transcript Restriction set for 2/5/2014.(ca) (Entered: 11/04/2013) |
| 11/04/2013 | 129 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby |

**App.25**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page28 of 177

| | | | |
|---|---|---|---|
| | | 34.6 KB | given that an official transcript of a Proceeding proceeding held on 10/28/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(ca) (Entered: 11/04/2013) |
| 11/04/2013 | 130 | 0.6 MB | LETTER MOTION for Extension of Time *re: Defendants' Motion to Stay* addressed to Magistrate Judge Henry B. Pitman from Rachel Bien dated 11-04-2013. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd.(Bien, Rachel) (Entered: 11/04/2013) |
| 11/05/2013 | 131 | | ORDER granting 130 Letter Motion for Extension of Time. The deadline for the submission of plaintiffs' opposition to defendant's motion for a stay is extended to November 15, 2013. (HEREBY ORDERED by Magistrate Judge Henry B. Pitman)(Text Only Order) Copies of Notice of Electronic Filing Sent By Chambers. (Pitman, Henry) (Entered: 11/05/2013) |
| 11/12/2013 | 133 | 1.3 MB | Objection re: 127 Order,, *Authorizing The Sending Of Notice To Individuals Subject To The Binding Arbitration Agreement*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Attachments: # 1 Exhibit A - Transcript of October 28, 2013Proceedings)(Linthorst, Thomas) (Entered: 11/12/2013) |
| 11/22/2013 | 134 | 85.0 KB | MOTION to Stay *Claims by Plaintiffs Kaufmann, Hyman, Krichman, and Lammert and Sending of Notice to Individuals Subject to the Supervision Agreement Containing an Arbitration Agreement with Class and Collective Action Waiver, Pending Resolution of Appeal*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) (Entered: 11/22/2013) |
| 11/22/2013 | 135 | 1.2 MB | MEMORANDUM OF LAW in Support re: 134 MOTION to Stay *Claims by Plaintiffs Kaufmann, Hyman, Krichman, and Lammert and Sending of Notice to Individuals Subject to the Supervision Agreement Containing an Arbitration Agreement with Class and Collective Action Waiver, Pending Resolution of Appeal to Second Circuit. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 11/22/2013)* |
| 11/22/2013 | 136 | 456.5 KB | MEMORANDUM OF LAW in Opposition re: 134 MOTION to Stay *Claims by Plaintiffs Kaufmann, Hyman, Krichman, and Lammert and Sending of Notice to Individuals Subject to the Supervision Agreement Containing an Arbitration Agreement with Class and Collective Action Waiver, Pending Resolution of Appeal. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 11/22/2013)* |
| 11/22/2013 | 137 | 1.3 MB | DECLARATION of Rachel Bien in Opposition re: 134 MOTION to Stay *Claims by Plaintiffs Kaufmann, Hyman, Krichman, and Lammert and Sending of Notice to Individuals Subject to the Supervision Agreement Containing an Arbitration Agreement with Class and* |

**App.26**

| | | | |
|---|---|---|---|
| | | | *Collective Action Waiver, Pending Resolution of. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bien, Rachel) (Entered: 11/22/2013)* |
| 11/22/2013 | 138 | 0.7 MB | REPLY MEMORANDUM OF LAW in Support re: 134 MOTION to Stay *Claims by Plaintiffs Kaufmann, Hyman, Krichman, and Lammert and Sending of Notice to Individuals Subject to the Supervision Agreement Containing an Arbitration Agreement with Class and Collective Action Waiver, Pending Resolution of Second Circuit Appeal. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 11/22/2013)* |
| 11/26/2013 | 139 | 0.6 MB | OPPOSITION BRIEF re: 133 Objection (non-motion), Objection (non-motion). Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 11/26/2013) |
| 11/26/2013 | 140 | 482.0 KB | DECLARATION of Rachel Bien in Opposition re: 133 Objection (non-motion), Objection (non-motion). Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd. (Bien, Rachel) (Entered: 11/26/2013) |
| 12/03/2013 | 141 | 334.3 KB | REPLY MEMORANDUM OF LAW re: 133 Objection (non-motion), Objection (non-motion) *in further support of Defendants' Objections to Magistrate Judge Henry Pitman's Order dated October 29, 2013.* Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 12/03/2013) |
| 12/05/2013 | 142 | 120.0 KB | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Scott Robert Koch to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9144655. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Chase investment Services Corp.. Return Date set for 12/5/2013 at 01:00 PM. (Attachments: # 1 Exhibit Letter of Good Standing)(Koch, Scott) Modified on 12/5/2013 (wb). (Entered: 12/05/2013) |
| 12/05/2013 | | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice regarding Document No. 142 MOTION for Scott Robert Koch to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9144655. Motion and supporting papers to be reviewed by Clerk's Office staff.. The filing is deficient for the following reason(s): Missing Certificate of Good Standing. Certificate of Good Standing must be issued from the Supreme Court of Illinois with a Clerk of Court Signature. Re-file the document as a Corrected Motion to Appear Pro Hac Vice and attach a valid Certificate of Good Standing, issued within the past 30 days. (wb)** (Entered: 12/05/2013) |
| 12/19/2013 | 143 | 16.7 KB | ORDER: Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants have objected to Paragraph 1 of the Order of Judge Henry Pitman, which is dated October 29, 2013 (docket entry no. 127 (11 Civ. 9305); docket entry no. 47 (12 Civ. 2197)). Because Defendants have failed to demonstrate that Judge Pitman's Order is clearly erroneous or contrary to law, their objection is overruled and |

**App.27**

|  |  |  | Judge Pitman's Order stands. (Signed by Judge Laura Taylor Swain on 12/19/2013) (cd) (Entered: 12/19/2013) |
|---|---|---|---|
| 12/23/2013 | 144 | 124.4 KB | MOTION for Scott Robert Koch to Appear Pro Hac Vice *CORRECTED.* **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Chase investment Services Corp.. Return Date set for 12/23/2013 at 04:00 PM. (Attachments: # 1 Exhibit)(Koch, Scott) (Entered: 12/23/2013) |
| 12/26/2013 |  |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 144 MOTION for Scott Robert Koch to Appear Pro Hac Vice *CORRECTED.* Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/26/2013) |
| 12/27/2013 | 145 |  | ORDER granting 144 Motion for Scott Robert Koch to Appear Pro Hac Vice (HEREBY ORDERED by Magistrate Judge Henry B. Pitman) (Text Only Order) Copies of Notice of Electronic Filing To Be Mailed By Clerks Office. (Pitman, Henry) (Entered: 12/27/2013) |
| 12/27/2013 |  |  | Mailed a copy of 145 Order on Motion to Appear Pro Hac Vice to Adam T Klein Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 /Deirdre Anne Aaron Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 Elizabeth Hartley Wagoner Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 / Justin Mitchell Swartz Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 / Ossai Miazad Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 / Rachel Megan Bien Outten & Golden,LLP (NYC) 3 Park Avenue, 29th Floor New York, NY 10016 Blair J. Robinson Morgan, Lewis & Bockius LLP (Philadelphia) 1701 Market Street Philadelphia, PA 19103 / Sam Scott Shaulson Morgan, Lewis & Bockius LLP (New York) 101 Park Avenue New York, NY 10178 / Thomas Anton Linthorst Morgan, Lewis & Bockius LLP(NJ) 502 Carnegie Center Princeton, NJ 08540/ Scott R. Koch Jpmorgan Chase Legal Department 10 S. Dearborn St., Mail Code Il1-0087 Chicago, IL 60603. (ca) (Entered: 12/27/2013) |
| 12/30/2013 | 146 | 64.5 KB | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Certification of Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) re: 143 Order,. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) Modified on 12/30/2013 (db). (Entered: 12/30/2013) |
| 12/30/2013 | 147 | 64.5 KB | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Support re: 146 MOTION for Certification of Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) re: 143 Order,.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) Modified on 12/30/2013 (db). (Entered: 12/30/2013) |

**App.28**

| | | | |
|---|---|---|---|
| 12/30/2013 | 148 | ☐ 5.5 KB | MOTION to Stay *the Litigation With Respect to Individuals Subject To The Binding Arbitration Agreement Pending Resolution Of Defendants Motion for Immediate Appeal And Any Subsequent Appeal*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 12/30/2013) |
| 12/30/2013 | 149 | ☐ 62.3 KB | MEMORANDUM OF LAW in Support re: 148 MOTION to Stay *the Litigation With Respect to Individuals Subject To The Binding Arbitration Agreement Pending Resolution Of Defendants Motion for Immediate Appeal And Any Subsequent Appeal.*. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 12/30/2013) |
| 12/30/2013 | 150 | ☐ 5.6 KB | MOTION Certification for Immediate Appeal Pursuant to 28 USC 1292(b) re: 143 Order,. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co..(Linthorst, Thomas) (Entered: 12/30/2013) |
| 12/30/2013 | | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Thomas Anton Linthorst to RE-FILE Document 147 Memorandum of Law in Support of Motion. ERROR(S): Refile and link to 150 Motion. (db)** (Entered: 12/30/2013) |
| 12/30/2013 | 151 | ☐ 64.5 KB | MEMORANDUM OF LAW in Support re: 150 MOTION Certification for Immediate Appeal to 28 USC 1292(b) re: 143 Order,.. Document filed by Chase investment Services Corp., J.P. Morgan Chase & Co.. (Linthorst, Thomas) (Entered: 12/30/2013) |
| 01/09/2014 | 152 | ☐ 175.1 KB | LETTER MOTION for Extension of Time to File Response/Reply as to 150 MOTION Certification for Immediate Appeal Pursuant to 28 USC 1292(b) re: 143 Order,., 148 MOTION to Stay *the Litigation With Respect to Individuals Subject To The Binding Arbitration Agreement Pending Resolution Of Defendants Motion for Immediate Appeal And Any Subsequent Appeal*. addressed to Judge Laura Taylor Swain from Rachel Bien dated 1/9/2014. Document filed by Lawrence R. Kaufmann, Jeffrey Lloyd.(Bien, Rachel) (Entered: 01/09/2014) |
| 01/10/2014 | 153 | | ORDER granting 152 Letter Motion for Extension of Time to File Response/Reply re 150 MOTION Certification for Immediate Appeal Pursuant to 28 USC 1292(b) re: 143 Order,., 148 MOTION to Stay *the Litigation With Respect to Individuals Subject To The Binding Arbitration Agreement Pending Resolution Of Defendants Motion for Immediate Appeal And Any Subsequent Appeal*. Responses due by 1/16/2014 Replies due by 1/27/2014. (HEREBY ORDERED by Magistrate Judge Henry B. Pitman)(Text Only Order) Copies of Notice of Electronic Filing Sent By Chambers. (Pitman, Henry) (Entered: 01/10/2014) |

View Selected        Total filesize of selected documents (MB): _____

or                Maximum filesize allowed (MB): 10

**App.29**

Case 13-3963, Document 47, 01/30/2014, 1146547, Page32 of 177

Download Selected

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/13/2014 13:39:06 | | | |
| **PACER Login:** | eg0149 | **Client Code:** | 71724-088888-0000 |
| **Description:** | Docket Report | **Search Criteria:** | 1:11-cv-09305-LTS-HBP |
| **Billable Pages:** | 21 | **Cost:** | 2.10 |

**App.30**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JEFFREY LLOYD, ET AL., | |
| Plaintiffs, | **Civil Action No. 11-CV-9305 (LTS)** |
| v. | |
| JPMORGAN CHASE & CO. AND CHASE INVESTMENT SERVICES CORP., | **NOTICE OF APPEAL** |
| Defendants. | |

Notice is hereby given that Defendants J.P. Morgan Securities, LLC (as successor in interest to Chase Investment Services Corp. ("CISC")) and JPMorgan Chase & Co. (collectively, "Defendants"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 16(a)(1), hereby appeal to the United States Court of Appeals for the Second Circuit from the following Order of the United States District Court for the Southern District of New York:

- Memorandum Order (docket no. 116), entered on September 10, 2013, in particular the Order denying Defendants' motion to compel arbitration and dismiss or, alternatively, stay proceedings with respect to the arbitration agreements applicable to Plaintiff Lawrence Kaufmann and Opt-in Plaintiffs Susan Hyman, Alan Krichman and Jeffrey Lammert.

**App.31**

Respectfully Submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _s/ Thomas A. Linthorst_____

Dated: October 8, 2013

Sam S. Shaulson (SS-0460)
Thomas A. Linthorst (TL-3345)
Blair J. Robinson (Admitted *Pro Hac Vice*)
101 Park Avenue
New York, NY 10178
212.309.6718
*Attorneys for Defendants*

**App.32**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JEFFREY LLOYD, et al.,

            Plaintiffs,

      -v-                               No. 11 Civ. 9305 (LTS)

J.P. MORGAN CHASE & CO., et al.,

            Defendants.
--------------------------------------------------------x
KENNETH CIULLO,

            Plaintiff,

      -v-                               No. 12 Civ. 2197 (LTS)

J.P MORGAN CHASE & CO., et al.,

            Defendants.
--------------------------------------------------------x

MEMORANDUM ORDER

        Plaintiffs, who were formerly employed as Financial Advisors or Financial

Advisor Associates in New York and New Jersey by J.P. Morgan Chase & Co. ("J.P. Morgan")

and Chase Investment Services Corp. ("CISC") (collectively "Chase" or "Defendants"), bring

these putative class and collective actions against Defendants for alleged violations of the Fair

Labor Standards Act ("FLSA), the New York Labor Law ("NYLL"), and the New Jersey Wage

and Hour Law ("NJWHL"). Before the Court are three motions: 1) Plaintiffs' motion for

conditional collective action certification in connection with their FLSA claims; 2) Defendants'

motion to compel arbitration and dismiss or, alternatively, stay the claims asserted by Opt-in

Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott Vanhoogstraat, Peter Piccoli and

Graeme H. Patey; and 3) Defendants' motion to compel arbitration and dismiss or, alternatively,

stay the claims asserted by Plaintiff Lawrence Kaufmann and Opt-in Plaintiffs Susan Hyman,

**App.33**

Alan Krichman and Jeffrey Lammert. The Court has considered carefully all of the parties'

submissions. For the following reasons, Plaintiffs' motion for conditional certification is

granted; Defendants' motion to compel arbitration as to Plaintiffs Johnson, Zaat-Hetelle,

Vanhoogstraat, Piccoli and Patey is granted; and Defendants' motion to compel arbitration as to

Plaintiffs Kaufmann, Hyman, Krichman and Lammert is denied.

## BACKGROUND

The following facts are taken from the allegations in the Amended Complaint

("Compl.") and affidavits,[1] and are assumed to be true for purposes of the instant motion

practice. On December 19, 2011, Plaintiffs Jeffrey Lloyd and Ellen Szymkiewicz commenced

the instant action against CISC and J.P. Morgan Chase & Co., alleging that they and all other

current and former Financial Advisors and Financial Advisor Associates were misclassified as

"exempt" and thus were denied overtime compensation to which they were entitled. Plaintiffs

filed an Amended Class Action Complaint ("Am. Compl.") on April 19, 2012.[2] Plaintiffs bring

claims on behalf of a purported nationwide collective under the FLSA, a New York class under

New York law, and a New Jersey class under New Jersey law.[3]

All Financial Advisors and Financial Advisor Associates (together, "Financial

---

[1] For purposes of this motion practice, the Court takes as true affidavits that proffered by Plaintiffs or that are offered by Defendants and uncontroverted.

[2] The Amended Complaint replaced named Plaintiff Szymkiewicz with Lawrence Kaufmann. (ECF No. 31.) On November 27, 2012, the Court so-ordered a stipulation dismissing Szymkiewicz's claims with prejudice.

[3] On March 23, 2012, Plaintiff Kenneth Ciullo filed a separate action, Ciullo v. J.P. Morgan Chase & Co., No. 12 Civ. 2197, asserting similar claims. The Court accepted Ciullo as a related case on June 6, 2012. Plaintiffs' instant motion practice does not seek certification of their putative state law class action claims pursuant to Federal Rule of Civil Procedure 23.

**App.34**

Advisors" or "FAs") have the same primary job duty, which is selling Chase's financial products to individuals in Chase branches. (See, e.g., Lloyd Decl. at 4-5, Exh. G to Bien Aff. in Support of Motion to Certify Class, ECF No. 64 (hereinafter "Bien Class Cert. Aff.").) The typical day-to-day duties of a Financial Advisor involve:

1) Making calls to individuals to tell them about Chase products for sale and to attempt to sign those individuals up as customers;

2) Meeting individuals at Chase branches to attempt to sign them up for Chase products;

3) Soliciting "walk-in" individuals in Chase branches and attempting to sign them up for Chase products; and

4) Interacting with Chase bankers in the branches in order to obtain customer referrals for purposes of selling Chase financial products.

(See, e.g., Kaufmann Decl. at 8, Exh. H to Bien Class Cert. Aff.) Chase's training manual for Financial Advisors describes them as "Sales Specialists" and instructs them as to the "art of selling." (Training Workbook at 8, 23-24, Exh. B to Bien Class Cert. Aff.) Chase's job description for Financial Advisors is uniform across the country (see Exh. E to Bien Class Cert. Aff.), and all Financial Advisors are subject to the same system of compensation. (Exh. C to Bien Class Cert. Aff.) Chase classifies all Financial Advisors as "exempt" employees for FLSA purposes and does not pay them overtime compensation.

Opt-in Plaintiffs Johnson, Zaat-Hetelle, Vanhoogstraat, Piccoli and Patey

Upon being hired by Chase, each of these Plaintiffs entered into a written Binding Arbitration Agreement (the "BAA"), which provides that:

**App.35**

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

1. SCOPE: Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase . . . shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

2. COVERED CLAIMS: "Covered Claims" include all legally protected employment-related claims that I have or in the future may have against JPMorgan Chase . . . which arise out of or relate to my employment or separation from employment with JPMorgan Chase . . . including, but not limited to, . . . [violations of] the Fair Labor Standards Act of 1938 . . . .

4. CLASS ACTION/COLLECTIVE ACTION WAIVER: All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis. Covered parties expressly wave any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. . .

(Heather Emmert Decl., Exhs. A-J; Plaintiffs' Binding Arbitration Agreements at 1, 2, and 4

(attached as Exh. 1 to Linhorst Decl., ECF No. 69).)


Plaintiff Kaufmann, and Opt-in Plaintiffs Hyman, Krichman and Lammert

In May and June of 2009, each of these Plaintiffs executed an arbitration

agreement (the "Agreement") with Defendants, which provides in pertinent part as follows:

12. Arbitration of Controversies
Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law . . . . [N]o claims shall be arbitrated on a class or collective action or collective or class-wide basis.

**App.36**

(Heather Emmert Decl., Exhs. A-D; Agreements at 12 (attached as Exh. 1 to Linhorst Decl.,
ECF No. 70).)

D<small>ISCUSSION</small>

Conditional Certification

Plaintiffs seek conditional certification of a collective action pursuant to section

16(b) of the FLSA, which authorizes private parties to bring overtime claims "[o]n behalf of . . .

themselves and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiffs argue that

Chase FAs were misclassified as exempt employees and so were improperly denied overtime

wages. Defendants' principal merits defense to Plaintiffs' claims is that FAs are subject to the

FLSA's administrative exemption.[4] See 29 C.F.R. §§ 541.200; 541.203(b).

In determining whether to certify an FLSA collective action to facilitate notice to

other potential plaintiffs, the court makes an initial assessment as to whether there are potential

opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the claim

asserted under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

Plaintiffs need make only a "'modest factual showing'" that they and potential opt-in plaintiffs

"together were victims of a common policy or plan that violated the law." Id. "In an FLSA

exemption case, plaintiffs accomplish this by making some showing that there are other

employees . . . who are similarly situated with respect to their job requirements and with regard

to their pay provisions, on which the criteria for many FLSA exemptions are based, who are

classified as exempt pursuant to a common policy or scheme." Id. While the "modest factual

---

[4]      Defendants also argue that Plaintiffs could potentially be subject to the professional
exemption, the executive exemption, the highly compensated exemption, and the
outside sales exemption. See 29 C.F.R. §§ 541.301;541.100; 541.601; 541.500.

**App.37**

showing" may not be satisfied by unsupported assertions, it is a low standard of proof, as the "purpose of [the] first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." Id. (emphasis in original); see also Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006) (courts apply a lenient standard for conditional certification of a collective action). "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Pippins v. KPMG LLP, No. 11 Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan 3, 2012). "Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying' employees as exempt." Id. (internal quotations omitted).

Plaintiffs have submitted declarations from thirteen individuals who worked as Financial Advisors in ten different states. These individuals testify that they all performed the same primary job duty and day-to-day tasks, were subject to the same compensation policies, and regularly worked overtime at Chase. (Exhs. G-S to Bien Class Cert. Aff.) Plaintiffs also point to Chase's job description of the Financial Advisor position, which is identical for various locations in the United States. (See Exh. E to Bien Class Cert. Aff.)

Defendants argue, in opposition, that FAs are correctly classified as exempt from the FLSA's overtime regulations and that there are significant variations in the duties of FAs, such that they cannot be considered "similarly situated." At this stage of the certification inquiry, neither of Defendants' arguments is availing.[5]

---

[5]     The Court also notes that Defendants' two arguments contradict each other to at least some extent. On the one hand, Defendants contend that all FAs are so similarly situated that they are properly classified as exempt under the administrative exemption. On the other hand, Defendants contend that FAs vary so drastically in job responsibilities that, as a class, they are not similarly situated for purposes of challenging the classification.

**App.38**

Defendants' argument that conditional certification should be denied because FAs are correctly classified as exempt is not appropriately considered at this conditional stage of the certification inquiry. Exemptions "are affirmative defenses to overtime pay claims, and [an employer] bears the burden of proving that a plaintiff has been properly classified as an exempt employee." Pippins, 2012 WL 19379, at *3. Accordingly, whether or not Plaintiffs are properly subject to an exemption from the FLSA's overtime provisions is a merits issue; the law is clear that courts should not weigh the merits at this point in the litigation. Id. at *6.[6] Defendants' reliance on Bachrach v. Chase Investment Services Corp., et al., No. 06-2785, 2007 WL 3244186 (D.N.J. Nov. 1, 2007) is misplaced. In Bachrach, Plaintiffs had moved under Federal Rule of Civil Procedure 23 for certification of a class of FAs employed by Chase in an overtime case asserting state law claims. The Bachrach court denied the motion, noting that the proposed class members likely qualified as "administrative employees" and thus would not have a viable claim to overtime pay under the relevant state provisions. 2007 WL 3244186, at *1. The Bachrach Court applied the more demanding Rule 23 class certification standard, and denied Rule 23 class certification for reasons that are not relevant to the instant FLSA inquiry.

Defendants next contend that Plaintiffs and other FAs are not similarly situated with respect to their job duties and possible exempt status. In support of this argument, Defendants have submitted numerous declarations in which other Chase FAs testify that their

---

[6] This Court declines to follow Amendola v. Bristol-Myers Squib, 558 F. Supp. 2d 459 (S.D.N.Y. 2008), which, citing the standard established by the Second Circuit for Rule 23 class certification decisions, conducted an analysis of the parties' likelihood of success on the merits in denying conditional FLSA certification. The Second Circuit's subsequent decision in Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010), clarified the continued vitality of the lower, "some showing" standard for initial FLSA notice determinations. See, e.g., Cunningham v. Electronic Data Systems Corp., 754 F. Supp. 2d 638, 645-46 (S.D.N.Y. 2010) (declining to follow Amendola); Stevens v. HMSHost Corp., No. 10 Civ. 3571, 2012 WL 4801784, at *2 n.5 (E.D.N.Y. Oct. 10, 2012) ("Amendola has been soundly rejected within this circuit").

**App.39**

duties varied widely.  As an initial matter, Plaintiffs argue that the Court should not consider the declarations submitted by Chase, because Chase did not previously disclose the identities of the declarants.  See Federal Rule of Civil Procedure 26(a)(1)(A)(i) (requiring a party to disclose the identity of individuals likely to have discoverable information that the party may use to support its claims or defenses); Brown v. Wal-Mart Stores, Inc., No. 09 Civ. 3339, 2012 WL 3672957, at *2-3 (N.D. Cal. Aug 24, 2012) (declining to consider declarations submitted by defendant in opposition to motion for class certification when defendant did not disclose identities of declarants pursuant to Rule 26.)  The Court need not address the issue of Defendants' Rule 26(a)(1) compliance because even if Defendants' proffers are considered, Plaintiffs' evidence is sufficient to satisfy Plaintiffs' burden of showing that other FAs are, potentially, similarly situated.  See Pippins, 2012 WL 19379, at *12 ("To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid").

The declarations that Plaintiffs have submitted, along with Chase's own description of the Financial Advisor position are sufficient to demonstrate that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions . . . who are classified as exempt pursuant to a common policy or scheme."  See Myers v. Hertz Corp., 624 F.3d at 555; see also Pippins, 2012 WL 19379, at *9 (granting conditional certification where plaintiffs "submitted pleadings, affidavits, and other evidence . . . that they [were] similarly situated with respect to their job duties and requirements" and employer's job description for the position of Audit Associate was identical across offices).  Plaintiffs' declarations further assert that FAs were compensated in the same manner, and

**App.40**

regularly worked overtime. There is no dispute that Chase classified all FAs as exempt from the FLSA's overtime provisions.

The cases upon which Defendants rely are readily distinguishable. See, e.g., Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800-01 (S.D.N.Y. 2012) (denying conditional certification of nationwide class when plaintiff only presented evidence of duties performed by two employees who both worked in New York); Khan v. Airport Mgmt. Servs., LLC, 10 Civ. 7735, 2011 WL 5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (denying conditional certification where, inter alia, employees plaintiff identified as similarly situated submitted declarations rejecting plaintiff's claims). Finally, Defendants' argument that exemption defenses preclude a collective action because they require fact-intensive inquiries of the tasks that FAs performed is unavailing. Courts have repeatedly rejected such arguments. See, e.g., Cohen v. Lehrman Grp., 686 F. Supp. 2d 317, 329-30 (S.D.N.Y. 2010) (court declined "to wade into a thicket of competing factual assertions at this preliminary stage" and noted that "to hold to the contrary would preclude certification of a collective action in any FLSA case where the defendant was asserting an . . . exemption defense").

Accordingly, the Court finds that Plaintiffs have made the "modest factual showing" necessary to support conditional certification.

To enable "similarly situated" potential plaintiffs to opt in to this action, the court has discretion to authorize notice to such individuals. In re Penthouse Exec. Club. Compensation, No. 10 Civ. 1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010). The Court also has discretion regarding the form and content of the notice. Id., at *5. Plaintiffs have submitted a proposed notice (Exh. F to Bien Class Cert. Aff.), to which Defendants have raised numerous objections. The parties are directed to confer regarding the content of the notice, and

**App.41**

are to submit a joint proposal to the Court for approval within fourteen days of the entry of this Memorandum Order.  If the parties are unable to agree on particular provisions, the disagreements and the reasons for each party's preference shall be specified.  See In re Penthouse, 2010 WL 4340255, at *5.

The Court will authorize delivery of the notice by first class mail, in addition to work and personal email.  See Pippins, 2012 WL 19379, at *14 ("[G]iven the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate").   The Court declines to toll the statute of limitations and, accordingly, notice will be limited to individuals who were Financial Advisors within three years from the date the Court issues an order approving the proposed notice.  See In re Penthouse, 2010 WL 4340255, at *5 n.4 ("[I]t is appropriate at this stage for the plaintiffs to provide notice to all dancers who worked at the Penthouse Executive Club within three years of the sending of the notice to conform as closely to 29 U.S.C. § 256 as possible"); see also Gordon v. Kaleida Health, No. 08-CV-3785, 2009 WL 3334784, at *12-13 (S.D.N.Y. Oct. 14, 2009) ("In this Circuit, 'equitable tolling is only appropriate in [] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights'") (quoting Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)).


Motion to Compel Arbitation and Dismiss Or, Alternatively, Stay Claims by Opt-in Plaintiffs Robert M. Johnson, Jennifer Zaat-Hetelle, Scott Vanhoogstraat, Peter Piccoli and Graeme H. Patey

Defendants move to compel certain opt-in Plaintiffs to arbitrate their claims and dismiss or stay the claims they assert in this action.  As explained above, these Plaintiffs agreed to arbitrate Covered Claims (including FLSA overtime claims) in accordance with the terms and

**App.42**

conditions of a Binding Arbitration Agreement ("BAA").  Plaintiffs do not dispute that the BAA

encompasses their claims.  Rather, Plaintiffs argue that the BAA is not enforceable because 1)

the right to proceed collectively under the FLSA cannot be waived; and 2) Plaintiffs will not be

able to vindicate their statutory rights in individual arbitration.  Neither of Plaintiffs' arguments

has merit.

      "It is well settled that federal statutory claims can be the subject of arbitration,

absent a contrary Congressional intent . . . The burden of showing such legislative intent lies

with the party opposing arbitration."  Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d

Cir. 1998).  The Second Circuit has squarely held that an employee's right to proceed

collectively under the FLSA may be waived pursuant to an arbitration agreement.  See

Sutherland v. Ernst & Young LLP, No. 12-304-cv, 2013 WL 4033844, at *4-5 (2d Cir., Aug. 9,

2013) ("Supreme Court precedents inexorably lead to the conclusion that the waiver of collective

action claims is permissible in the FLSA context").  Accordingly, the Court finds that a waiver

of the right to proceed collectively under the FLSA is not per se unenforceable.[7]

      Plaintiffs next argue that, even if the class waiver at issue in the BAA is not per se

unenforceable, it still cannot be enforced because it would preclude Plaintiffs from vindicating

their statutory rights.  Plaintiffs' argument is premised on a decision by the Second Circuit,

finding that class action waivers should be evaluated on a case-by-case basis, considering "the

---

[7]     To the extent that Plaintiffs rely on In re D.R. Horton, Inc., 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012), for the proposition that a waiver of the right to proceed collectively under the FLSA is unenforceable as a violation of the NLRA, this Court declines to follow that decision.  In addition to the possibility that D.R. Horton was decided without a proper quorum, see, e.g., NLRB v. New Vista Nursing & Rehabilitation, 2013 WL 2099742 (3d Cir. May 16, 2013); Canning v. NLRB, 705 F.3d 490 (D.C. Cir. 2013), this Court owes no deference to decisions by the NLRB, insofar as they interpret or attempt to reconcile the FAA with the NLRA.  See Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 144 (2002).

**App.43**

fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, [and] the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claims." In re Am. Express Merch. Litig., 554 F.3d 300, 321 (2d Cir. 2009) (internal quotations omitted). The Supreme Court reversed that decision in Am. Express Co., v. Italian Colors Restaurant, 133 S. Ct. 2304, 2310-12 (2013), holding that waivers of class arbitration should be enforced, notwithstanding any allegations that pursuing an individual claim in arbitration would be cost prohibitive. Accordingly, the Court finds that the BAA is enforceable and Defendants' motion to compel arbitration as to Opt-in Plaintiffs Johnson, Zaat-Hetelle, Vanhoogstraat, Piccoli and Patey is granted. Those Plaintiffs' claims are dismissed without prejudice to arbitration.

Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman and Jeffrey Lammert

        Defendants also move to compel named Plaintiff Kaufmann and Opt-in Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert to arbitrate their claims and dismiss or stay the claims they assert in this action. As explained above, each of these Plaintiffs executed an arbitration agreement (the "Agreement") with Defendants, agreeing to arbitrate his or her claims on an individual basis.

        There are two sets of class or collective claims at issue in this case. First, named Plaintiff Kaufmann brings a Rule 23 putative class claim under New York law. Second, all four of these plaintiffs bring putative collective claims pursuant to the FLSA. The Agreement provides in pertinent part that:

        Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a

**App.44**

> registered representative or your employment and/or the termination thereof
> *required to be arbitrated by the FINRA Rules* shall be resolved by individual (not
> class or collective) arbitration in accordance with the Code of Arbitration
> Procedure of the FINRA . . . .

(Heather Emmert Decl., Exhs. A-D; Agreements at 12 (attached as Exh. 1 to Linhorst Decl., ECF No. 70) (emphasis added).)  FINRA Rule 13204(a), which was in effect at the time the four plaintiffs entered into their Agreements with Chase, provides that an arbitration agreement may not be enforced against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until one of four conditions occurs: 1) the class certification is denied; 2) the class is decertified; 3) the member of the certified or putative class is excluded from the class by the court; or 4) the member of the certified or putative class elects not to participate in the class or withdraws from the class.  FINRA Rule 13204(a).

FINRA Rule 13204(b), which became effective in July 2012, extends these principles to collective actions, providing that "[a] member . . . may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified."  FINRA Rule 13204(b)(4).[8]

---

[8]     See FINRA Regulatory Notice 12-29, <u>available</u> <u>at</u> http://www.finra.org/web/groups/industry/@ip/@reg/@notice/documents/notices/p12 6870.pdf.  Defendants' argument that the Court should ignore the 2012 amendment to Rule 13204 is unpersuasive – the Agreement incorporates the arbitration parameters defined by the FINRA Rules, without any specific temporal reference. It is consistent with the language of the agreement, and with FINRA's own effective date statement, to apply the current provisions of the rules.  To read the Agreement to require arbitration of putative collective claims that FINRA clearly does not require to be arbitrated would render the arbitration provision of the Agreement self-contradictory.  The plain and logical import of the language of the Agreement is that arbitration is not required when FINRA does not require it.

**App.45**

The arbitration provision of Chase's Agreement with these four Plaintiffs clearly requires individual arbitration only to the extent such arbitration is "required . . . by the FINRA Rules." Because the FINRA Rules, as currently in effect, clearly do not require, and indeed preclude at this juncture, arbitration of the class and collective action claims raised in this litigation, Defendants' motion to compel arbitration of the claims of Plaintiffs Kaufman, Hyman, Krichman and Lammert must be denied.  Cf. Alakozai v. Chase Investment Services Corp., No. CV 11-09178, 2012 WL 748584, at *3 (C.D. Cal. Mar. 1, 2012) (denying motion to compel arbitration under same Agreement of putative Rule 23 class claim).

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification is granted. Defendants motion to compel arbitration as to opt-in plaintiffs Johnson, Zaat-Hetelle, Vanhoogstraat, Piccoli and Patey is granted, and the claims of those plaintiffs are dismissed without prejudice to arbitration.  Defendants' motion to compel arbitration as to named plaintiff Kaufmann and Opt-in plaintiffs Hyman, Krichman and Lammert is denied.  This Memorandum Order resolves docket entry nos. 62, 65 and 67.

The parties are directed to confer regarding the content of the notice to be disseminated to potential opt-in plaintiffs, and must submit a joint proposal to the Court for approval within 14 (fourteen) days of the entry of this Memorandum Order.

**App.46**

SO ORDERED.


Dated: New York, New York
        September 9, 2013


_____/S_____
LAURA TAYLOR SWAIN
United States District Judge

**App.47**

Outten & Golden LLP
Adam T. Klein
Rachel Bien
Elizabeth Wagoner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LLOYD and LAWRENCE KAUFMANN, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>J.P. MORGAN CHASE & CO. and CHASE INVESTMENT SERVICES CORP.,<br><br>Defendants. | No. 11 Civ. 09305 (LTS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>Jury Trial Requested |

Plaintiffs Jeffrey Lloyd and Lawrence Kaufmann, by their attorneys, Outten & Golden LLP, for themselves and on behalf of all others similarly situated, for claims against Defendants J.P. Morgan Chase & Co. and Chase Investment Services Corp. (collectively "Defendants" or "Chase"), allege as follows:

## NATURE OF THE ACTION

1.      This class action challenges Defendants' policy and practice of classifying their employees whose primary duties involve selling securities and other financial products at Chase branches ("Financial Advisors") as exempt from the overtime requirements of state and federal law and failing to pay such employees overtime for the hours they work over forty in a

**App.48**

workweek.

2.      Plaintiffs bring this action on behalf of themselves and similarly situated Financial Advisors who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage-and-hour provisions of the FLSA that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

3.      Plaintiff Lawrence Kaufmann brings this action on behalf of himself and all similarly situated current and former Financial Advisors in New York as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law Art. 6, §§ 190 *et seq*. and Art. 19, §§ 650 *et seq*. and the supporting New York State Department of Labor Regulations, 12 N.Y. Comp. Codes R. & Regs. tit. 12, Part 142 *et seq*. (collectively, "NYLL").

4.      Plaintiff Jeffrey Lloyd brings this action on behalf of himself and all similarly situated current and former Financial Advisors in New Jersey as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey State Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq*., and the supporting regulations, N.J. Admin. Code §§ 12:56 *et seq*. (collectively, the "NJSWHL").

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332 (the Class Action Fairness Act) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6.      Plaintiffs' state law claims are so closely related to Plaintiffs' claims under the Fair Labor Standards Act that they form part of the same case or controversy under Article III of the United States Constitution.

**App.49**

7.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      At least one member of the proposed class is a citizen of a state different from that of Defendants.

9.      Plaintiffs' claims involve matters of national or interstate interest.

10.     Upon information and belief, citizenship of the members of the proposed class is dispersed among a substantial number of states and countries.

11.     Upon information and belief, there are more than 100 members of the proposed classes in the aggregate.

12.     Defendants are subject to personal jurisdiction in New York.

13.     Defendants maintain their principal place of business in New York, New York.

14.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in the Southern District of New York.

17.     A substantial part of the events or omissions giving rise to the claims occurred in this District.

## **THE PARTIES**

**Lawrence Kaufmann**

18.     Plaintiff Lawrence Kaufmann ("Kaufmann") resides in Tenafly, New Jersey.

3

**App.50**

19.     Kaufmann worked for Chase as a Financial Advisor in Manhattan from approximately April or May 2009 to approximately October 2011.

20.     Kaufmann's primary duties involved selling Chase's financial products, including annuities and mutual funds, to individuals at various Chase branches in New York.

21.     Throughout the relevant period, Kaufmann was a covered employee within the meaning of the FLSA and NYLL.

22.     Kaufmann has consented to join this action by filing a written consent form.  ECF No. 6.

**Jeffery Lloyd**

23.     Plaintiff Jeffrey Lloyd ("Lloyd") resides in Fort Lee, New Jersey.

24.     Lloyd worked for Chase as a Financial Advisor in New Jersey from approximately January 2008 to approximately June 29, 2011.

25.     Lloyd's primary duties involved selling Chase's financial products, including annuities and mutual funds, to individuals at various Chase branches in New Jersey.

26.     Throughout the relevant period, Lloyd was a covered employee within the meaning of the FLSA and NJSWHL.

27.     Lloyd has consented to join this action by filing a written consent form.  ECF No. 1.

**Defendants**

28.     Defendant J.P. Morgan Chase & Co. is a Delaware corporation with its principal place of business in New York City.

29.     Defendant Chase Investment Services Corp. is a Delaware corporation with its principal place of business in New York City.

**App.51**

30.     Throughout the relevant period, Defendants have been covered employers as that term is used in all relevant laws and, at all relevant times, employed and/or jointly employed Plaintiffs and similarly situated employees.

31.     Throughout the relevant period, Defendants' annual gross volume of sales made or business done was not less than $500,000.

## COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiffs bring the First Cause of Action, the FLSA claim, on behalf of themselves and a collective consisting of all persons who have worked for Defendants as Financial Advisors or in positions with different titles but the same or similar duties, including, but not limited to: Personal Financial Advisors, Independent Financial Advisors, Financial Advisor Associates, Senior Financial Consultants, Investment Sales Representatives, and/or RIS Team Leaders between January 1, 2009 and the date of final judgment in this action and who elect to opt-in to this action (the "FLSA Collective").

33.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective. The FLSA claim in this lawsuit should be adjudicated as a collective action. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

**App.52**

## CLASS ACTION ALLEGATIONS

**The New York Class**

34.     Plaintiff Lawrence Kaufmann ("the New York Plaintiff") brings the Second Cause of Action, New York Claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class consisting of all persons who have worked for Defendants in New York as Financial Advisors or in positions with different titles but the same or similar duties, including, but not limited to: Personal Financial Advisors, Independent Financial Advisors, Financial Advisor Associates, Senior Financial Consultants, Investment Sales Representatives, and/or RIS Team Leaders between January 1, 2009 and the date of final judgment in this action (the "New York Class").

35.     Excluded from the New York Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Class.

36.     The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to the New York Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

37.     Upon information and belief, the size of the New York Class is at least 50 employees.

38.     Defendants acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

**App.53**

with respect to the New York Class as a whole.

39.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

a.     whether Defendants failed to keep true and accurate time records for all hours worked by New York Plaintiff and the New York Class;

b.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

c.     whether Defendants failed and/or refused to pay the New York Plaintiff and the New York Class overtime pay for hours worked in excess of 40 hours per workweek as required by the NYLL;

d.     the nature and extent of the class-wide injury and the appropriate measure of damages for the New York Class;

e.     whether Defendants have a policy of misclassifying workers as exempt from coverage of the overtime provisions of the NYLL; and

f.     whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the law.

40.     The claims of the New York Plaintiff are typical of the claims of the New York Class he seeks to represent.  The New York Plaintiff and the New York Class Members work or have worked for Defendants in New York and have been subjected to their policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week. Defendants acted and refused to act on grounds generally applicable to the New York Class,

**App.54**

thereby making declaratory relief with respect to the New York Class appropriate.

41.    The New York Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the New York Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the New York Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**The New Jersey Class**

43.    Plaintiff Lloyd ("the New Jersey Plaintiff") brings the Third Cause of Action, New Jersey Claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class consisting of all persons who have worked for Defendants in New Jersey as Financial Advisors or in positions with different titles but the same or similar duties, including, but not limited to: Personal Financial Advisors, Independent Financial Advisors, Financial Advisor Associates, Senior Financial Consultants, Investment Sales Representatives, and/or RIS Team Leaders between January 1, 2009 and the date of final judgment in this action (the "New Jersey Class").

44.    Excluded from the New Jersey Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during

**App.55**

the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New Jersey Class.

45.     The persons in the New Jersey Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to the New Jersey Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

46.     Upon information and belief, the size of the New Jersey Class is at least 50 employees.

47.     Defendants acted or refused to act on grounds generally applicable to the New Jersey Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New Jersey Class as a whole.

48.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the New Jersey Class that predominate over any questions solely affecting individual members of the New Jersey Class, including but not limited to:

    a.     whether Defendants failed to keep true and accurate time records for all hours worked by the New Jersey Plaintiff and the New Jersey Class;

    b.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

    c.     whether Defendants failed and/or refused to pay the New Jersey Plaintiff and the New Jersey Class overtime pay for hours worked in excess of 40 hours per workweek as required by the NJSWHL;

**App.56**

d.      the nature and extent of the class-wide injury and the appropriate measure of damages for the New Jersey Class;

e.      whether Defendants have a policy of misclassifying workers as exempt from coverage of the overtime provisions of the NJSWHL; and

f.      whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the law.

49.    The claims of the New Jersey Plaintiff are typical of the claims of the New Jersey Class he seeks to represent.  The New Jersey Plaintiff and the New Jersey Class Members work or have worked for Defendants in New Jersey and have been subjected to their policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week. Defendants acted and refused to act on grounds generally applicable to the New Jersey Class, thereby making declaratory relief with respect to the New Jersey Class appropriate.

50.    The New Jersey Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

51.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the New Jersey Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the New Jersey Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in

**App.57**

inconsistent judgments about Defendants' practices.

## CLASS AND COLLECTIVE FACTUAL ALLEGATIONS

52.     All of the work that Plaintiffs, the FLSA Collective, the New York Class

members, and the New Jersey Class Members (together, "Class Members") performed was

assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiffs and

the Class Members have performed.

53.     Upon information and belief, Defendants' business is a centralized, top-down

operation controlled by Defendants' headquarters in New York City.

54.     During the relevant period, it has been Defendants' nationwide policy and pattern

or practice to classify all Class Members as exempt from coverage of the overtime provisions of

the FLSA, NYLL, and/or NJSWHL.

55.     Defendants made the decision to classify all Class Members as exempt.

56.     Defendants compensated Class Members on the basis of an incentive

compensation plan and failed to pay them for any hours they worked in excess of 40 hours in a

workweek.

57.     As part of their regular business practice, Defendants have intentionally, willfully,

and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, NYLL, and

NJSWHL.  This policy and pattern or practice includes but is not limited to:

      a.   willfully failing to record all of the time that Plaintiffs and the Class Members

          have worked for the benefit of the Defendants;

      b.   willfully misclassifying Plaintiffs and the Class Members as exempt from the

          requirements of the FLSA, NYLL, and NJSWHL; and

      c.   willfully failing to pay Plaintiffs and the Class Members overtime wages for hours

          that they worked in excess of 40 hours per week.

**App.58**

58.     Upon information and belief, Defendants' unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA, NYLL, and NJSWHL.

59.     Defendants were aware, or should have been aware, that federal and state law required them to pay Plaintiffs and the Class Members an overtime premium for hours worked in excess of 40 per week.

60.     Defendants were aware, or should have been aware, that Plaintiffs and the Class Members' primary duty was selling securities and Chase financial products to individual customers in various Chase branches and that their primary duty was not directly related to Chase's or its customers' general business operations or management.

61.     Notwithstanding their job duties, Defendants classified Plaintiffs and the Class Members as exempt employees in an attempt to avoid paying them overtime compensation.

62.     Defendants' failure to pay Plaintiffs and the Class Members overtime wages for their work in excess of 40 hours per week was willful.

63.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFFS' FACTUAL ALLEGATIONS

64.     Kaufmann's primary job duty was to sell Chase financial products to individual Chase customers.

65.     Kaufmann regularly worked more than 40 hours per week and sometimes as many as 55 hours per week.

66.     Pursuant to Defendants' policy and pattern or practice, Defendants classified Kaufmann as exempt from overtime pay requirements and willfully failed to pay her for hours she worked for Defendants' benefit in excess of 40 hours per workweek.

**App.59**

67. Defendants failed to keep accurate records of Kaufmann's hours worked.

68. Lloyd's primary job duty was to sell Chase financial products to individual Chase customers.

69. Lloyd regularly worked more than 40 hours per week and sometimes as many as 55 hours per week.

70. Pursuant to Defendants' policy and pattern or practice, Defendants classified Lloyd as exempt from overtime pay requirements and willfully failed to pay him for hours he worked for Defendants' benefit in excess of 40 hours per workweek.

71. Defendants failed to keep accurate records of Lloyd's hours worked.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.**
**(On behalf of Plaintiffs and the FLSA Collective)**

72. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

73. Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

74. At all times relevant, Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

75. The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs and the FLSA Collective.

76. Defendants are employers and/or joint employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

77. At all times relevant, Plaintiffs and the members of the FLSA Collective were or

**App.60**

have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

78.     Defendants employed Plaintiffs and the members of the FLSA Collective as their employer.

79.     Defendants failed to pay Plaintiffs and the members of the FLSA Collective overtime wages for hours worked in excess of 40 per week, to which they are entitled under the FLSA.

80.     Defendants failed to keep accurate records of time worked by Plaintiffs and the members of the FLSA Collective.

81.     Defendants' violations of the FLSA, as described in this Class Action Complaint, have been willful and intentional.

82.     Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and the members of the FLSA Collective.

83.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

84.     As a result of Defendants' violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**New York Labor Law 190 *et seq*. and 650 *et seq*.**
**(On behalf of the New York Plaintiff and the New York Class Members)**

85.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**App.61**

86.     Defendants engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this First Amended Class Action Complaint.

87.     Defendants' violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

88.     At all times relevant, Defendants were employers of the New York Plaintiff and the New York Class Members within the meaning of the term "employer" in the NYLL.

89.     The New York Plaintiff and the New York Class Members are employees within the meaning of the term "employee" in the NYLL.

90.     Defendants suffered or permitted the New York Plaintiff and the New York Class Members to work.

91.     The overtime wage provisions of the NYLL apply to Defendants and protect the New York Plaintiff and the New York Class Members.

92.     Defendants failed to pay the New York Plaintiff and the New York Class Members overtime wages for hours worked in excess of 40 per week, to which they are entitled under the NYLL.

93.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the New York Plaintiff and the New York Class Members and failed to furnish to each of them their wage and hour records showing all hours worked or all wages earned and due for all work performed for labor or services rendered.

94.     By Defendants' knowing or intentional failure to pay the New York Plaintiff and the New York Class Members overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the NYLL.

95.     Due to these violations, the New York Plaintiff and the New York Class Members

**App.62**

are entitled to recover from Defendants unpaid overtime, liquidated damages, reasonable

attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New Jersey State Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq*.**
**(On behalf of the New Jersey Plaintiff and the New Jersey Class Members)**

96.     Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

97.     Defendants engaged in a widespread pattern, policy, and practice of violating the

NJSWHL, as detailed in this First Amended Class Action Complaint.

98.     Defendants' violations of the NJSWHL, as described in this Class Action

Complaint, have been willful and intentional.

99.     At all times relevant, Defendants were employers of the New Jersey Plaintiff and

the New Jersey Class Members within the meaning of the term "employer" in the NJSWHL.

100.     The New Jersey Plaintiff and the New Jersey Class Members are employees

within the meaning of the term "employee" in the NJSWHL.

101.     Defendants suffered or permitted the New Jersey Plaintiff and the New Jersey

Class Members to work.

102.     The overtime wage provisions of the NJSWHL apply to Defendants and protect

the New Jersey Plaintiff and the New Jersey Class Members.

103.     Defendants failed to pay the New Jersey Plaintiff and the New Jersey Class

Members overtime wages for hours worked in excess of 40 per week, to which they are entitled

under the NJSWHL.

104.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records

of time worked by the New Jersey Plaintiff and the New Jersey Class Members and failed to

furnish to each of them their wage and hour records showing all hours worked or all wages

**App.63**

earned and due for all work performed for labor or services rendered.

105.    By Defendants' knowing or intentional failure to pay the New Jersey Plaintiff and the New Jersey Class Members overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the NJSWHL.

106.    Due to these violations, the New Jersey Plaintiff and the New Jersey Class Members are entitled to recover from Defendants unpaid overtime, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated persons, pray for the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, been employed by Defendants as Financial Advisors (as defined above).  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Designation of the named Plaintiffs as class representatives, and counsel of record as Class Counsel;

C.    Unpaid overtime under the FLSA, NYLL, and NJSWHL;

D.    Liquidated damages permitted under the FLSA and NYLL;

E.    Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL and NJSWHL;

F.    Appropriate equitable and injunctive relief to remedy Defendants' violations,

**App.64**

including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

      G.      Pre-Judgment and Post-Judgment interest, as provided by law;

      H.      Attorneys' fees and costs of suit, including expert fees; and

      I.      Such other injunctive and equitable relief as the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:      New York, New York
              April 19, 2012

                       Respectfully submitted,
                       **OUTTEN & GOLDEN LLP**
                       By:

                       _____
                       Adam T. Klein

                       **OUTTEN & GOLDEN LLP**
                       Adam T. Klein
                       Rachel Bien
                       Elizabeth Wagoner
                       3 Park Avenue, 29th Floor
                       New York, New York 10016
                       Telephone:  (212) 245-1000

                       ***Attorneys for Plaintiffs and the Class and Collective***

**App.65**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LLOYD ET AL., <br><br> Plaintiffs <br><br> - against - <br><br> JPMORGAN CHASE & CO. AND CHASE INVESTMENT SERVICES CORP., <br><br> Defendants | **Civil Action No. 11 CV 9305 (LTS)** <br><br><br> **Document Electronically Filed** |

**NOTICE OF MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, TO STAY CLAIMS BY PLAINTIFF LAWRENCE KAUFMANN AND OPT-IN PLAINTIFFS SUSAN HYMAN, <u>ALAN KRICHMAN AND JEFFREY LAMMERT</u>**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., Defendants JPMorgan Securities, LLC (as successor in interest to Chase Investment Services Corp.) and JPMorgan Chase & Co. (collectively, "Defendants"), by their attorneys, and upon: (1) the accompanying Memorandum Of Law In Support Of Defendants' Motion to Compel Arbitration and Dismiss or, Alternatively, to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-In Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert; and (2) the Declaration Of Thomas A. Linthorst and its attached exhibits, will move this Court, before the Honorable Laura Taylor Swain, in the United States District Court, at the United States Courthouse for the Southern District of New York, 500 Pearl Street, Courtroom 11C, New York, NY, 10007, on a date and at a time to be designated by the Court, for an Order dismissing or, alternatively staying and compelling arbitration of certain Plaintiffs' claims, and granting Defendants such other and further relief as this Court deems just and proper.

**App.66**

Pursuant to Your Honor's Individual Practices, prior to filing this motion counsel for Defendants used their best efforts to resolve informally the matters raised in this submission. This included correspondence to Plaintiffs' counsel articulating the bases for this motion as well as a telephonic conference.

Dated:  New York, New York
January 14, 2013

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By:     /s/ Thomas A. Linthorst
        Sam S. Shaulson (SS-0460)
        Thomas A. Linthorst (TL-3345)
        101 Park Avenue
        New York, NY  10178
        (212) 309-6718


        *Attorneys for Defendants*

2

**App.67**

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson (SS 0460)
Thomas A. Linthorst (TL 3345)
101 Park Avenue
New York, NY 10178-0060
212.309.6718

*Attorneys for Defendants*
JPMorgan Chase & Co. and
JPMorgan Securities, LLC (as
successor in interest to Chase
Investment Services Corp.)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY LLOYD, ET AL,<br><br>               Plaintiff,<br><br>-against-<br><br>JPMORGAN CHASE & CO. AND CHASE<br>INVESTMENT SERVICES CORP.,<br><br>               Defendants. | Case No. 11 CV 9305 (LTS)<br><br>**ELECTRONICALLY FILED** |

**DECLARATION OF THOMAS A. LINTHORST IN SUPPORT**
**OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR,**
**ALTERNATIVELY, TO STAY CLAIMS BY PLAINTIFF LAWRENCE**
**KAUFMANN AND OPT-IN PLAINTIFFS SUSAN HYMAN,**
**ALAN KRICHMAN AND JEFFREY LAMMERT**

I, Thomas A. Linthorst, hereby declare as follows:

        1.     I am an attorney admitted to practice law in the State of New York and

a partner at the law firm Morgan, Lewis & Bockius LLP.  I am counsel for Defendants

JPMorgan Securities, LLC (as successor in interest to Chase Investment Services Corp.) and

JPMorgan Chase & Co. (collectively, "Defendants") in the above-captioned action, and

submit this Declaration in support of Defendants' Motion to Compel Arbitration and Dismiss,

or, Alternatively to Stay Claims by Plaintiff Lawrence Kaufmann and Opt-in Plaintiffs Susan

Hyman, Alan Krichman and Jeffrey Lammert.

**App.68**

2.      Attached hereto as Exhibit 1 is a true and correct copy of a Declaration of Heather Emmert.

3.      Attached hereto as Exhibit 2 is a true and correct copy of FINRA Rule 13204 (effective December 15, 2008).

4.      Attached hereto as Exhibit 3 is a true and correct copy of FINRA Rule 13204 (effective July 9, 2012).

5.      Attached hereto as Exhibit 4 is a true and correct copy of *Mansberger v. Ernst & Young LLP*, No. 652093/10, Mtn. Seq. No. 004, "Decision and Order" (Sup. Ct. N.Y. Cnty. July 7, 2011).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 14, 2013

Thomas A. Linthorst

Princeton, New Jersey

**App.69**

## DECLARATION OF HEATHER EMMERT

I, Heather Emmert, hereby declare as follows:

1.      I currently serve as a Compliance Manager for JPMorgan Chase.  I have personal knowledge of the facts set forth in this declaration, and if called and sworn as a witness, I could and would competently testify to these facts.

2.      In my capacity as Compliance Manager, I have access to employee compliance files for individuals employed by Chase Investment Services Corp. ("CISC"), which is now J.P. Morgan Securities, LLC, which files are kept in the ordinary course of CISC's business, and contain copies of certain documents the employees signed in connection with their registration and employment.

3.      CISC's compliance files for Plaintiff Lawrence R. Kaufmann contain the Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Arbitration Agreement").  Attached as Exhibit A is a true and correct copy of the executed Arbitration Agreement from Mr. Kaufmann's CISC compliance files.

4.      CISC's compliance files for Plaintiff Susan Hyman contain the Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Arbitration Agreement").  Attached as Exhibit B is a true and correct copy of the executed Arbitration Agreement from Ms. Hyman's CISC compliance files.

5.      CISC's compliance files for Plaintiff Alan Krichman contain the Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Arbitration Agreement").  Attached as Exhibit C is a true and correct copy of the executed Arbitration Agreement from Mr. Krichman's CISC compliance files.

1

**App.70**

6.     CISC's compliance files for Plaintiff Jeffrey Lammert contain the Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Arbitration Agreement").  Attached as Exhibit D is a true and correct copy of the executed Arbitration Agreement from Mr. Lammert's CISC compliance files.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON THIS 10th DAY OF January, 2013

Heather Emmert

**App.71**

# EXHIBIT A

# Chase Investment Services Corp.
# Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement

**Employee Name (please print)**

Lawrence R. Kaufmann

**Standard ID**

2 5 9 7 0 9

## AGREEMENT

This Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into on the ___1st___ day of ___May___, ___2009___ among [Insert Name] (hereinafter referred to as "you"), and Chase Investment Services Corp. ("CISC") for the benefit of itself and all of its affiliated entities, including JPMorgan Chase & Co. and its subsidiaries without limitation, JPMorgan Chase Bank, N.A. CISC, a Delaware corporation registered and licensed as a broker-dealer and a member of FINRA and Chase Insurance Agency, Inc., a Wisconsin corporation registered and licensed as an insurance agency in various states ("CIA"). JPMorgan Chase & Co. and its direct and indirect subsidiaries (and including any predecessor organizations) are referred to collectively in the Agreement as "JPMC". For purposes of this Agreement, predecessor organizations include any company, corporation, entity or any part thereof acquired by, merged into, amalgamated with or purchased in any way by JPMC or its direct or indirect affiliates or subsidiaries. Except as expressly provided herein, this Agreement is intended to supersede and will automatically terminate prior agreements between you and CISC or CIA or any other JPMC subsidiary or any predecessor organization concerning your conduct, responsibilities and compensation as a registered securities representative, licensed insurance agent or other investment management professional. Consistent with the general terms and conditions of your employment, JPMC's policies and procedures and regulatory practices, you hereby acknowledge that the terms and conditions of this Agreement are applicable to your employment and agree that you are obligated to and will comply with such terms and conditions. This Agreement supplements other terms and conditions of your employment with JPMC, including, but not limited to, the JPMorgan Chase & Co. Code of Conduct as in effect from time to time (the "Code of Conduct").

IN CONSIDERATION of the mutual promises and covenants herein contained, JPMC and you agree as follows:

### 1.  AT-WILL EMPLOYMENT

You understand that for the duration of your employment with JPMC: (a) you are or will be employed at-will, and your employment may be terminated by either you or JPMC for no reason or any reason at any time; and (b) neither you, nor any individual officer or representative of JPMC has the authority to alter, either orally or in writing, the employment at-will relationship.

### 2.  TERM

This Agreement shall continue indefinitely unless JPMC releases you in writing from your obligations hereunder.

### 3.  DUTY OF LOYALTY TO ACT IN GOOD FAITH

**a.** You understand that at all times while you are an employee of JPMC:

   i.  You owe JPMC a duty of loyalty and a duty to act in good faith;

   ii.  You will not individually, or in combination with any other person, including any other employee or any competitor of JPMC, directly or indirectly violate the terms or conditions of this Agreement; and

   iii.  You will not, without JPMC's prior written authorization, directly or indirectly engage in any banking, securities, investment, annuities or insurance business, in any capacity, through or on behalf of any entity other than JPMC.

**b.** You acknowledge that you have received, read and will adhere to the Code of Conduct. The duties set forth in this Agreement are in addition to and do not abrogate your obligations under any such Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally.

### 4.  REGISTRATION AND LICENSING

**a.** You represent and warrant to CISC, JPMC and CIA that you are a licensed securities registered representative and/or a licensed insurance agent in good standing, or will obtain such appropriate license within the time specified by CISC or CIA, as applicable, in all states in which you are required to be licensed or registered. If you were previously licensed as a registered securities representative or as an insurance agent, you will take any steps necessary under applicable laws or regulations to transfer your association to CISC and CIA. You agree not to sell any insurance products through CIA or accept any compensation in connection with the sale of any insurance policy until the appropriate insurance carrier appointments are in place in all applicable states.

**b.** You further warrant that except as disclosed in writing to JPMC, that there are no prior or pending investigations, customer complaints, civil or criminal lawsuits, administrative actions/complaints, or prior or pending arbitrations against you. You understand that you are required to immediately notify your management and the appropriate compliance officer of any investigations, complaints, lawsuits, or arbitrations instituted against or involving you.

**c.** You acknowledge that CISC is required to file a Form U5 upon your termination as a registered securities representative associated with CISC. You hereby waive any claims against CISC relating to the filing or content of the Form U5.

**d.** You agree to be aware of and to adhere to all applicable rules, regulations, and reporting requirements of the Securities and Exchange Commission, the FINRA, the Municipal Securities Rulemaking Board, the Federal Reserve Board, the Office of the Comptroller of Currency, all applicable national and regional stock exchanges, the relevant state securities, insurance and banking regulatory authorities and all procedures of clearing brokers or insurance carriers with which CISC or CIA may become associated at any time during the term of this Agreement.

### 5.  LIMITED AUTHORITY

You have no authority to obligate JPMC to any contract or other obligation such as, for example, the purchase of office equipment, office leases and telephone service, and you will not attempt in any way to do so, nor will you hold yourself out to others as having such authority. You understand and agree that you will be financially responsible for any contract or other obligations entered into or agreed to by you in violation of this paragraph.

### 6.  SALE OF INSURANCE PRODUCTS

To the extent that you are involved in the sale of insurance products, you understand that you represent CIA. You understand that CIA may appoint you as its insurance agent with certain insurance carriers on a non-exclusive basis for the specific jurisdiction(s) designated by CIA. You will not so solicit or engage in any such sales without the required approval, appointment and licenses. You will not represent and agree to terminate your appointments with any insurance carriers except those authorized and arranged by CIA from time to time. Additionally, you will not service any customer with respect to products sold by carriers or other providers not approved by CIA or JPMC. Notwithstanding CIA's administrative assistance, you understand that you are responsible for ensuring that all such approvals, licenses and appointments are obtained and maintained as required.

**a.** In soliciting and engaging in the sale of insurance products exclusively on behalf of CIA, you will: i) hold all money or other property belonging to CIA or an insurance carrier in trust as a fiduciary and transfer same to CIA; ii) promptly report all losses and claims, and provide relevant loss and claim information to CIA or its registered representative; iii) prepare and retain accurate records of the sale of insurance products, which records shall be and remain the property of CIA and shall be subject to examination by CIA or its registered representatives; iv) be responsible for all of your expenses (excluding, subject to JPMC's discretion, all required license and registration fees and taxes and other expenses authorized by CIA in writing); (v) obtain CIA's prior written approval of any advertising or other marketing material which includes references to CIA or any of its affiliates, and/or to their products or services; (vi) obtain CIA's prior written approval of any advertising or other marketing material which utilizes or includes references to any CIA or Chase logo or trademarks; and (vii) return any contract forms or other insurance materials, all of which remain the property of CIA, to CIA promptly upon request and, in any event, in accordance with the Code of Conduct.

Employee Initials

App.73

b. You understand that you have no authority to make, alter, modify, waive or discharge any of the terms or conditions of any insurance policies or contracts or any performance thereunder, to make any endorsement on such policies or contracts, to extend the time for paying a premium, to quote special rates or to incur any liability on behalf of CIA or an insurance carrier. You shall not make any statement, misrepresentation or incomplete comparison of any contract or policy of insurance for any purpose including, without limitation, inducing any applicant or policy holder to convert, lapse, forfeit or surrender any insurance policy thereof. You further understand that you are not authorized to pay or attempt to pay any rebate of premium or any consideration of any type whatsoever not specified in a policy or contract. The foregoing items are not exclusive and you understand that you will be responsible for your actions which must conform to law, industry standards any rule or regulation of any regulatory agency or self regulatory agency, CIA policies and procedures, and the requirements of carriers with whom you are appointed.

c. You will also be required to comply with all rules, regulations, policies and procedures and standards established by the applicable JPMC subsidiary for the conduct of its business.

## 7. CONFIDENTIALITY

a. You understand that, by entering into this Agreement, by virtue of your position with JPMC and by the nature of JPMC's businesses, you have had access to, currently have access to, will have access to and will consistently and routinely be given trade secrets and confidential information related to JPMC's business. Confidential information concerning JPMC's business includes information about JPMC, as well as described further in the Code of Conduct and subparagraphs (b) and (c) below (the "Confidential Information"). You also understand that you will be provided with specialized training and mentoring that is unique and proprietary, which draws upon, relies upon and is part of the Confidential information described herein.

b. In addition to any description contained in the Code of Conduct, such Confidential information concerning JPMC's business includes, but is not limited to:

   i.  names, addresses and telephone numbers of customers and prospective customers;

   ii.  account information, financial standing, investment holdings and other personal financial data compiled by and/or provided to or by JPMC;

   iii.  specific customer financial needs and requirements with respect to investments, financial position and standing; leads, referrals and references to customers and/or prospects, financial portfolio, financial account information, investment preferences and similar information, whether developed, provided, compiled, used or acquired by JPMC and/or yourself in connection with your employment at JPMC;

   iv.  information received from third parties under confidential conditions;

   v.  holding book or customer book pages, assets and obligations carried in accounts of customers;

   vi.  all records and documents concerning the business and affairs of JPMC (including copies and originals and any graphic formats or electronic media);

   vii.  methods, procedures, devices and other means used by JPMC in the conduct of business;

   viii.  information concerning established business relationships;

   ix.  "trade secrets" as that term is defined by the Uniform Trade Secrets Act (UTSA), which term shall be deemed to include each item of Confidential Information specifically described in this Section;

   x.  software and other technical, business or financial information, the use or disclosure of which might reasonably be construed to be contrary to the interest of JPMC or its clients;

   xi.  non-public information about JPMC's employees; and

   xii.  all other information concerning JPMC, or its operations, activities and customers which is not publicly available from directories or other generally available public sources and have been developed, provided, acquired or compiled by JPMC.

c. You are aware that JPMC's customer account information contains confidential financial information, names and addresses, customers' net worth and investment objectives and similar confidential information. This customer info-

rmation is not known by or readily available to JPMC's competitors. JPMC takes the protection of its customer information very seriously and therefore takes reasonable precautions to safeguard the secrecy and privacy of this information and considers such information Confidential Information.

d. Accordingly, *you agree: (a) to maintain the confidentiality of Confidential information at all times during and after your employment with JPMC; (b) not to disclose or communicate Confidential information to any third party unless permitted by JPMC policy, required by law, or with JPMC's written consent; and (c) not to use Confidential information for your own benefit or for the benefit of a third party.* You further specifically acknowledge and understand that any disclosure, divulgence, revelation or use by you of any Confidential Information other than in connection with JPMC's business or as specifically authorized by JPMC, will be highly detrimental to the business of JPMC and that serious loss of business and pecuniary damage to JPMC may result therefrom. You represent that you have held and will continue to hold in confidence all such Confidential information, and further represent that both during and after the cessation of your employment with the JPMC, and/or both during and after the cessation of your appointment as an agent with CIA and/or registered representative of JPMC, you will not remove said Confidential Information from the premises of JPMC (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) and will not otherwise disclose, divulge or reveal the said Confidential Information to any person or persons whomever, including members of your family, without JPMC's specific written authorization, except (1) in the ordinary and regular course of business for and on behalf of JPMC, and subject to the approval of JPMC; and/or (2) if required by law, legal process or subpoena to provide said Confidential Information; provided, however, that if you become legally compelled by an order of a court, regulatory or self-regulatory organization, or governmental agency to disclose any Confidential Information, you shall provide JPMC with prompt prior written notice to: JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, Legal Department, JPMorgan Chase Bank, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081 so that JPMC may assert whatever interest it has in the information prior to disclosure by you.

e. If (i) you cease to be appointed by CIA as an agent, and/or (ii) you cease to be a registered representative of CISC, and/or (iii) you cease to be employed by the JPMC for any reason, whether voluntarily or otherwise, or (iv) if you are so requested to do so by JPMC at any time, you will (1) immediately return to JPMC any equipment including but not limited to computers, pagers or telephones issued to you for use in your employment, and not destroy or copy any information contained thereon and each and every document and all materials, including copies thereof, containing Confidential Information (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) in your possession, custody or control, and/or delete all copies you have in any electronic form; (2) immediately return to JPMC all documents, materials or property you were allowed use of, including, but not limited to, electronic equipment and accessories, including any information derived from any JPMC source stored on any personal electronic devices (e.g. PDAs, cell phones, personal computers), and (3) comply with all other provisions of the Code of Conduct (or any subsequent rules as may be provided hereafter).

## 8. NON-SOLICITATION OF EMPLOYER'S CUSTOMERS

a. You understand and acknowledge that JPMC considers its client and customer relationships important and valuable assets. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets and Confidential information, specialized training and mentoring, and other consideration provided herein, *you understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave, initiate contact with or divert from doing business with JPMC, any then current customers, clients, or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, or other persons or entities.*

**EMPLOYEE INITIALS:** _____

b. You understand and agree that JPMC has developed and uses a unique business model for the sale of investment products. Specifically, you acknowledge and

**App.74**

understand that the vast majority of customers with whom you will be working with at JPMC have pre-existing investment relationships with CISC and/or pre-existing and separate banking relationships with JPMorgan Chase Bank, N.A. Additionally, you will be working with other JPMC employees to develop and strengthen these relationships on behalf of JPMC. The customer relationships developed at JPMC and given to you by JPMC flow directly from the goodwill, reputation, name recognition, Confidential information, specialized training, mentoring and expenditures made by JPMC.

**EMPLOYEE INITIALS:** _____

c. This section does not apply to customer relationships you established prior to commencing employment with JPMC, provided that you are able to substantiate through documents or other suitable evidence that the relationship preceded commencement of your employment with the JPMC, and any such customers are listed on Attachment A signed by your manager.

**EMPLOYEE INITIALS:** _____

d. You explicitly acknowledge that CISC and JPMC reserves the right to reassign to another employee, at any time, any of the accounts for which Employee is the representative of record. You have no ownership or other rights in any accounts that are serviced by you.

**EMPLOYEE INITIALS:** _____

e. Nothing in this Agreement prevents you from seeking or accepting employment with any other financial institution, bank, trust company, brokerage firm or other competing entity after your term of employment with the JPMC.

f. You agree that any advertisement or announcement received by a JPMC customer from you or from any entity competing with JPMC and with which you are employed or associated shall be conclusively presumed to constitute solicitation of such customer within the meaning of this provision, notwithstanding that such customer was part of a broader mailing or distribution list.

g. You also agree that you will not disrupt, damage, impair, or interfere with JPMC's business or reputation in any manner.

**9. NON-SOLICITATION OF EMPLOYER'S EMPLOYEES**

You understand and acknowledge that JPMC also views its relationships with its employees, officers and consultants as important and valuable assets and considers non-public employee information to be Confidential Information. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets, Confidential Information, specialized training and mentoring and other consideration provided herein, *you understand and agree that for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or induce or attempt to solicit or induce to leave or resign from JPMC or to apply for or accept employment or assignment elsewhere: (i) JPMC's current employees, consultants or independent contractors or (ii) any former JPMC employees who resigned from JPMC within twelve months of any such solicitation or inducement.*

**10. SPECIAL CONDITIONS RELATING TO COVENANTS OF CONFIDENTIALITY AND NON-SOLICITATION**

a. Reasonableness of Covenants.

i. You acknowledge that you have carefully considered the nature and extent of the restrictions upon you and the rights and remedies conferred upon JPMC under Sections 7, 8 and 9 of this Agreement, and have had the opportunity to retain legal counsel at your own expense to review this Agreement. You acknowledge that these restrictions are reasonable in time and geographic scope, are fully required to protect the legitimate interests of JPMC and its customers and do not confer a benefit upon JPMC which is disproportionate to any detriment to you.

ii. You acknowledge that the terms and conditions of Sections 7, 8 and 9 of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

iii. You acknowledge that you were made aware of this Agreement at the time you accepted employment with JPMC or at the time you were afforded the opportunity of receiving sales-related compensation for the sale of non-deposit investment products, and that you are signing it knowingly and voluntarily and are accepting or continuing employment with full understanding of its terms and conditions. You further acknowledge the

reasonableness and enforceability of the terms of this Agreement, and you will not challenge the enforceability or terms of this Agreement.

b. Remedies.

i. INJUNCTIVE RELIEF. You specifically agree that any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you will cause immediate and irreparable injury to JPMC that cannot adequately be compensated by monetary damages. You further agree that it is reasonable and necessary for JPMC to seek immediate injunctive relief and/or specific performance in any court of competent jurisdiction for any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you. You specifically agree as well as to all other legal or equitable remedies and UTSA remedies, where applicable, to which JPMC may be entitled, including but not limited to the right to compel arbitration of disputes.

ii. ATTORNEY FEES and COSTS. If JPMC is (in its sole judgment) compelled to institute legal proceedings and/or arbitration to enforce this Agreement, you agree to reimburse JPMC for its actual attorney fees and other expenses incurred in the successful prosecution or settlement of such proceedings, in addition to its damages or other remedies.

c. Reformation. *If it is determined by any court, tribunal or an arbitrator that any restrictive covenant contained herein, or any part thereof, is unenforceable because of the duration or scope of such provision, any or all parts of Sections 7, 8 and 9, as the case may be, shall be reformed and/or re-written so that such provisions becomes enforceable and as, reformed or re-written, shall then be enforced.*

d. Savings Clause. The provisions contained in this Sections 7, 8 and 9 shall survive the termination of this Agreement and your employment with the JPMC for whatever cause and shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, assigns and successors in interest of you and JPMC.

e. You agree not to make any commitments or become associated, either directly or indirectly, in any manner, as partner, officer, director, stockholder, advisor, employee or in any other capacity in any business or organization which competes or may compete with JPMC or do any act in conflict with the interest of JPMC during the term of your employment.

f. All provisions of Paragraphs 8, 9 and 10 shall survive for twelve (12) months in the event of a breach by Employee of any covenant, promise or warranty set forth in this Agreement.

**11. PRIOR OBLIGATIONS**

In addition to any duties or obligations under the Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally:

a. You understand and agree that you may not disclose to JPMC, or use in connection with your employment with JPMC, any protected trade secrets or protected confidential or proprietary materials of another entity or party, including any prior employer, unless and until such materials become public either through the owner's failure to adequately protect such information or because it is readily ascertainable through proper means or you are permitted to disclose such information or materials by such other party or entity.

b. You agree that you do not, and during the term of this Agreement you shall, not own any private stock or have any direct or indirect financial interest in any other organization engaged in any securities, insurance, investment advisory or similar business without the written consent of JPMC's Compliance Department. Nothing in this provision shall limit your right to invest in securities that are publicly traded, except that the written consent of the applicable Compliance Department will be required with regard to stock ownership, or other financial interest, in any securities or similar business which is publicly traded if a control relationship exists between such entity and you or your family.

c. You represent that you have provided JPMC with any and all copies of any written, or the full and complete terms of any oral, agreement or arrangement that purports to restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. You further represent and warrant that you have not and will not enter any other written or oral agreement or arrangement which would restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. To the extent that you have executed a confidentiality or employment agreement in the past, you represent that you are not restricted by contract (express, implied or otherwise) from (i) accepting employment with JPMC or (ii) performing any duties on behalf of JPMC. You further understand that JPMC expects you to abide by any non-solicit-

**App.75**

ation or non-disclosure obligations which you may have to former employers.

d. You understand and agree that any financial obligations you may have to your prior employer, such as repayment of loans or training costs, are, and shall remain, your responsibility.

## 12. ARBITRATION OF CONTROVERSIES

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law. Such arbitration(s) shall be conducted in New York, New York and under the law of the State of New York, if applicable (without giving effect to the conflict of laws principles thereof (as permitted by law)) and judgment upon the award rendered by such arbitrators may be entered in any court having proper jurisdiction. Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis. Provided, however, nothing in this Agreement shall limit the right of the parties to seek temporary or preliminary injunctive relief in any court of competent jurisdiction in New York, New York to enforce any right under this Agreement; and further provided, however, that current JPMC policy does not include a pre-dispute agreement to arbitrate statutory employment discriminatory claims.

## 13. REVIEW OF ACCOUNTS AND COMMUNICATIONS

You understand that in the event of any controversy or customer complaint which relates in any way to you or your job responsibilities, JPMC may review and examine any of your accounts, whether in your individual name or jointly held (including those accounts over which you exercise control or in which you have a beneficial interest), that you may have at JPMC. You further understand that all telephone calls may be monitored and recorded by or on behalf of JPMC, and that any form of electronic communication (e.g., e-mail and facsimiles) to, from and/or within JPMC, or on a system maintained by or on behalf of JPMC, or available for use by JPMC employees, may be monitored or reviewed by or on behalf of JPMC. You understand that JPMC may use information obtained by monitoring in any manner permissible by law.

## 14. COMPENSATION

a. In connection with your services hereunder, you may be eligible for incentive or commission compensation in accordance with certain compensation programs as in effect for certain subsidiaries and products from time to time. JPMC reserves the right to change such programs at any time, in its sole discretion.

b. If any JPMC subsidiary has provided you with a commission draw, each such subsidiary has the right to suspend any commission draw at any time the amount of your commissions is insufficient to offset the drawing account. You agree that if a customer's security/stock transaction is reversed because of an error or omission on your part, you will forfeit the commissions associated with that transaction and will be responsible for any market loss resulting from the reversal. You also agree that JPMC has the right to offset against commissions any overpayment previously made.

c. In the event an insurance carrier charges back a commission or commissions from which CIA has paid compensation to you, you agree to reimburse CIA. You hereby assign to CIA your right, title, and interest, if any, in and to any compensation received from or payable by the underwriters of any insurance products sold by you hereunder. This assignment is irrevocable regardless of termination of this Agreement.

## 15. APPLICABLE LAW

This Agreement will be governed by the law of the State of New York, without regard to the conflicts of law principles thereof (as permitted by law).

## 16. SEVERABILITY

You understand that, whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law, rule or regulation (including regulations of any applicable self-regulatory organization), you understand that such provision will be in effect only to the extent of its validity, legality or enforceability, without invalidating the remaining provisions of this Agreement, provided, however, that, notwithstanding any other provision of this Agreement, if any portion of the

Agreement is held to be unenforceable, JPMC, at its option, may seek modification or severance of such portion or consider the Agreement null and void.

## 17. ASSIGNMENT; SUCCESSORS TO JPMC

Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of any successor or assignee of CISC, JPMC or any JPMC subsidiary, including, without limitation, any entity or entities acquiring directly or indirectly all or substantially all of the assets of JPMC whether by merger, consolidation, sale or otherwise. This Assignment by CISC or JPMC need not be in writing. This Agreement is not assignable by you.

## 18. MODIFICATIONS OF TERMS AND CONDITIONS

a. You understand that the terms and conditions of your employment, including those which are the subject of this Agreement, are subject to change and may be modified by JPMC at any time without prior notice to you, and that JPMC has the right to condition your continued employment upon your agreement to such modified terms and conditions.

b. No provision of this Agreement may be amended, modified or waived unless such amendment, modification, or waiver is agreed to in writing, and signed by you and by an authorized officer of JPMC. Except as otherwise specifically provided in this Agreement, no waiver by any party of any breach by the other party hereto of any provision of this Agreement to be performed by such other party shall be deemed a waiver of a subsequent breach of such provision or a waiver of a similar or dissimilar provision at the same or at any prior or subsequent time.

## 19. NOTICE TO PROSPECTIVE EMPLOYERS

Prior to accepting employment with any other person or entity during your employment or during the 12 months following the date of your termination, you will provide any prospective employer with written notice of provisions of section 7, 8 and 9 of this Agreement with a copy delivered simultaneously to JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, JPMorgan Chase Bank, Legal Department, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081. *You also agree that JPMC may provide any of your future or prospective employers with a copy of this Agreement, in whole or part, in it sole discretion.*

## 20. RECITAL OF CONSIDERATION AND REASONABLENESS

You acknowledge that the terms and conditions of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

## 21. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof; all prior Agreements, representations, statements, negotiations, and undertakings are superseded hereby; *provided, however, the duties and obligations set forth in this Agreement are in addition to and do not abrogate your obligations under any other non-solicitation (or non-compete) agreement with JPMC or any of its affiliates.*

## 22. HEADINGS

You understand that the headings contained in this document are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## 23. THIS PARAGRAPH ONLY APPLIES IF YOUR WORK LOCATION IS IN LOUISIANA.

**You specifically agree that if your work location is outside of Louisiana this paragraph does not apply to you.** The agreements and restrictions set forth in paragraphs 8, 9 and 10 of this Agreement shall be effective in the following parishes within the State of Louisiana in which Retail Consumer Banking Unit of JPMorgan Chase Bank, N.A. (aka Chase Bank and Chase Investment Services Corp.) does business:

| | |
|---|---|
| Caddo | Lafourche |
| Bossier | Terrebonne |
| Ouachita | Orleans |
| Lincoln | Jefferson |

**App.76**

| | |
|---|---|
| Rapides | St. John the Baptist |
| St. Landry | St. Bernard |
| Calcasieu | St. Charles |
| Beauregard | St. Tammany |
| Lafayette | Tangipahoa |
| Vermilion | Ascension |
| Iberia | East Baton Rouge |

You agree that Retail Consumer Banking (aka Chase Bank and Chase Investment Services Corp.) provides retail banking financial services and products, (including checking and savings accounts, certificates of deposit, other depository accounts, credit cards, loans and lines of credit, online bill payment, direct deposit, and other convenience products), as well as investment products and services (including insurance products) to consumer and small businesses in all the parishes listed above.

*Your ELECTRONIC AFFIRMATION or SIGNATURE confirms your understanding and acceptance of all of the terms and conditions of this Agreement.*

## 24. EMPLOYEE ACKNOWLEDGEMENT AND SIGNATURE

You acknowledge that you were made aware of this Agreement at the time that you accepted employment with the JPMC or on or about the date you accept and affirm this Agreement, whichever is applicable, and you are signing it knowingly and voluntarily and accepting or continuing employment with full understanding of its terms and conditions and you will not challenge the enforceability or terms of this Agreement.

Employee Signature: _____

Date: 5/1/09

Employee Name (please print):

Constance L. Kaufman

**App.77**

**ARBITRATION DISCLOSURE**

The Form U4 contains a predispute arbitration clause. It is in Item 5 on page 4 of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:

1. You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

2. A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at the FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

3. *Consistent with current Chase policy, but subject to change, no predispute agreement to arbitrate such employment discrimination claims is sought or included in the Agreement.*

4. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

5. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

6. The arbitrators do not have to explain the reason(s) for their award.

7. The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

8. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**App.78**

## ATTACHMENT A

In accordance with Paragraph 8(c) above, you understand and agree that the following list of customers fall within the scope of Paragraph 8(c) as customer relationships were able to substantiate to your Manager through documents or other suitable evidence that the relationship preceded commencement of your employment with JPMC or it predecessor :

**Customer Name**                                          **Prior Relationship**

_____                    _____

_____                    _____

_____                    _____

All other customers whom you service or whom you become aware of during your employment with JPMC fall within the scope of Paragraphs 8(a) and 8(b).

Employee Signature: _____

Date: 5/1/09

Employee Name (please print):

Lawrence R. Kaufmann

Manager Signature: _____

Date: _____

Manager Name (please print):

_____

# EXHIBIT B

# Chase Investment Services Corp.
## Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement

**Employee Name (please print)**

Susan Hyman

**Standard ID**

2 1 5 6 7 9 5

---

### AGREEMENT

This Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into on the 1st day of Aug 2009, among _____ [Insert Name] (hereinafter referred to as "you"), and Chase Investment Services Corp. ("CISC") for the benefit of itself and all of its affiliated entities, including JPMorgan Chase & Co. and its subsidiaries without limitation, JPMorgan Chase Bank, N.A. CISC, a Delaware corporation registered and licensed as a broker-dealer and a member of FINRA and Chase Insurance Agency, Inc., a Wisconsin corporation registered and licensed as an insurance agency in various states ("CIA"). JPMorgan Chase & Co. and its direct and indirect subsidiaries (and including any predecessor organizations) are referred to collectively in the Agreement as "JPMC". For purposes of this Agreement, predecessor organizations include any company, corporation, entity or any part thereof acquired by, merged into, amalgamated with or purchased in any way by JPMC or its direct or indirect affiliates or subsidiaries. Except as expressly provided herein, this Agreement is intended to supersede and will automatically terminate prior agreements between you and CISC or CIA or any other JPMC subsidiary or any predecessor organization concerning your conduct, responsibilities and compensation as a registered securities representative, licensed insurance agent or other investment management professional. Consistent with the general terms and conditions of your employment, JPMC's policies and procedures and regulatory practices, you hereby acknowledge that the terms and conditions of this Agreement are applicable to your employment and agree that you are obligated to and will comply with such terms and conditions. This Agreement supplements other terms and conditions of your employment with JPMC, including, but not limited to, the JPMorgan Chase & Co. Code of Conduct as in effect from time to time (the "Code of Conduct").

IN CONSIDERATION of the mutual promises and covenants herein contained, JPMC and you agree as follows:

### 1. AT-WILL EMPLOYMENT

You understand that for the duration of your employment with JPMC: (a) you are or will be employed at-will, and your employment may be terminated by either you or JPMC for no reason or any reason at any time; and (b) neither you, nor any individual officer or representative of JPMC has the authority to alter, either orally or in writing, the employment at-will relationship.

### 2. TERM

This Agreement shall continue indefinitely unless JPMC releases you in writing from your obligations hereunder.

### 3. DUTY OF LOYALTY TO ACT IN GOOD FAITH

a. You understand that at all times while you are an employee of JPMC:

  i. You owe JPMC a duty of loyalty and a duty to act in good faith;

  ii. You will not individually, or in combination with any other person, including any other employee or any competitor of JPMC, directly or indirectly violate the terms or conditions of this Agreement; and

  iii. You will not, without JPMC's prior written authorization, directly or indirectly engage in any banking, securities, investment, annuities or insurance business, or in any capacity, through or on behalf of any entity other than JPMC.

b. You acknowledge that you have received, read and will adhere to the Code of Conduct. The duties set forth in this Agreement are in addition to and do not abrogate your obligations under any such Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally.

### 4. REGISTRATION AND LICENSING

a. You represent and warrant to CISC, JPMC and CIA that you are a licensed securities registered representative and/or a licensed insurance agent in good standing, or will obtain such appropriate license within the time specified by CISC or CIA, as applicable, in all states in which you are required to be licensed or registered. If you were previously licensed as a registered securities representative or as an insurance agent, you will take any steps necessary under applicable laws or regulations to transfer your association to CISC and CIA. You agree not to sell any insurance products through CIA or accept any compensation in connection with the sale of any insurance policy until the appropriate insurance carrier appointments are in place in all applicable states.

b. You further warrant that except as disclosed in writing to JPMC, that there are no prior or pending investigations, customer complaints, civil or criminal lawsuits, administrative actions/complaints, or prior or pending arbitrations against you. You understand that you are required to immediately notify your management and the appropriate compliance officer of any investigations, complaints, lawsuits, or arbitrations instituted against or involving you.

c. You acknowledge that CISC is required to file a Form U5 upon your termination as a registered securities representative associated with CISC. You hereby waive any claims against CISC relating to the filing or content of the Form U5.

d. You agree to be aware of and to adhere to all applicable rules, regulations, and reporting requirements of the Securities and Exchange Commission, the FINRA, the Municipal Securities Rulemaking Board, the Federal Reserve Board, the Office of the Comptroller of Currency, all applicable national and regional stock exchanges, the relevant state securities, insurance and banking regulatory authorities and all procedures of clearing brokers or insurance carriers with which CISC or CIA may become associated at any time during the term of this Agreement.

### 5. LIMITED AUTHORITY

You have no authority to obligate JPMC to any contract or other obligation such as, for example, the purchase of office equipment, office leases and telephone service, and you will not attempt in any way to do so, nor will you hold yourself out to others as having such authority. You understand and agree that you will be financially responsible for any contract or other obligations entered into or agreed to by you in violation of this paragraph.

### 6. SALE OF INSURANCE PRODUCTS

To the extent that you are involved in the sale of insurance products, you understand that you represent CIA. You understand that CIA may appoint you as its insurance agent with certain insurance carriers on a non-exclusive basis for the specific jurisdiction(s) designated by CIA. You will not so solicit or engage in any such sales without the required approval, appointment and licenses. You will not represent and agree to terminate your appointments with any insurance carriers except those authorized and arranged by CIA from time to time. Additionally, you will not service any customer with respect to products sold by carriers or other providers not approved by CIA or JPMC. Notwithstanding CIA's administrative assistance, you understand that you are responsible for ensuring that all such approvals, licenses and appointments are obtained and maintained as required.

a. In soliciting and engaging in the sale of insurance products exclusively on behalf of CIA, you will: i) hold all money or other property belonging to CIA or an insurance carrier in trust as a fiduciary and transfer same to CIA; ii) promptly report all losses and claims, and provide relevant loss and claim information to CIA or its registered representative; iii) prepare and retain accurate records of the sale of insurance products, which records shall be and remain the property of CIA and shall be subject to examination by CIA or its registered representatives; iv) be responsible for all of your expenses (excluding, subject to JPMC's discretion, all required license and registration fees and taxes and other expenses authorized by CIA in writing); (v) obtain CIA's prior written approval of any advertising or other marketing material which includes references to CIA or any of its affiliates, and/or to their products or services; (vi) obtain CIA's prior written approval of any advertising or other marketing material which utilizes or includes references to any JPMC or Chase logo or trademarks; and (vii) return any contract forms or other insurance materials, all of which remain the property of CIA, to CIA promptly upon request and, in any event, in accordance with the Code of Conduct.

Employee Initials _____

**App.81**

b. You understand that you have no authority to make, alter, modify, waive or discharge any of the terms or conditions of any insurance policies or contracts or any performance thereunder, to make any endorsement on such policies or contracts, to extend the time for paying a premium, to quote special rates or to incur any liability on behalf of CIA or an insurance carrier. You shall not make any statement, misrepresentation or incomplete comparison of any contract or policy of insurance for any purpose including, without limitation, inducing any applicant or policy holder to convert, lapse, forfeit or surrender any insurance policy thereof. You further understand that you are not authorized to pay or attempt to pay any rebate of premium or any consideration of any type whatsoever not specified in a policy or contract. The foregoing items are not exclusive and you understand that you will be responsible for your actions which must conform to law, industry standards any rule or regulation of any regulatory agency or self regulatory agency, CIA policies and procedures, and the requirements of carriers with whom you are appointed.

c. You will also be required to comply with all rules, regulations, policies and procedures and standards established by the applicable JPMC subsidiary for the conduct of its business.

### 7. CONFIDENTIALITY

a. You understand that, by entering into this Agreement, by virtue of your position with JPMC and by the nature of JPMC's businesses, you have had access to, currently have access to, will have access to and will consistently and routinely be given trade secrets and confidential information related to JPMC's business. Confidential information concerning JPMC's business includes information about JPMC, as well as described further in the Code of Conduct and subparagraphs (b) and (c) below (the "Confidential Information"). You also understand that you will be provided with specialized training and mentoring that is unique and proprietary, which draws upon, relies upon and is part of the Confidential information described herein.

b. In addition to any description contained in the Code of Conduct, such Confidential information concerning JPMC's business includes, but is not limited to:

    i. names, addresses and telephone numbers of customers and prospective customers;

    ii. account information, financial standing, investment holdings and other personal financial data compiled by and/or provided to or by JPMC;

    iii. specific customer financial needs and requirements with respect to investments, financial position and standing; leads, referrals and references to customers and/or prospects, financial portfolio, financial account information, investment preferences and similar information, whether developed, provided, compiled, used or acquired by JPMC and/or yourself in connection with your employment at JPMC;

    iv. information received from third parties under confidential conditions;

    v. holding book or customer book pages, assets and obligations carried in accounts of customers;

    vi. all records and documents concerning the business and affairs of JPMC (including copies and originals and any graphic formats or electronic media);

    vii. methods, procedures, devices and other means used by JPMC in the conduct of business;

    viii. information concerning established business relationships;

    ix. "trade secrets" as that term is defined by the Uniform Trade Secrets Act (UTSA), which term shall be deemed to include each item of Confidential information specifically described in this Section;

    x. software and other technical, business or financial information, the use or disclosure of which might reasonably be construed to be contrary to the interest of JPMC or its clients;

    xi. non-public information about JPMC's employees; and

    xii. all other information concerning JPMC, or its operations, activities and customers which is not publicly available from directories or other generally available public sources and have been developed, provided, acquired or compiled by JPMC.

c. You are aware that JPMC's customer account information contains confidential financial information, names and addresses, customers' net worth and investment objectives and similar confidential information. This customer infor-

rmation is not known by or readily available to JPMC's competitors. JPMC takes the protection of its customer information very seriously and therefore takes reasonable precautions to safeguard the secrecy and privacy of this information and considers such information Confidential Information.

d. Accordingly, *you agree: (a) to maintain the confidentiality of Confidential Information at all times during and after your employment with JPMC; (b) not to disclose or communicate Confidential Information to any third party unless permitted by JPMC policy, required by law, or with JPMC's written consent; and (c) not to use Confidential Information for your own benefit or for the benefit of a third party.* You further specifically acknowledge and understand that any disclosure, divulgence, revelation or use by you of any Confidential Information other than in connection with JPMC's business or as specifically authorized by JPMC, will be highly detrimental to the business of JPMC and that serious loss of business and pecuniary damage to JPMC may result therefrom. You represent that you have held and will continue to hold in confidence all such Confidential Information, and further represent that both during and after the cessation of your employment with the JPMC, and/or both during and after the cessation of your appointment as an agent with CIA and/or registered representative of JPMC, you will not remove said Confidential Information from the premises of JPMC (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) and will not otherwise disclose, divulge or reveal the said Confidential Information to any person or persons whomever, including members of your family, without JPMC's specific written authorization, except (1) in the ordinary and regular course of business for and on behalf of JPMC, and subject to the approval of JPMC; and/or (2) if required by law, legal process or subpoena to provide said Confidential Information; *provided, however,* that if you become legally compelled by an order of a court, regulatory or self-regulatory organization, or governmental agency to disclose any Confidential Information, you shall provide JPMC with prompt prior written notice to: JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, Legal Department, JPMorgan Chase Bank, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081 so that JPMC may assert whatever interest it has in the information prior to disclosure by you.

e. If (i) you cease to be appointed by CIA as an agent, and/or (ii) you cease to be a registered representative of CISC, and/or (iii) you cease to be employed by the JPMC for any reason, whether voluntarily or otherwise, or (iv) if you are so requested to do so by JPMC at any time, you will (1) immediately return to JPMC any equipment including but not limited to computers, pagers or telephones issued to you for use in your employment, and not destroy or copy any information contained thereon and each and every document and all materials, including copies thereof, containing Confidential Information (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) in your possession, custody or control, and/or delete all copies you have in any electronic form; (2) immediately return to JPMC all documents, materials or property you were allowed use of, including, but not limited to, electronic equipment and accessories, including any information derived from any JPMC source stored on any personal electronic devices (e.g. PDAs, cell phones, personal computers), and (3) comply with all other provisions of the Code of Conduct (or any subsequent rules as may be provided hereafter).

### 8. NON-SOLICITATION OF EMPLOYER'S CUSTOMERS

a. You understand and acknowledge that JPMC considers its client and customer relationships important and valuable assets. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets and Confidential information, specialized training and mentoring, and other consideration provided herein, *you understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave, initiate contact with or divert from doing business with JPMC, any then current customers, clients, or other persons or entities that were serviced by you or whom names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, or other persons or entities.*

EMPLOYEE INITIALS _____

b. You understand and agree that JPMC has developed and uses a unique business model for the sale of investment products. Specifically, you acknowledge and

**App.82**

understand that the vast majority of customers with whom you will be working with at JPMC have pre-existing investment relationships with CISC and/or pre-existing and separate banking relationships with JPMorgan Chase Bank, N.A. Additionally, you will be working with other JPMC employees to develop and strengthen these relationships on behalf of JPMC. The customer relationships developed at JPMC and given to you by JPMC flow directly from the goodwill, reputation, name recognition, Confidential Information, specialized training, mentoring and expenditures made by JPMC.

**EMPLOYEE INITIALS:** ___

c. This section does not apply to customer relationships you established prior to commencing employment with JPMC, provided that you are able to substantiate through documents or other suitable evidence that the relationship preceded commencement of your employment with the JPMC, and any such customers are listed on Attachment A signed by your manager.

**EMPLOYEE INITIALS:** ___

d. You explicitly acknowledge that CISC and JPMC reserves the right to reassign to another employee, at any time, any of the accounts for which Employee is the representative of record. You have no ownership or other rights in any accounts that are serviced by you.

**EMPLOYEE INITIALS:** ___

e. Nothing in this Agreement prevents you from seeking or accepting employment with any other financial institution, bank, trust company, brokerage firm or other competing entity after your term of employment with the JPMC.

f. You agree that any advertisement or announcement received by a JPMC customer from you or from any entity competing with JPMC and with which you are employed or associated shall be conclusively presumed to constitute solicitation of such customer within the meaning of this provision, notwithstanding that such customer was part of a broader mailing or distribution list.

g. You also agree that you will not disrupt, damage, impair, or interfere with JPMC's business or reputation in any manner.

**9. NON-SOLICITATION OF EMPLOYER'S EMPLOYEES**

You understand and acknowledge that JPMC also views its relationships with its employees, officers and consultants as important and valuable assets and considers non-public employee information to be Confidential Information. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets, Confidential Information, specialized training and mentoring and other consideration provided herein, *you understand and agree that for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or induce or attempt to solicit or induce to leave or resign from JPMC or to apply for or accept employment or assignment elsewhere: (i) JPMC's current employees, consultants or independent contractors or (ii) any former JPMC employees who resigned from JPMC within twelve months of any such solicitation or inducement.*

**10. SPECIAL CONDITIONS RELATING TO COVENANTS OF CONFIDENTIALITY AND NON-SOLICITATION**

a. Reasonableness of Covenants.

   i. You acknowledge that you have carefully considered the nature and extent of the restrictions upon you and the rights and remedies conferred upon JPMC under Sections 7, 8 and 9 of this Agreement, and have had the opportunity to retain legal counsel at your own expense to review this Agreement. You acknowledge that these restrictions are reasonable in time and geographic scope, are fully required to protect the legitimate interests of JPMC and its customers and do not confer a benefit upon JPMC which is disproportionate to any detriment to you.

   ii. You acknowledge that the terms and conditions of Sections 7, 8 and 9 of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

   iii. You acknowledge that you were made aware of this Agreement at the time you accepted employment with JPMC or at the time you were afforded the opportunity of receiving sales-related compensation for the sale of non-deposit investment products, and that you are signing it knowingly and voluntarily and are accepting or continuing employment with full understanding of its terms and conditions. You further acknowledge the

reasonableness and enforceability of the terms of this Agreement, and you will not challenge the enforceability or terms of this Agreement.

b. Remedies.

   i. INJUNCTIVE RELIEF. You specifically agree that any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you will cause immediate and irreparable injury to JPMC that cannot adequately be compensated by monetary damages. You further agree that it is reasonable and necessary for JPMC to seek immediate injunctive relief and/or specific performance in any court of competent jurisdiction for any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you. You specifically agree as well as to all other legal or equitable remedies and UTSA remedies, where applicable, to which JPMC may be entitled, including but not limited to the right to compel arbitration of disputes.

   ii. ATTORNEY FEES and COSTS. If JPMC is (in its sole judgment) compelled to institute legal proceedings and/or arbitration to enforce this Agreement, you agree to reimburse JPMC for its actual attorney fees and other expenses incurred in the successful prosecution or settlement of such proceedings, in addition to its damages or other remedies.

c. Reformation. *If it is determined by any court, tribunal or an arbitrator that any restrictive covenant contained herein, or any part thereof, is unenforceable because of the duration or scope of such provision, any or all parts of Sections 7, 8 and 9, as the case may be, shall be reformed and/or re-written so that such provisions becomes enforceable and, as reformed or re-written, shall then be enforced.*

d. Savings Clause. The provisions contained in this Sections 7, 8 and 9 shall survive the termination of this Agreement and your employment with the JPMC for whatever cause and shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, assigns and successors in interest of you and JPMC.

e. You agree not to make any commitments or become associated, either directly or indirectly, in any manner, as partner, officer, director, stockholder, advisor, employee or in any other capacity in any business or organization which competes or may compete with JPMC or do any act in conflict with the interest of JPMC during the term of your employment.

f. All provisions of Paragraphs 8, 9 and 10 shall survive for twelve (12) months in the event of a breach by Employee of any covenant, promise or warranty set forth in this Agreement.

**11. PRIOR OBLIGATIONS**

In addition to any duties or obligations under the Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally:

a. You understand and agree that you may not disclose to JPMC, or use in connection with your employment with JPMC, any protected trade secrets or protected confidential or proprietary materials of another entity or party, including any prior employer, unless and until such materials become public either through the owner's failure to adequately protect such information or because it is readily ascertainable through proper means or you are permitted to disclose such information or materials by such other party or entity.

b. You agree that you do not, and during the term of this Agreement you shall, not own any private stock or have any direct or indirect financial interest in any other organization engaged in any securities, insurance, investment advisory or similar business without the written consent of JPMC's Compliance Department. Nothing in this provision shall limit your right to invest in securities that are publicly traded, except that the written consent of the applicable Compliance Department will be required with regard to stock ownership, or other financial interest, in any securities or similar business which is publicly traded if a control relationship exists between such entity and you or your family.

c. You represent that you have provided JPMC with any and all copies of any written, or the full and complete terms of any oral, agreement or arrangement that purports to restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. You further represent and warrant that you have not and will not enter any other written or oral agreement or arrangement which would restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. To the extent that you have executed a confidentiality or employment agreement in the past, you represent that you are not restricted by contract (express, implied or otherwise) from (i) accepting employment with JPMC or (ii) performing any duties on behalf of JPMC. You further understand that JPMC expects you to abide by any non-solicit-

ation or non-disclosure obligations which you may have to former employers.

d. You understand and agree that any financial obligations you may have to your prior employer, such as repayment of loans or training costs, are, and shall remain, your responsibility.

## 12. ARBITRATION OF CONTROVERSIES

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law. Such arbitration(s) shall be conducted in New York, New York and under the law of the State of New York, if applicable (without giving effect to the conflict of laws principles thereof (as permitted by law)) and judgment upon the award rendered by such arbitrators may be entered in any court having proper jurisdiction. Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis. Provided, however, nothing in this Agreement shall limit the right of the parties to seek temporary or preliminary injunctive relief in any court of competent jurisdiction in New York, New York to enforce any right under this Agreement; and further provided, however, that current JPMC policy does not include a pre-dispute agreement to arbitrate statutory employment discriminatory claims.

## 13. REVIEW OF ACCOUNTS AND COMMUNICATIONS

You understand that in the event of any controversy or customer complaint which relates in any way to you or your job responsibilities, JPMC may review and examine any of your accounts, whether in your individual name or jointly held (including those accounts over which you exercise control or in which you have a beneficial interest), that you may have at JPMC. You further understand that all telephone calls may be monitored and recorded by or on behalf of JPMC, and that any form of electronic communication (e.g., e-mail and facsimiles) to, from and/or within JPMC, or on a system maintained by or on behalf of JPMC, or available for use by JPMC employees, may be monitored or reviewed by or on behalf of JPMC. You understand that JPMC may use information obtained by monitoring in any manner permissible by law.

## 14. COMPENSATION

a. In connection with your services hereunder, you may be eligible for incentive or commission compensation in accordance with certain compensation programs as in effect for certain subsidiaries and products from time to time. JPMC reserves the right to change such programs at any time, in its sole discretion.

b. If any JPMC subsidiary has provided you with a commission draw, each such subsidiary has the right to suspend any commission draw at any time the amount of your commissions is insufficient to offset the drawing account. You agree that if a customer's security/stock transaction is reversed because of an error or omission on your part, you will forfeit the commissions associated with that transaction and will be responsible for any market loss resulting from the reversal. You also agree that JPMC has the right to offset against commissions any overpayment previously made.

c. In the event an insurance carrier charges back a commission or commissions from which CIA has paid compensation to you, you agree to reimburse CIA. You hereby assign to CIA your right, title, and interest, if any, in and to any compensation received from or payable by the underwriters of any insurance products sold by you hereunder. This assignment is irrevocable regardless of termination of this Agreement.

## 15. APPLICABLE LAW

This Agreement will be governed by the law of the State of New York, without regard to the conflicts of law principles thereof (as permitted by law).

## 16. SEVERABILITY

You understand that, whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law, rule or regulation (including regulations of any applicable self-regulatory organization), you understand that such provision will be in effect only to the extent of its validity, legality or enforceability, without invalidating the remaining provisions of this Agreement, provided, however, that, notwithstanding any other provision of this Agreement, if any portion of this

Agreement is held to be unenforceable, JPMC, at its option, may seek modification or severance of such portion or consider the Agreement null and void.

## 17. ASSIGNMENT; SUCCESSORS TO JPMC

Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of any successor or assignee of CISC, JPMC or any JPMC subsidiary, including, without limitation, any entity or entities acquiring directly or indirectly all or substantially all of the assets of JPMC whether by merger, consolidation, sale or otherwise. This Assignment by CISC or JPMC need not be in writing. This Agreement is not assignable by you.

## 18. MODIFICATIONS OF TERMS AND CONDITIONS

a. You understand that the terms and conditions of your employment, including those which are the subject of this Agreement, are subject to change and may be modified by JPMC at any time without prior notice to you, and that JPMC has the right to condition your continued employment upon your agreement to such modified terms and conditions.

b. No provision of this Agreement may be amended, modified or waived unless such amendment, modification, or waiver is agreed to in writing, and signed by you and by an authorized officer of JPMC. Except as otherwise specifically provided in this Agreement, no waiver by any party of any breach by the other party hereto of any provision of this Agreement to be performed by such other party shall be deemed a waiver of a subsequent breach of such provision or a waiver of a similar or dissimilar provision at the same or at any prior or subsequent time.

## 19. NOTICE TO PROSPECTIVE EMPLOYERS

Prior to accepting employment with any other person or entity during your employment or during the 12 months following the date of your termination, you will provide any prospective employer with written notice of provisions of section 7, 8 and 9 of this Agreement with a copy delivered simultaneously to JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, JPMorgan Chase Bank, Legal Department, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081. *You also agree that JPMC may provide any of your future or prospective employers with a copy of this Agreement, in whole or part, in its sole discretion.*

## 20. RECITAL OF CONSIDERATION AND REASONABLENESS

You acknowledge that the terms and conditions of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

## 21. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof; all prior Agreements, representations, statements, negotiations, and undertakings are superseded hereby; *provided, however, the duties and obligations set forth in this Agreement are in addition to and do not abrogate your obligations under any other non-solicitation (or non-compete) agreement with JPMC or any of its affiliates.*

## 22. HEADINGS

You understand that the headings contained in this document are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## 23. THIS PARAGRAPH ONLY APPLIES IF YOUR WORK LOCATION IS IN LOUISIANA.

**You specifically agree that if your work location is outside of Louisiana this paragraph does not apply to you.** The agreements and restrictions set forth in paragraphs 8, 9 and 10 of this Agreement shall be effective in the following parishes within the State of Louisiana in which Retail Consumer Banking Unit of JPMorgan Chase Bank, N.A. (aka Chase Bank and Chase Investment Services Corp.) does business:

| | |
|---|---|
| Caddo | Lafourche |
| Bossier | Terrebonne |
| Ouachita | Orleans |
| Lincoln | Jefferson |

Employee Initials

App.84

| | |
|---|---|
| Rapides | St. John the Baptist |
| St. Landry | St. Bernard |
| Calcasieu | St. Charles |
| Beauregard | St. Tammany |
| Lafayette | Tangipahoa |
| Vermilion | Ascension |
| Iberia | East Baton Rouge |

You agree that Retail Consumer Banking (aka Chase Bank and Chase Investment Services Corp.) provides retail banking financial services and products, (including checking and savings accounts, certificates of deposit, other depository accounts, credit cards, loans and lines of credit, online bill payment, direct deposit, and other convenience products), as well as investment products and services (including insurance products) to consumer and small businesses in all the parishes listed above.

*Your ELECTRONIC AFFIRMATION or SIGNATURE confirms your understanding and acceptance of all of the terms and conditions of this Agreement.*

## 24. EMPLOYEE ACKNOWLEDGEMENT AND SIGNATURE

You acknowledge that you were made aware of this Agreement at the time that you accepted employment with the JPMC or on or about the date you accept and affirm this Agreement, whichever is applicable, and you are signing it knowingly and voluntarily and accepting or continuing employment with full understanding of its terms and conditions and you will not challenge the enforceability or terms of this Agreement.

Employee Signature: _____

Date: _____

Employee Name (please print):

_____ Susan Hsu _____

CISC_OPS_33206 REVISED 03_2009_02

Page 5 of 7

Employee Initials _____

**App.85**

## ARBITRATION DISCLOSURE

The Form U4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:

1. You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

2. A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules.  Such a claim may be arbitrated at the FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

3. Consistent with current Chase policy, but subject to change, no predispute agreement to arbitrate such employment discrimination claims is sought or included in the Agreement.

4. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

5. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

6. The arbitrators do not have to explain the reason(s) for their award.

7. The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

8. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**App.86**

**ATTACHMENT A**

In accordance with Paragraph 8(c) above, you understand and agree that the following list of customers fall within the scope of Paragraph 8(c) as customer relationships were able to substantiate to your Manager through documents or other suitable evidence that the relationship preceded commencement of your employment with JPMC or it predecessor :

**Customer Name**                                                        **Prior Relationship**

_____        _____

_____        _____

_____        _____

All other customers whom you service or whom you become aware of during your employment with JPMC fall within the scope of Paragraphs 8(a) and 8(b).

Employee Signature: _____

Date: 5/11/2009

Employee Name (please print):

Susan Flynn

Manager Signature: _____

Date: _____

Manager Name (please print):

_____

**App.87**

# EXHIBIT C

# Chase Investment Services Corp.
## Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement

**Employee Name (please print)**

Alan B. Krichman

**Standard ID**

U 3 7 6 5 4 7

**AGREEMENT**

This Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into on the ____ day of _May_ , _2009_ , among _Alan B. Krichman_ [insert Name] (hereinafter referred to as "you"), and Chase Investment Services Corp. ("CISC") for the benefit of itself and all of its affiliated entities, including JPMorgan Chase & Co. and its subsidiaries without limitation, JPMorgan Chase Bank, N.A. CISC, a Delaware corporation registered and licensed as a broker-dealer and a member of FINRA and Chase Insurance Agency, Inc., a Wisconsin corporation registered and licensed as an insurance agency in various states ("CIA"). JPMorgan Chase & Co. and its direct and indirect subsidiaries (and including any predecessor organizations) are referred to collectively in the Agreement as "JPMC". For purposes of this Agreement, predecessor organizations include any company, corporation, entity or any part thereof acquired by, merged into, amalgamated with or purchased in any way by JPMC or its direct or indirect affiliates or subsidiaries. Except as expressly provided herein, this Agreement is intended to supersede and will automatically terminate prior agreements between you and CISC or CIA or any other JPMC subsidiary or any predecessor organization concerning your conduct, responsibilities and compensation as a registered securities representative, licensed insurance agent or other investment management professional. Consistent with the general terms and conditions of your employment, JPMC's policies and procedures and regulatory practices, you hereby acknowledge that the terms and conditions of this Agreement are applicable to your employment and agree that you are obligated to and will comply with such terms and conditions. This Agreement supplements other terms and conditions of your employment with JPMC, including, but not limited to, the JPMorgan Chase & Co. Code of Conduct as in effect from time to time (the "Code of Conduct").

IN CONSIDERATION of the mutual promises and covenants herein contained, JPMC and you agree as follows:

### 1. AT-WILL EMPLOYMENT

You understand that for the duration of your employment with JPMC: (a) you are or will be employed at-will, and your employment may be terminated by either you or JPMC for no reason or any reason at any time; and (b) neither you, nor any individual officer or representative of JPMC has the authority to alter, either orally or in writing, the employment at-will relationship.

### 2. TERM

This Agreement shall continue indefinitely unless JPMC releases you in writing from your obligations hereunder.

### 3. DUTY OF LOYALTY TO ACT IN GOOD FAITH

a. You understand that at all times while you are an employee of JPMC:

    i. You owe JPMC a duty of loyalty and a duty to act in good faith;

    ii. You will not individually, or in combination with any other person, including any other employee or any competitor of JPMC, directly or indirectly violate the terms or conditions of this Agreement; and

    iii. You will not, without JPMC's prior written authorization, directly or indirectly engage in any banking, securities, investment, annuities or insurance business, in any capacity, through or on behalf of any entity other than JPMC.

b. You acknowledge that you have received, read and will adhere to the Code of Conduct. The duties set forth in this Agreement are in addition to and do not abrogate your obligations under any such Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally.

### 4. REGISTRATION AND LICENSING

a. You represent and warrant to CISC, JPMC and CIA that you are a licensed securities registered representative and/or a licensed insurance agent in good standing, or will obtain such appropriate license within the time specified by CISC or CIA, as applicable, in all states in which you are required to be licensed or registered. If you were previously licensed as a registered securities representative or as an insurance agent, you will take any steps necessary under applicable laws or regulations to transfer your association to CISC and CIA. You agree not to sell any insurance products through CIA or accept any compensation in connection with the sale of any insurance policy until the appropriate insurance carrier appointments are in place in all applicable states.

b. You further warrant that except as disclosed in writing to JPMC, that there are no prior or pending investigations, customer complaints, civil or criminal lawsuits, administrative actions/complaints, or prior or pending arbitrations against you. You understand that you are required to immediately notify your management and the appropriate compliance officer of any investigations, complaints, lawsuits, or arbitrations instituted against or involving you.

c. You acknowledge that CISC is required to file a Form U5 upon your termination as a registered securities representative associated with CISC. You hereby waive any claims against CISC relating to the filing or content of the Form U5.

d. You agree to be aware of and to adhere to all applicable rules, regulations, and reporting requirements of the Securities and Exchange Commission, the FINRA, the Municipal Securities Rulemaking Board, the Federal Reserve Board, the Office of the Comptroller of Currency, all applicable national and regional stock exchanges, the relevant state securities, insurance and banking regulatory authorities and all procedures of clearing brokers or insurance carriers with which CISC or CIA may become associated at any time during the term of this Agreement.

### 5. LIMITED AUTHORITY

You have no authority to obligate JPMC to any contract or other obligation such as, for example, the purchase of office equipment, office leases and telephone service, and you will not attempt in any way to do so, nor will you hold yourself out to others as having such authority. You understand and agree that you will be financially responsible for any contract or other obligations entered into or agreed to by you in violation of this paragraph.

### 6. SALE OF INSURANCE PRODUCTS

To the extent that you are involved in the sale of insurance products, you understand that you represent CIA. You understand that CIA may appoint you as its insurance agent with certain insurance carriers on a non-exclusive basis for the specific jurisdiction(s) designated by CIA. You will not so solicit or engage in any such sales without the required approval, appointment and licenses. You will not represent and agree to terminate your appointments with any insurance carriers except those authorized and arranged by CIA from time to time. Additionally, you will not service any customer with respect to products sold by carriers or other providers not approved by CIA or JPMC. Notwithstanding CIA's administrative assistance, you understand that you are responsible for ensuring that all such approvals, licenses and appointments are obtained and maintained as required.

a. In soliciting and engaging in the sale of insurance products exclusively on behalf of CIA, you will: i) hold all money or other property belonging to CIA or an insurance carrier in trust as a fiduciary and transfer same to CIA; ii) promptly report all losses and claims, and provide relevant loss and claim information to CIA or its registered representative; iii) prepare and retain accurate records of the sale of insurance products, which records shall be and remain the property of CIA and shall be subject to examination by CIA or its registered representatives; iv) be responsible for all of your expenses (excluding, subject to JPMC's discretion, all required license and registration fees and taxes and other expenses authorized by CIA in writing); v) obtain CIA's prior written approval of any advertising or other marketing material which includes references to CIA or any of its affiliates, and/or to their products or services; vi) obtain CIA's prior written approval of any advertising or other marketing material which utilizes or includes references to any JPMC or Chase logo or trademarks; and vii) return any contract forms or other insurance materials, all of which remain the property of CIA, to CIA promptly upon request and, in any event, in accordance with the Code of Conduct.

Employee Initials _____

**App.89**

Case 1:12-cv-09805-DLS-HBP Document 70-4 Filed 01/14/132 Page 3 of 9

b. You understand that you have no authority to make, alter, modify, waive or discharge any of the terms or conditions of any insurance policies or contracts or any performance thereunder, to make any endorsement on such policies or contracts, to extend the time for paying a premium, to quote special rates or to incur any liability on behalf of CIA or an insurance carrier. You shall not make any statement, misrepresentation or incomplete comparison of any contract or policy of insurance for any purpose including, without limitation, inducing any applicant or policy holder to convert, lapse, forfeit or surrender any insurance policy thereof. You further understand that you are not authorized to pay or attempt to pay any rebate of premium or any consideration of any type whatsoever not specified in a policy or contract. The foregoing items are not exclusive and you understand that you will be responsible for your actions which must conform to law, industry standards any rule or regulation of any regulatory agency or self regulatory agency, CIA policies and procedures, and the requirements of carriers with whom you are appointed.

c. You will also be required to comply with all rules, regulations, policies and procedures and standards established by the applicable JPMC subsidiary for the conduct of its business.

## 7. CONFIDENTIALITY

a. You understand that by entering into this Agreement, by virtue of your position with JPMC and by the nature of JPMC's businesses, you have had access to, currently have access to, will have access to and will consistently and routinely be given trade secrets and confidential information related to JPMC's business. Confidential information concerning JPMC's business includes information about JPMC, as well as described further in the Code of Conduct and subparagraphs (b) and (c) below (the "Confidential Information"). You also understand that you will be provided with specialized training and mentoring that is unique and proprietary, which draws upon, relies upon and is part of the Confidential Information described herein.

b. In addition to any description contained in the Code of Conduct, such Confidential Information concerning JPMC's business includes, but is not limited to:

    i. names, addresses and telephone numbers of customers and prospective customers;

    ii. account information, financial standing, investment holdings and other personal financial data compiled by and/or provided to or by JPMC;

    iii. specific customer financial needs and requirements with respect to investments, financial position and standing; leads, referrals and references to customers and/or prospects, financial portfolio, financial account information, investment preferences and similar information, whether developed, provided, compiled, used or acquired by JPMC and/or yourself in connection with your employment at JPMC;

    iv. information received from third parties under confidential conditions;

    v. holding book or customer book pages, assets and obligations carried in accounts of customers;

    vi. all records and documents concerning the business and affairs of JPMC (including copies and originals and any graphic formats or electronic media);

    vii. methods, procedures, devices and other means used by JPMC in the conduct of business;

    viii. information concerning established business relationships;

    ix. "trade secrets" as that term is defined by the Uniform Trade Secrets Act (UTSA), which term shall be deemed to include each item of Confidential Information specifically described in this Section;

    x. software and other technical, business or financial information, the use or disclosure of which might reasonably be construed to be contrary to the interest of JPMC or its clients;

    xi. non-public information about JPMC's employees; and

    xii. all other information concerning JPMC, or its operations, activities and customers which is not publicly available from directories or other generally available public sources and have been developed, provided, acquired or compiled by JPMC.

c. You are aware that JPMC's customer account information contains confidential financial information, names and addresses, customers' net worth and investment objectives and similar confidential information. This customer info-

rmation is not known by or readily available to JPMC's competitors. JPMC takes the protection of its customer information very seriously and therefore takes reasonable precautions to safeguard the secrecy and privacy of this information and considers such information Confidential Information.

d. Accordingly, you agree: (a) to maintain the confidentiality of Confidential Information at all times during and after your employment with JPMC; (b) not to disclose or communicate Confidential Information to any third party unless permitted by JPMC policy, required by law, or with JPMC's written consent; and (c) not to use Confidential Information for your own benefit or for the benefit of a third party. You further specifically acknowledge and understand that any disclosure, divulgence, revelation or use by you of any Confidential Information other than in connection with JPMC's business or as specifically authorized by JPMC, will be highly detrimental to the business of JPMC and that serious loss of business and pecuniary damage to JPMC may result therefrom. You represent that you have held and will continue to hold in confidence all such Confidential Information, and further represent that both during and after the cessation of your employment with JPMC, and/or both during and after the cessation of your appointment as an agent with CIA and/or registered representative of JPMC, you will not remove said Confidential Information from the premises of JPMC (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) and will not otherwise disclose, divulge or reveal the said Confidential Information to any person or persons whomever, including members of your family, without JPMC's specific written authorization, except (1) in the ordinary and regular course of business for and on behalf of JPMC, and subject to the approval of JPMC; and/or (2) if required by law, legal process or subpoena to provide said Confidential Information; provided, however, that if you become legally compelled by an order of a court, regulatory or self-regulatory organization, or governmental agency to disclose any Confidential Information, you shall provide JPMC with prompt prior written notice to: JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, Legal Department, JPMorgan Chase Bank, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081 so that JPMC may assert whatever interest it has in the information prior to disclosure by you.

e. If (i) you cease to be appointed by CIA as an agent, and/or (ii) you cease to be a registered representative of CISC, and/or (iii) you cease to be employed by the JPMC for any reason, whether voluntarily or otherwise, or (iv) if you are so requested to do so by JPMC at any time, you will (1) immediately return to JPMC any equipment including but not limited to computers, pagers or telephones issued to you for use in your employment, and not destroy or copy any information contained thereon and each and every document and all materials, including copies thereof, containing Confidential Information (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) in your possession, custody or control, and/or delete all copies you have in any electronic form; (2) immediately return to JPMC all documents, materials or property you were allowed use of, including, but not limited to, electronic equipment and accessories, including any information derived from any JPMC source stored on any personal electronic devices (e.g. PDAs, cell phones, personal computers), and (3) comply with all other provisions of the Code of Conduct (or any subsequent rules as may be provided hereafter).

## 8. NON-SOLICITATION OF EMPLOYER'S CUSTOMERS

a. You understand and acknowledge that JPMC considers its client and customer relationships important and valuable assets. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets and Confidential Information, specialized training and mentoring, and other consideration provided herein, you understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave, initiate contact with or divert from doing business with JPMC, any then current customers, clients, or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, or other persons or entities.

EMPLOYEE INITIALS: _[initials]_

b. You understand and agree that JPMC has developed and uses a unique business model for the sale of investment products. Specifically, you acknowledge and

**App.90**

understand that the vast majority of customers with whom you will be working with at JPMC have pre-existing investment relationships with CISC and/or pre-existing and separate banking relationships with JPMorgan Chase Bank, N.A. Additionally, you will be working with other JPMC employees to develop and strengthen these relationships on behalf of JPMC. The customer relationships developed at JPMC and given to you by JPMC flow directly from the goodwill, reputation, name recognition, Confidential Information, specialized training, mentoring and expenditures made by JPMC.

EMPLOYEE INITIALS: _____

c. This section does not apply to customer relationships you established prior to commencing employment with JPMC, provided that you are able to substantiate through documents or other suitable evidence that the relationship preceded commencement of your employment with the JPMC, and any such customers are listed on Attachment A signed by your manager.

EMPLOYEE INITIALS: _____

d. You explicitly acknowledge that CISC and JPMC reserves the right to reassign to another employee, at any time, any of the accounts for which Employee is the representative of record. You have no ownership or other rights in any accounts that are serviced by you.

EMPLOYEE INITIALS: _____

e. Nothing in this Agreement prevents you from seeking or accepting employment with any other financial institution, bank, trust company, brokerage firm or other competing entity after your term of employment with the JPMC.

f. You agree that any advertisement or announcement received by a JPMC customer from you or from any entity competing with JPMC and with which you are employed or associated shall be conclusively presumed to constitute solicitation of such customer within the meaning of this provision, notwithstanding that such customer was part of a broader mailing or distribution list.

g. You also agree that you will not disrupt, damage, impair, or interfere with JPMC's business or reputation in any manner.

## 9. NON-SOLICITATION OF EMPLOYER'S EMPLOYEES

You understand and acknowledge that JPMC also views its relationships with its employees, officers and consultants as important and valuable assets and considers non-public employee information to be Confidential Information. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets, Confidential Information, specialized training and mentoring and other consideration provided herein, *you understand and agree that for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or induce or attempt to solicit or induce to leave or resign from JPMC or to apply for or accept employment or assignment elsewhere: (i) JPMC's current employees, consultants or independent contractors or (ii) any former JPMC employees who resigned from JPMC within twelve months of any such solicitation or inducement.*

## 10. SPECIAL CONDITIONS RELATING TO COVENANTS OF CONFIDENTIALITY AND NON-SOLICITATION

a. Reasonableness of Covenants.

 i. You acknowledge that you have carefully considered the nature and extent of the restrictions upon you and the rights and remedies conferred upon JPMC under Sections 7, 8 and 9 of this Agreement, and have had the opportunity to retain legal counsel at your own expense to review this Agreement. You acknowledge that these restrictions are reasonable in time and geographic scope, are fully required to protect the legitimate interests of JPMC and its customers and do not confer a benefit upon JPMC which is disproportionate to any detriment to you.

 ii. You acknowledge that the terms and conditions of Sections 7, 8 and 9 of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

 iii. You acknowledge that you were made aware of this Agreement at the time you accepted employment with JPMC or at the time you were afforded the opportunity of receiving sales-related compensation for the sale of non-deposit investment products, and that you are signing it knowingly and voluntarily and are accepting or continuing employment with full understanding of its terms and conditions. You further acknowledge the

reasonableness and enforceability of the terms of this Agreement, and you will not challenge the enforceability or terms of this Agreement.

b. Remedies.

 i. INJUNCTIVE RELIEF. You specifically agree that any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you will cause immediate and irreparable injury to JPMC that cannot adequately be compensated by monetary damages. You further agree that it is reasonable and necessary for JPMC to seek immediate injunctive relief and/or specific performance in any court of competent jurisdiction for any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you. You specifically agree as well as to all other legal or equitable remedies and UTSA remedies, where applicable, to which JPMC may be entitled, including but not limited to the right to compel arbitration of disputes.

 ii. ATTORNEY FEES and COSTS. If JPMC is (in its sole judgment) compelled to institute legal proceedings and/or arbitration to enforce this Agreement, you agree to reimburse JPMC for its actual attorney fees and court expenses incurred in the successful prosecution or settlement of such proceedings, in addition to its damages or other remedies.

c. Reformation. *If it is determined by any court, tribunal or an arbitrator that any restrictive covenant contained herein, or any part thereof, is unenforceable because of the duration or scope of such provision, any or all parts of Sections 7, 8 and 9, as the case may be, shall be reformed and/or re-written so that such provisions becomes enforceable and, as reformed or re-written, shall then be enforced.*

d. Savings Clause. The provisions contained in this Sections 7, 8 and 9 shall survive the termination of this Agreement and your employment with the JPMC for whatever cause and shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, assigns and successors in interest of you and JPMC.

e. You agree not to make any commitments or become associated, either directly or indirectly, in any manner, as partner, officer, director, stockholder, advisor, employee or in any other capacity in any business or organization which competes or may compete with JPMC or do any act in conflict with the interest of JPMC during the term of your employment.

f. All provisions of Paragraphs 8, 9 and 10 shall survive for twelve (12) months in the event of a breach by Employee of any covenant, promise or warranty set forth in this Agreement.

## 11. PRIOR OBLIGATIONS

In addition to any duties or obligations under the Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally:

a. You understand and agree that you may not disclose to JPMC, or use in connection with your employment with JPMC, any protected trade secrets or protected confidential or proprietary materials of another entity or party, including any prior employer, unless and until such materials become public either through the owner's failure to adequately protect such information or because it is readily ascertainable through proper means or you are permitted to disclose such information or materials by such other party or entity.

b. You agree that you do not, and during the term of this Agreement you shall, not own any private stock or have any direct or indirect financial interest in any other organization engaged in any securities, insurance, investment advisory or similar business without the written consent of JPMC's Compliance Department. Nothing in this provision shall limit your right to invest in securities that are publicly traded, except that the written consent of the applicable Compliance Department will be required with regard to stock ownership, or other financial interest, in any securities or similar business which is publicly traded if a control relationship exists between such entity and you or your family.

c. You represent that you have provided JPMC with any and all copies of any written, or the full and complete terms of any oral, agreement or arrangement that purports to restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. You further represent and warrant that you have not and will not enter any other written or oral agreement or arrangement which would restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. To the extent that you have executed a confidentiality or employment agreement in the past, you represent that you are not restricted by contract (express, implied or otherwise) from (i) accepting employment with JPMC or (ii) performing any duties on behalf of JPMC. You further understand that JPMC expects you to abide by any non-solicit-

**App.91**

ation or non-disclosure obligations which you may have to former employers.

d. You understand and agree that any financial obligations you may have to your prior employer, such as repayment of loans or training costs, are, and shall remain, your responsibility.

## 12. ARBITRATION OF CONTROVERSIES

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law. Such arbitration(s) shall be conducted in New York, New York and under the law of the State of New York, if applicable (without giving effect to the conflict of laws principles thereof (as permitted by law)) and judgment upon the award rendered by such arbitrators may be entered in any court having proper jurisdiction. Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis. Provided, however, nothing in this Agreement shall limit the right of the parties to seek temporary or preliminary injunctive relief in any court of competent jurisdiction in New York, New York to enforce any right under this Agreement; and further provided, however, that current JPMC policy does not include a pre-dispute agreement to arbitrate statutory employment discriminatory claims.

## 13. REVIEW OF ACCOUNTS AND COMMUNICATIONS

You understand that in the event of any controversy or customer complaint which relates in any way to you or your job responsibilities, JPMC may review and examine any of your accounts, whether in your individual name or jointly held (including those accounts over which you exercise control or in which you have a beneficial interest), that you may have at JPMC. You further understand that all telephone calls may be monitored and recorded by or on behalf of JPMC, and that any form of electronic communication (e.g., e-mail and facsimiles), to, from and/or within JPMC, or on a system maintained by or on behalf of JPMC, or available for use by JPMC employees, may be monitored or reviewed by or on behalf of JPMC. You understand that JPMC may use information obtained by monitoring in any manner permissible by law.

## 14. COMPENSATION

a. In connection with your services hereunder, you may be eligible for incentive or commission compensation in accordance with certain compensation programs as in effect for certain subsidiaries and products from time to time. JPMC reserves the right to change such programs at any time, in its sole discretion.

b. If any JPMC subsidiary has provided you with a commission draw, each such subsidiary has the right to suspend any commission draw at any time the amount of your commissions is insufficient to offset the drawing account. You agree that if a customer's security/stock transaction is reversed because of an error or omission on your part, you will forfeit the commissions associated with that transaction and will be responsible for any market loss resulting from the reversal. You also agree that JPMC has the right to offset against commissions any overpayment previously made.

c. In the event an insurance carrier charges back a commission or commissions from which CIA has paid compensation to you, you agree to reimburse CIA. You hereby assign to CIA your right, title, and interest, if any, in and to any compensation received from or payable by the underwriters of any insurance products sold by you hereunder. This assignment is irrevocable regardless of termination of this Agreement.

## 15. APPLICABLE LAW

This Agreement will be governed by the law of the State of New York, without regard to the conflicts of law principles thereof (as permitted by law).

## 16. SEVERABILITY

You understand that, whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law, rule or regulation (including regulations of any applicable self-regulatory organization), you understand that such provision will be in effect only to the extent of its validity, legality or enforceability, without invalidating the remaining provisions of this Agreement, provided, however, that, notwithstanding any other provision of this Agreement, if any portion of the Agreement is held to be unenforceable, JPMC, at its option, may seek modification or severance of such portion or consider the Agreement null and void.

## 17. ASSIGNMENT; SUCCESSORS TO JPMC

Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of any successor or assignee of CISC, JPMC or any JPMC subsidiary, including, without limitation, any entity or entities acquiring directly or indirectly all or substantially all of the assets of JPMC whether by merger, consolidation, sale or otherwise. This Assignment by CISC or JPMC need not be in writing. This Agreement is not assignable by you.

## 18. MODIFICATIONS OF TERMS AND CONDITIONS

a. You understand that the terms and conditions of your employment, including those which are the subject of this Agreement, are subject to change and may be modified by JPMC at any time without prior notice to you, and that JPMC has the right to condition your continued employment upon your agreement to such modified terms and conditions.

b. No provision of this Agreement may be amended, modified or waived unless such amendment, modification, or waiver is agreed to in writing, and signed by you and by an authorized officer of JPMC. Except as otherwise specifically provided in this Agreement, no waiver by any party of any breach by the other party hereto of any provision of this Agreement to be performed by such other party shall be deemed a waiver of a subsequent breach of such provision or a waiver of a similar or dissimilar provision at the same or at any prior or subsequent time.

## 19. NOTICE TO PROSPECTIVE EMPLOYERS

Prior to accepting employment with any other person or entity during your employment or during the 12 months following the date of your termination, you will provide any prospective employer with written notice of provisions of section 7, 8 and 9 of this Agreement with a copy delivered simultaneously to JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, JPMorgan Chase Bank, Legal Department, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081. You also agree that JPMC may provide any of your future or prospective employers with a copy of this Agreement, in whole or part, in its sole discretion.

## 20. RECITAL OF CONSIDERATION AND REASONABLENESS

You acknowledge that the terms and conditions of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

## 21. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof; all prior Agreements, representations, statements, negotiations, and undertakings are superseded hereby; provided, however, the duties and obligations set forth in this Agreement are in addition to and do not abrogate your obligations under any other non-solicitation (or non-compete) agreement with JPMC or any of its affiliates.

## 22. HEADINGS

You understand that the headings contained in this document are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## 23. THIS PARAGRAPH ONLY APPLIES IF YOUR WORK LOCATION IS IN LOUISIANA.

You specifically agree that if your work location is outside of Louisiana this paragraph does not apply to you. The agreements and restrictions set forth in paragraphs 8, 9 and 10 of this Agreement shall be effective in the following parishes within the State of Louisiana in which Retail Consumer Banking Unit of JPMorgan Chase Bank, N.A. (aka Chase Bank and Chase Investment Services Corp.) does business:

| | |
|---|---|
| Caddo | Lafourche |
| Bossier | Terrebonne |
| Ouachita | Orleans |
| Lincoln | Jefferson |

Employee Initials

| | |
|---|---|
| Rapides | St. John the Baptist |
| St. Landry | St. Bernard |
| Calcasieu | St. Charles |
| Beauregard | St. Tammany |
| Lafayette | Tangipahoa |
| Vermilion | Ascension |
| Iberie | East Baton Rouge |

You agree that Retail Consumer Banking (aka Chase Bank and Chase Investment Services Corp.) provides retail banking financial services and products, (including checking and savings accounts, certificates of deposit, other depository accounts, credit cards, loans and lines of credit, online bill payment, direct deposit, and other convenience products), as well as investment products and services (including insurance products) to consumer and small businesses in all the parishes listed above.

*Your ELECTRONIC AFFIRMATION or SIGNATURE confirms your understanding and acceptance of all of the terms and conditions of this Agreement.*

## 24. EMPLOYEE ACKNOWLEDGEMENT AND SIGNATURE

You acknowledge that you were made aware of this Agreement at the time that you accepted employment with the JPMC or on or about the date you accept and affirm this Agreement, whichever is applicable, and you are signing it knowingly and voluntarily and accepting or continuing employment with full understanding of its terms and conditions and you will not challenge the enforceability or terms of this Agreement.

Employee Signature: _Alan R. Kirchner_

Date: _05/01/2009_

Employee Name (please print):

_Alan B Krichman_

Employee Initials _ak_

**App.93**

## ARBITRATION DISCLOSURE

The Form U4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:

1. You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

2. A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at the FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

3. *Consistent with current Chase policy, but subject to change, no predispute agreement to arbitrate such employment discrimination claims is sought or included in the Agreement.*

4. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

5. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

6. The arbitrators do not have to explain the reason(s) for their award.

7. The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

8. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

Employee Initials _____

**App.94**

**ATTACHMENT A**

In accordance with Paragraph 8(c) above, you understand and agree that the following list of customers fall within the scope of Paragraph 8(c) as customer relationships were able to substantiate to your Manager through documents or other suitable evidence that the relationship preceded commencement of your employment with JPMC or it predecessor :

**Customer Name**

Vito Bellini

Larry Stempler

Peter Garrambene

**Prior Relationship**

Personal Friend

Personal friend

Personal friend

All other customers whom you service or whom you become aware of during your employment with JPMC fall within the scope of Paragraphs 8(a) and 8(b).

Employee Signature: _Alan Krichman_
Date: 05/01/2009

Employee Name (please print):
Alan B. Krichman

Manager Signature:
Date: 6/9/09

Manager Name (please print):
James E. Scully

Employee Initials _AK_

913·656·1742 **App.95**

# EXHIBIT D

# Chase Investment Services Corp.
# Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement

**Employee Name (please print)**

Jeffrey D Hammer T.

**Standard ID**

| B | 0 | 0 | 0 | 6 | 3 | 5 |
|---|---|---|---|---|---|---|

### AGREEMENT

This Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into on the ___8th___ day of ___June___, ___2009___, among Jeffrey D Hammer T. [Insert Name] (hereinafter referred to as "you"), and Chase Investment Services Corp. ("CISC") for the benefit of itself and all of its affiliated entities, including JPMorgan Chase & Co. and its subsidiaries without limitation, JPMorgan Chase Bank, N.A. CISC, a Delaware corporation registered and licensed as a broker-dealer and a member of FINRA and Chase Insurance Agency, Inc., a Wisconsin corporation registered and licensed as an insurance agency in various states ("CIA"). JPMorgan Chase & Co. and its direct and indirect subsidiaries (and including any predecessor organizations) are referred to collectively in the Agreement as "JPMC". For purposes of this Agreement, predecessor organizations include any company, corporation, entity or any part thereof acquired by, merged into, amalgamated with or purchased in any way by JPMC or its direct or indirect affiliates or subsidiaries. Except as expressly provided herein, this Agreement is intended to supersede and will automatically terminate prior agreements between you and CISC or CIA or any other JPMC subsidiary or any predecessor organization concerning your conduct, responsibilities and compensation as a registered securities representative, licensed insurance agent or other investment management professional. Consistent with the general terms and conditions of your employment, JPMC's policies and procedures and regulatory practices, you hereby acknowledge that the terms and conditions of this Agreement are applicable to your employment and agree that you are obligated to and will comply with such terms and conditions. This Agreement supplements other terms and conditions of your employment with JPMC, including, but not limited to, the JPMorgan Chase & Co. Code of Conduct as in effect from time to time (the "Code of Conduct").

IN CONSIDERATION of the mutual promises and covenants herein contained, JPMC and you agree as follows:

### 1. AT-WILL EMPLOYMENT

You understand that for the duration of your employment with JPMC: (a) you are or will be employed at-will, and your employment may be terminated by either you or JPMC for no reason or any reason at any time and (b) neither you, nor any individual officer or representative of JPMC has the authority to alter, either orally or in writing, the employment at-will relationship.

### 2. TERM

This Agreement shall continue indefinitely unless JPMC releases you in writing from your obligations hereunder.

### 3. DUTY OF LOYALTY TO ACT IN GOOD FAITH

a. You understand that at all times while you are an employee of JPMC:
   i. You owe JPMC a duty of loyalty and a duty to act in good faith;
   ii. You will not individually, or in combination with any other person, including any other employee or any competitor of JPMC, directly or indirectly violate the terms or conditions of this Agreement; and
   iii. You will not, without JPMC's prior written authorization, directly or indirectly engage in any banking, securities, investment, annuities or insurance business, in any capacity, through or on behalf of any entity other than JPMC.

b. You acknowledge that you have received, read and will adhere to the Code of Conduct. The duties set forth in this Agreement are in addition to and do not abrogate your obligations under any such Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally.

### 4. REGISTRATION AND LICENSING

a. You represent and warrant to CISC, JPMC and CIA that you are a licensed securities registered representative and/or a licensed insurance agent in good standing, or will obtain such appropriate license within the time specified by CISC or CIA, as applicable, in all states in which you are required to be licensed or registered. If you were previously licensed as a registered securities representative or as an insurance agent, you will take any steps necessary under applicable laws or regulations to transfer your association to CISC and CIA. You agree not to sell any insurance products through CIA or accept any compensation in connection with the sale of any insurance policy until the appropriate insurance carrier appointments are in place in all applicable states.

b. You further warrant that except as disclosed in writing to JPMC, that there are no prior or pending investigations, customer complaints, civil or criminal lawsuits, administrative actions/complaints, or prior or pending arbitrations against you. You understand that you are required to immediately notify your management and the appropriate compliance officer of any investigations, complaints, lawsuits, or arbitrations instituted against or involving you.

c. You acknowledge that CISC is required to file a Form U5 upon your termination as a registered securities representative associated with CISC. You hereby waive any claims against CISC relating to the filing or content of the Form U5.

d. You agree to be aware of and to adhere to all applicable rules, regulations, and reporting requirements of the Securities and Exchange Commission, the FINRA, the Municipal Securities Rulemaking Board, the Federal Reserve Board, the Office of the Comptroller of Currency, all applicable national and regional stock exchanges, the relevant state securities, insurance and banking regulatory authorities and all procedures of clearing brokers or insurance carriers with which CISC or CIA may become associated at any time during the term of this Agreement.

### 5. LIMITED AUTHORITY

You have no authority to obligate JPMC to any contract or other obligation such as, for example, the purchase of office equipment, office leases and telephone service, and you will not attempt in any way to do so, nor will you hold yourself out to others as having such authority. You understand and agree that you will be financially responsible for any contract or other obligation entered into or agreed to by you in violation of this paragraph.

### 6. SALE OF INSURANCE PRODUCTS

To the extent that you are involved in the sale of insurance products, you understand that you represent CIA. You understand that CIA may appoint you as its insurance agent with certain insurance carriers on a non-exclusive basis for the specific jurisdiction(s) designated by CIA. You will not solicit or engage in any such sales without the required approval, appointment and licenses. You will not represent and agree to terminate your appointments with any insurance carriers except those authorized and arranged by CIA from time to time. Additionally, you will not service any customer with respect to products sold by carriers or other providers not approved by CIA or JPMC. Notwithstanding CIA's administrative assistance, you understand that you are responsible for ensuring that all such approvals, licenses and appointments are obtained and maintained as required.

a. In soliciting and engaging in the sale of insurance products exclusively on behalf of CIA, you will: i) hold all money or other property belonging to CIA or an insurance carrier in trust as a fiduciary and transfer same to CIA; ii) promptly report all losses and claims, and provide relevant loss and claim information to CIA or its registered representative; iii) prepare and retain accurate records of the sale of insurance products, which records shall be and remain the property of CIA and shall be subject to examination by CIA or its registered representatives; iv) be responsible for all of your expenses (excluding, subject to JPMC's discretion, all required license and registration fees and taxes and other expenses authorized by CIA in writing); (v) obtain CIA's prior written approval of any advertising or other marketing material which includes references to CIA or any of its affiliates, and/or to their products or services; (vi) obtain CIA's prior written approval of any advertising or other marketing material which utilizes or includes references to any JPMC or Chase logo or trademarks; and (vii) return any contract forms or other insurance materials, all of which remain the property of CIA, to CIA promptly upon request and, in any event, in accordance with the Code of Conduct.

**App.97**

b. You understand that you have no authority to make, alter, modify, waive or discharge any of the terms or conditions of any insurance policies or contracts or any performance thereunder, to make any endorsement on such policies or contracts, to extend the time for paying a premium, to quote special rates or to incur any liability on behalf of CIA or an insurance carrier. You shall not make any statement, misrepresentation or incomplete comparison of any contract or policy of insurance for any purpose including, without limitation, inducing any applicant or policy holder to convert, lapse, forfeit or surrender any insurance policy thereof. You further understand that you are not authorized to pay or attempt to pay any rebate of premium or any consideration of any type whatsoever not specified in a policy or contract. The foregoing items are not exclusive and you understand that you will be responsible for your actions which must conform to law, industry standards any rule or regulation of any regulatory agency or self regulatory agency, CIA policies and procedures, and the requirements of carriers with whom you are appointed.

c. You will also be required to comply with all rules, regulations, policies and procedures and standards established by the applicable JPMC subsidiary for the conduct of its business.

## 7. CONFIDENTIALITY

a. You understand that, by entering into this Agreement, by virtue of your position with JPMC and by the nature of JPMC's businesses, you have had access to, currently have access to, will have access to and will consistently and routinely be given trade secrets and confidential information related to JPMC's business. Confidential information concerning JPMC's business includes information about JPMC, as well as described further in the Code of Conduct and subparagraphs (b) and (c) below (the "Confidential Information"). You also understand that you will be provided with specialized training and mentoring that is unique and proprietary, which draws upon, relies upon and is part of the Confidential Information described herein.

b. In addition to any description contained in the Code of Conduct, such Confidential information concerning JPMC's business includes, but is not limited to:

   i. names, addresses and telephone numbers of customers and prospective customers;

   ii. account information, financial standing investment holdings and other personal financial data compiled by and/or provided to or by JPMC;

   iii. specific customer financial needs and requirements with respect to investments, financial position and standing; leads, referrals and references to customers and/or prospects, financial portfolio, financial account information, investment preferences and similar information, whether developed, provided, compiled, used or acquired by JPMC and/or yourself in connection with your employment at JPMC;

   iv. information received from third parties under confidential conditions;

   v. holding book or customer book pages, assets and obligations carried in accounts of customers;

   vi. all records and documents concerning the business and affairs of JPMC (including copies and originals and any graphic formats or electronic media);

   vii. methods, procedures, devices and other means used by JPMC in the conduct of business;

   viii. information concerning established business relationships;

   ix. "trade secrets" as that term is defined by the Uniform Trade Secrets Act (UTSA), which term shall be deemed to include each item of Confidential Information specifically described in this Section;

   x. software and other technical, business or financial information, the use or disclosure of which might reasonably be construed to be contrary to the interest of JPMC or its clients;

   xi. non-public information about JPMC's employees; and

   xii. all other information concerning JPMC, or its operations, activities and customers which is not publicly available from directories or other generally available public sources and have been developed, provided, acquired or compiled by JPMC.

c. You are aware that JPMC's customer account information contains confidential financial information, names and addresses, customers' net worth and investment objectives and similar confidential information. This customer infor-

mation is not known or readily available to JPMC's competitors. JPMC takes the protection of its customer information very seriously and therefore takes reasonable precautions to safeguard the secrecy and privacy of this information and considers such information Confidential Information.

d. Accordingly, *you agree: (a) to maintain the confidentiality of Confidential Information at all times during and after your employment with JPMC; (b) not to disclose or communicate Confidential Information to any third party unless permitted by JPMC policy, required by law, or with JPMC's written consent; and (c) not to use Confidential Information for your own benefit or for the benefit of a third party.* You further specifically acknowledge and understand that any disclosure, divulgence, revelation or use by you of any Confidential Information other than in connection with JPMC's business or as specifically authorized by JPMC, will be highly detrimental to the business of JPMC and that serious loss of business and pecuniary damage to JPMC may result therefrom. You represent that you have held and will continue to hold in confidence all such Confidential Information, and further represent that both during and after the cessation of your employment with the JPMC, and/or both during and after the cessation of your appointment as an agent with CIA and/or registered representative of JPMC, you will not remove said Confidential Information from the premises of JPMC (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) and will not otherwise disclose, divulge or reveal the said Confidential Information to any person or persons whomever, including members of your family, without JPMC's specific written authorization, except (*) in the ordinary and regular course of business for and on behalf of JPMC, and subject to the approval of JPMC; and/or (?) if required by law, legal process or subpoena to provide said Confidential Information; *provided, however,* that if you become legally compelled by an order of a court, regulatory or self regulatory organization, or governmental agency to disclose any Confidential Information, you shall provide JPMC with prompt prior written notice to: JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, Legal Department, JPMorgan Chase Bank, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081 so that JPMC may assert whatever interest it has in the information prior to disclosure by you.

e. If (i) you cease to be appointed by CIA as an agent, and/or (ii) you cease to be a registered representative of CISC, and/or (iii) you cease to be employed by the JPMC for any reason, whether voluntarily or otherwise, or (iv) if you are so requested to do so by JPMC at any time, you will (1) immediately return to JPMC any equipment including but not limited to computers, pagers or telephones issued to you for use in your employment, and not destroy or copy any information contained thereon and each and every document and all materials, including copies thereof, containing Confidential Information (including, but not limited to, tapes, discs, emails or information contained in an electronic form, photocopies, notes or extracts therefrom whether manually or mechanically produced, including electronic or software) in your possession, custody or control, and/or delete all copies you have in any electronic form; (2) immediately return to JPMC all documents, materials or property you were allowed use of, including, but not limited to, electronic equipment and accessories, including any information derived from any JPMC source stored on any personal electronic devices (e.g. PDAs, cell phones, personal computers), and (3) comply with all other provisions of the Code of Conduct (or any subsequent rules as may be provided hereafter).

## 8. NON-SOLICITATION OF EMPLOYER'S CUSTOMERS

a. You understand and acknowledge that JPMC considers its client and customer relationships important and valuable assets. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets and Confidential Information, specialized training and mentoring, and other consideration provided herein, *you understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave, initiate contact with or divert from doing business with JPMC, any then current customers, clients, or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, or other persons or entities.*

EMPLOYEE INITIALS:

b. You understand and agree that JPMC has developed and uses a unique business model for the sale of investment products. Specifically, you acknowledge and

**App.98**

understand that the vast majority of customers with whom you will be working with at JPMC have pre-existing investment relationships with CISC and/or pre-existing and separate banking relationships with JPMorgan Chase Bank, N.A. Additionally, you will be working with other JPMC employees to develop and strengthen these relationships on behalf of JPMC. The customer relationships developed at JPMC are given to you by JPMC flow directly from the goodwill, reputation, name recognition, Confidential Information, specialized training, mentoring and expenditures made by JPMC.

**EMPLOYEE INITIALS**

c. This section does not apply to customer relationships you established prior to commencing employment with JPMC, provided that you are able to substantiate through documents or other suitable evidence that the relationship proceeded commencement of your employment with the JPMC, and any such customers are listed on Attachment A signed by your manager.

**EMPLOYEE INITIALS**

d. You explicitly acknowledge that CISC and JPMC reserves the right to reassign to another employee, at any time, any of the accounts for which Employee is the representative of record. You have no ownership or other rights in any accounts that are serviced by you.

**EMPLOYEE INITIALS**

e. Nothing in this Agreement prevents you from seeking or accepting employment with any other financial institution, bank, trust company, brokerage firm or other competing entity after your term of employment with the JPMC.

f. You agree that any advertisement or announcement received by a JPMC customer from you or from any entity competing with JPMC and with which you are employed or associated shall be conclusively presumed to constitute solicitation of such customer within the meaning of this provision, notwithstanding that such customer was part of a broader mailing or distribution list.

g. You also agree that you will not disrupt, damage, impair, or interfere with JPMC's business or reputation in any manner.

## 9. NON-SOLICITATION OF EMPLOYER'S EMPLOYEES

You understand and acknowledge that JPMC also views its relationships with its employees, officers and consultants as important and valuable assets and considers non-public employee information to be Confidential Information. Accordingly, in consideration of and as a condition of your employment, continued employment, access to trade secrets, Confidential Information, specialized training and mentoring, and other consideration provided herein, *you understand and agree that for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or induce or attempt to solicit or induce to leave or resign from JPMC or to apply for or accept employment or assignment elsewhere: (i) JPMC's current employees, consultants or independent contractors or (ii) any former JPMC employees who resigned from JPMC within twelve months of any such solicitation or inducement.*

## 10. SPECIAL CONDITIONS RELATING TO COVENANTS OF CONFIDENTIALITY AND NON-SOLICITATION

a. Reasonableness of Covenants.

   i. You acknowledge that you have carefully considered the nature and extent of the restrictions upon you and the rights and remedies conferred upon JPMC under Sections 7, 8 and 9 of this Agreement, and have had the opportunity to retain legal counsel at your own expense to review this Agreement. You acknowledge that these restrictions are reasonable in time and geographic scope, are fully required to protect the legitimate interests of JPMC and its customers and do not confer a benefit upon JPMC which is disproportionate to any detriment to you.

   ii. You acknowledge that the terms and conditions of Sections 7, 8 and 9 of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

   iii. You acknowledge that you were made aware of this Agreement at the time you accepted employment with JPMC or at the time you were afforded the opportunity of receiving sales-related compensation for the sale of non-deposit investment products, and that you are signing it knowingly and voluntarily and are accepting or continuing employment with full understanding of its terms and conditions. You further acknowledge the

reasonableness and enforceability of the terms of this Agreement, and you will not challenge the enforceability or terms of this Agreement.

b. Remedies.

   i. INJUNCTIVE RELIEF. You specifically agree that any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you will cause immediate and irreparable injury to JPMC that cannot adequately be compensated by monetary damages. You further agree that it is reasonable and necessary for JPMC to seek immediate injunctive relief and/or specific performance in any court of competent jurisdiction for any breach, evasion, violation or threatened violation of any term of Sections 7, 8 or 9 by you. You specifically agree as well as to all other legal or equitable remedies and UTSA remedies, where applicable, to which JPMC may be entitled, including but not limited to the right to compel arbitration of disputes.

   ii. ATTORNEY FEES and COSTS. If JPMC is (in its sole judgment) compelled to institute legal proceedings and/or arbitration to enforce this Agreement, you agree to reimburse JPMC for its actual attorney fees and other expenses incurred in the successful prosecution or settlement of such proceedings, in addition to its damages or other remedies.

c. Reformation. *If it is determined by any court, tribunal or an arbitrator that any restrictive covenant contained herein, or any part thereof, is unenforceable because of the duration or scope of such provision, any or all parts of Sections 7, 8 and 9, as the case may be, shall be reformed and/or re-written so that such provisions becomes enforceable and, as reformed or re-written, shall then be enforceable.*

d. Savings Clause. The provisions contained in this Sections 7, 8 and 9 shall survive the termination of this Agreement and your employment with the JPMC for whatever cause and shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, assigns and successors in interest of you and JPMC.

e. You agree not to make any commitments or become associated, either directly or indirectly, in any manner, as partner, officer, director, stockholder, advisor, employee or in any other capacity in any business or organization which competes or may compete with JPMC or do any act in conflict with the interest of JPMC during the term of your employment.

f. All provisions of Paragraphs 8, 9 and 10 shall survive for twelve (12) months in the event of a breach by Employee of any covenant, promise or warranty set forth in this Agreement.

## 11. PRIOR OBLIGATIONS

In addition to any duties or obligations under the Code of Conduct or other operational, procedural or other policies applicable to JPMC employees generally:

a. You understand and agree that you may not disclose to JPMC, or use in connection with your employment with JPMC, any protected trade secrets or protected confidential or proprietary materials of another entity or party, including any prior employer, unless and until such materials become public either through the owner's failure to adequately protect such information or because it is readily ascertainable through proper means or you are permitted to disclose such information or materials by such other party or entity.

b. You agree that you do not, and during the term of this Agreement you shall, not own any private stock or have any direct or indirect financial interest in any other organization engaged in any securities, insurance, investment advisory or similar business without the written consent of JPMC's Compliance Department. Nothing in this provision shall limit your right to invest in securities that are publicly traded, except that the written consent of the applicable Compliance Department will be required with regard to stock ownership, or other financial interest, in any securities or similar business which is publicly traded if a control relationship exists between such entity and you or your family.

c. You represent that you have provided JPMC with any and all copies of any written, or the full and complete terms of any oral, agreement or arrangement that purports to restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. You further represent and warrant that you have not and will not enter any other written or oral agreement or arrangement which would restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with your position. To the extent that you have executed a confidentiality or employment agreement in the past, you represent that you are not restricted by contract (express, implied or otherwise) from (i) accepting employment with JPMC or (ii) performing any duties on behalf of JPMC. You further understand that JPMC expects you to abide by any non-solicit-

Employee Initials

**App.99**

ation or non-disclosure obligations which you have to former employers.

d. You understand and agree that any financial obligations you may have to your prior employer, such as repayment of loans or training costs, are, and shall remain, your responsibility.

## 12. ARBITRATION OF CONTROVERSIES

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law. Such arbitration(s) shall be conducted in New York, New York and under the law of the State of New York, if applicable (without giving effect to the conflict of laws principles thereof (as permitted by law)) and judgment upon the award rendered by such arbitrators may be entered in any court having proper jurisdiction. Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis. Provided, however, nothing in this Agreement shall limit the right of the parties to seek temporary or preliminary injunctive relief in any court of competent jurisdiction in New York, New York to enforce any right under this Agreement, and further provided, however, that current JPMC policy does not include a pre-dispute agreement to arbitrate statutory employment discriminatory claims.

## 13. REVIEW OF ACCOUNTS AND COMMUNICATIONS

You understand that in the event of any controversy or customer complaint which relates in any way to you, or your job responsibilities, JPMC may review and examine any of your accounts, whether in your individual name or jointly held (including those accounts over which you exercise control or in which you have a beneficial interest), that you may have at JPMC. You further understand that all telephone calls may be monitored and recorded by or on behalf of JPMC, and that any form of electronic communication (e.g., e-mail and facsimiles) to, from and/or within JPMC, or on a system maintained by or on behalf of JPMC, or available for use by JPMC employees, may be monitored or reviewed by or on behalf of JPMC. You understand that JPMC may use information obtained by monitoring in any manner permissible by law.

## 14. COMPENSATION

a. In connection with your services hereunder, you may be eligible for incentive or commission compensation in accordance with certain compensation programs as in effect for certain subsidiaries and products from time to time. JPMC reserves the right to change such programs at any time, in its sole discretion.

b. If any JPMC subsidiary has provided you with a commission draw, each such subsidiary has the right to suspend any commission draw at any time the amount of your commissions is insufficient to offset the drawing account. You agree that if a customer's security/stock transaction is reversed because of an error or omission on your part, you will forfeit the commissions associated with that transaction and will be responsible for any market loss resulting from the reversal. You also agree that JPMC has the right to offset against commissions any overpayment previously made.

c. In the event an insurance carrier charges back a commission or commissions from which CIA has paid compensation to you, you agree to reimburse CIA. You hereby assign to CIA your right, title, and interest, if any, in and to any compensation received from or payable by the underwriters of any insurance products sold by you hereunder. This assignment is irrevocable regardless of termination of this Agreement.

## 15. APPLICABLE LAW

This Agreement will be governed by the law of the State of New York, without regard to the conflicts of law principles thereof (as permitted by law).

## 16. SEVERABILITY

You understand that, whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law, rule or regulation (including regulations of any applicable self-regulatory organization), you understand that such provision will be in effect only to the extent of its validity, legality or enforceability, without invalidating the remaining provisions of this Agreement, provided, however, that notwithstanding any other provision of this Agreement, if any portion of the

Agreement is held to be unenforceable, JPMC, at its option, may seek modification or severance of such portion or consider the Agreement null and void.

## 17. ASSIGNMENT; SUCCESSORS TO JPMC

Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of any successor or assignee of CISC, JPMC or any JPMC subsidiary, including, without limitation, any entity or entities acquiring directly or indirectly all or substantially all of the assets of JPMC whether by merger, consolidation, sale or otherwise. This Assignment by CISC or JPMC need not be in writing. This Agreement is not assignable by you

## 18. MODIFICATIONS OF TERMS AND CONDITIONS

a. You understand that the terms and conditions of your employment, including those which are the subject of this Agreement, are subject to change and may be modified by JPMC at any time without prior notice to you, and that JPMC has the right to condition your continued employment upon your agreement to such modified terms and conditions.

b. No provision of this Agreement may be amended, modified or waived unless such amendment, modification, or waiver is agreed to in writing, and signed by you and by an authorized officer of JPMC. Except as otherwise specifically provided in this Agreement, no waiver by any party of any breach by the other party hereto of any provision of this Agreement to be performed by such other party shall be deemed a waiver of a subsequent breach of such provision or a waiver of a similar or dissimilar provision at the same or at any prior or subsequent time.

## 19. NOTICE TO PROSPECTIVE EMPLOYERS

Prior to accepting employment with any other person or entity during your employment or during the 12 months following the date of your termination, you will provide any prospective employer with written notice of provisions of section 7, 8 and 9 of this Agreement with a copy delivered simultaneously to JPMorgan Chase & Co., Head of Compliance, 270 Park Avenue, New York, New York 10017, with a copy to Head of Employment Law, JPMorgan Chase Bank, Legal Department, One Chase Manhattan Plaza, 26th Floor, New York, New York 10081. You also agree that JPMC may provide any of your future or prospective employers with a copy of this Agreement, in whole or part, in it sole discretion.

## 20. RECITAL OF CONSIDERATION AND REASONABLENESS

You acknowledge that the terms and conditions of this Agreement incorporate and/or supplement the terms and conditions of your employment at JPMC and are reasonable and necessary to protect the valued business interests of JPMC and that you have received good and valuable consideration for entering into this Agreement.

## 21. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof; all prior Agreements, representations, statements, negotiations, and undertakings are superseded hereby; provided, however, the duties and obligations set forth in this Agreement are in addition to and do not abrogate your obligations under any other non-solicitation (or non compete) agreement with JPMC or any of its affiliates.

## 22. HEADINGS

You understand that the headings contained in this document are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## 23. THIS PARAGRAPH ONLY APPLIES IF YOUR WORK LOCATION IS IN LOUISIANA.

You specifically agree that if your work location is outside of Louisiana this paragraph does not apply to you. The agreements and restrictions set forth in paragraphs 8, 9 and 10 of this Agreement shall be effective in the following parishes within the State of Louisiana in which Retail Consumer Banking Unit of JPMorgan Chase Bank, N.A. (aka Chase Bank and Chase Investment Services Corp.) does business:

| | |
|---|---|
| Caddo | Lafourche |
| Bossier | Terrebonne |
| Ouachita | Orleans |
| Lincoln | Jefferson |

**App.100**

| | |
|---|---|
| Rapides | St. ▮ the Baptist |
| St. Landry | St. Bernard |
| Calcasieu | St. Charles |
| Beauregard | St. Tammany |
| Lafayette | Tangipahoa |
| Vermilion | Ascension |
| Iberia | East Baton Rouge |

You agree that Retail Consumer Banking (aka Chase Bank and Chase Investment Services Corp.) provides retail banking financial services and products, (including checking and savings accounts, certificates of deposit, other depository accounts, credit cards, loans and lines of credit, online bill payment, direct deposit, and other convenience products), as well as investment products and services (including insurance products) to consumer and small businesses in all the parishes listed above.

*Your ELECTRONIC AFFIRMATION or SIGNATURE confirms your understanding and acceptance of all of the terms and conditions of this Agreement.*

**24. EMPLOYEE ACKNOWLEDGEMENT AND SIGNATURE**

You acknowledge that you were made aware of this Agreement at the time that you accepted employment with the JPMC or on or about the date you accept and affirm this Agreement, whichever is applicable, and you are signing it knowingly and voluntarily and accepting or continuing employment with full understanding of its terms and conditions and you will not challenge the enforceability or terms of this Agreement.

Employee Signature: _~~Jhamm~~_

Date: _6/8/0?_

Employee Name (please print):

_Jeffrey A Hammert_

Employee Initials _JH_

**App.101**

App.102

## ARBITRATION DISCLOSURE

The Form U-4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:

1. You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person 'n court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

2. A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute 's not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at the FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

3. *Consistent with current Chase policy, but subject to change, no predispute agreement to arbitrate such employment discrimination claims is sought or included in the Agreement.*

4. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

5. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

6. The arbitrators do not have to explain the reason(s) for their award.

7. The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

8. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

CISC OPS 33206 REVISED 03 2009 02

Page 6 of 7

Employee Initials

 

**ATTACHMENT A**

In accordance with Paragraph 8(c) above, you understand and agree that the following list of customers fall within the scope of Paragraph 8(c) as customer relationships were able to substantiate to your Manager through documents or other suitable evidence that the relationship preceded commencement of your employment with JPMC or it predecessor:

**Customer Name**                                          **Prior Relationship**

_____              _____

_____              _____

_____              _____

All other customers whom you service or whom you become aware of during your employment with JPMC fall within the scope of Paragraphs 8(a) and 8(b).

---

Employee Signature: _____

Date: 6/9/04

Employee Name (please print):

Jeffrey D Lammert

Manager Signature: _____

Date: _____

Manager Name (please print):

_____

---

**App.103**

# EXHIBIT 2



Print

## 13204. Class Action Claims

**Past version: effective from Dec 15 2008 - Jul 8 2012.**
**To view other versions open the versions tab on the right.**

**The Industry Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.**

(a) Class action claims may not be arbitrated under the Code.

(b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;

- The class is decertified;

- The member of the certified or putative class is excluded from the class by the court; or

- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

Selected Notices: 07-07, 08-57.

©2012 FINRA. All rights reserved.

**App.105**

# EXHIBIT 3



Print

## 13204. Class Action and Collective Action Claims

The Industry Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.

(a) Class Actions

(1) Class action claims may not be arbitrated under the Code.

(2) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(A) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(B) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(3) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(4) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;

- The class is decertified;

- The member of the certified or putative class is excluded from the class by the court; or

- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

(b) Collective Actions

(1) Collective action claims under the Fair Labor Standards Act, the Age Discrimination in Employment Act, or the Equal Pay Act of 1963 may not be arbitrated under the Code.

(2) Any claim that involves plaintiffs who are similarly-situated against the same defendants as in a court-certified collective action or a putative collective action, or that is ordered by a court for collective action at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action.

(3) The Director will refer to a panel any dispute as to whether a claim is part of a collective action, unless a party asks the court or other forum hearing the collective action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(4) A member or associated person may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified.

These subparagraphs do not otherwise affect the enforceability of any rights under the Code or any other agreement.

**App.107**

Amended by SR-FINRA-2012-027 eff. July 9, 2012.
Amended by SR-FINRA-2011-075 eff. July 9, 2012.
Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

**Selected Notices:** [07-07](#), [08-57](#), [12-28](#).

©2012 FINRA. All rights reserved.

**App.108**

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LLOYD and LAWRENCE KAUFMANN, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>J.P. MORGAN CHASE & CO. and CHASE INVESTMENT SERVICES CORP.,<br><br>                   Defendants. | **No. 11 Civ. 9305 (LTS)** |

## DECLARATION OF RACHEL BIEN IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, TO STAY CLAIMS BY PLAINTIFF LAWRENCE KAUFMANN AND CERTAIN OPT-IN PLAINTIFFS

I, Rachel Bien, declare as follows:

    1.     I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel in this matter.

    2.     I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims in this case.

    3.     I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Procedural History**

    4.     Plaintiffs Jeffrey Lloyd and Ellen Szymkiewicz filed a Class Action Complaint on

**App.109**

December 19, 2011, alleging that they and other similarly situated Chase Financial Advisors were uniformly misclassified as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").

5.      On March 23, 2012, Plaintiff Kenneth Ciullo filed a separate action, *Ciullo v. J.P. Morgan Chase & Co.*, No. 12 Civ. 2197, which the Court accepted as a related case on June 6, 2012.

6.      On February 29, 2012, Defendants Chase Investment Services Corp. and J.P. Morgan Chase & Co. ("Chase") moved to transfer this action to the Central District of California.  ECF No. 19.  In support of transfer, Chase argued that the claims in this case are the same as the claims in *Alakozai v. Chase Investment Services, Corp.*, which is pending in that district, and because a motion to compel arbitration was already before the *Alakozai* court, transferring the case would promote judicial efficiency and avoid the risk of inconsistent decisions with respect to the arbitration agreement.  *Id.*

7.      After Chase moved to transfer, but before the Court ruled, the *Alakozai* court denied Chase's motion to compel arbitration.  *Alakozai* v. *Chase Inv. Servs. Corp.*, No. 11 Civ. 09178, 2012 WL 748584 (C.D. Cal. Mar. 1, 2012).  An appeal of that decision is pending before the Ninth Circuit Court of Appeals.

8.      On August 14, 2012, the Court denied Chase's motion to transfer.  ECF No. 36.

9.      On January 14, 2013, Plaintiffs moved for conditional certification of the FLSA claims and Court-authorized notice.  ECF No. 62.

**Cost of Arbitration**

10.     Based on the experiences of attorneys at O&G and other plaintiffs' employment attorneys who have arbitrated individual wage and hour cases, as discussed below, proceeding

**App.110**

with Plaintiffs' claims on an individual basis in arbitration would be prohibitively expensive.

11.  I reviewed the time, attorneys' fees, and cost records for 7 arbitrations for which O&G represented individual claimants before FINRA or the AAA over the past 4 years. Each of these cases involved breach of contract and/or unpaid compensation claims against the claimant's employer.

12.  Based on my review of the records, O&G attorneys expended between 220 and 1015 hours preparing for the arbitration hearing, including drafting a statement of claim, requesting and responding to discovery demands, drafting pre-hearing memoranda, preparing witnesses, and preparing exhibits.

13.  O&G attorneys expended between 25 and 523 hours on the arbitration hearings themselves. After the hearing, post-hearing memoranda are typically submitted, requiring attorneys to perform several additional hours of work.

14.  The attorneys' fees expended by O&G in individual arbitrations over the past 4 years have ranged from $112,702 to $288,954 and the cost of arbitration has ranged from $3,724 to $26,598.

15.  Plaintiffs' employment attorneys who have arbitrated individual wage and hour cases and other individual employment matters report similar expenditures of time, fees, and costs. Attached hereto as **Exhibit A** is the Declaration of Joseph E. Jaramillo ("Jaramillo Decl."). Attached hereto as **Exhibit B** is the Declaration of Max Folkenflik ("Folkenflik Decl."), which was previously submitted in *Sutherland v. Ernst & Young, LLP*, No. 10 Civ. 3332 (S.D.N.Y.).

16.  Based on the information above and using the most conservative estimates of time expended by O&G attorneys as set forth above, arbitrating each Plaintiff's claim on an individual

**App.111**

basis would take approximately 245 hours, which at my hourly rate of $475 (my rate is at the lowest end of partner rates at O&G) would amount to $116,375 in attorneys' fees for each Plaintiff.

17. Even if Plaintiffs could find an attorney willing to represent them with a lower rate, even at three quarters of my hourly rate, each Plaintiff's attorneys' fees would still amount to $87,281.25.

18. Based on my knowledge of the hourly rates of my colleagues from other firms, it is unlikely that Plaintiffs would be able to find an attorney with sufficient expertise in wage and hour law to represent them for much less than my hourly rate.

19. In addition to attorneys' fees, Plaintiffs would be required to bear the costs of arbitration, including deposition transcripts,[1] which, in my experience, typically cost between $500 and $1,500 depending on the length of the deposition and the number of transcript pages, a filing fee of up to $100 for AAA arbitration and likely higher for FINRA arbitration based on the value of the claims, and typical litigation costs, such as postage, photocopying, witness costs, and other costs relating to discovery, including for processing and coding Electronically Stored Information ("ESI"). For example, because much of the discovery in misclassification wage and hour cases is located in emails, Plaintiffs have sought – and would seek in arbitration – email discovery from Defendants' custodians and from Plaintiffs' work email accounts that are still housed on Defendants' servers. In this case already, Plaintiffs have already expended more than $3,700 to process and then conduct predictive coding searches on the emails that Defendants

---

[1] The arbitration agreement that Chase argues applies to Opt-In Plaintiffs Johnson, Zaat-Hetelle, VanHoogstraat, Piccoli, and Patey requires the parties to bear the costs of their own depositions and provides that each party can take the depositions of all expert witnesses and up to three other individuals. *See* Decl. of Heather Emmert ("Emmert Decl."), attached as Exhibit 1 to the Decl. of Thomas A. Linthorst ("Linthorst Decl."), ECF No. 69-1, Exs. A, C, E, G, I (Binding Arbitration Agreement) ("BAA") ¶ 7(d).

**App.112**

produced for Plaintiff Jeffrey Lloyd and opt-in Plaintiff Joshua Strouse.

20.    While O&G typically charges the clients it represents in arbitration by the hour and requires them to pay costs out of pocket, here, Plaintiffs would not be able to pay O&G (or likely any other attorney) to represent them by the hour or to advance the costs of arbitration.

21.    Because Plaintiffs would not be able to pay hourly attorneys' fees or the costs of arbitration out of pocket, Plaintiffs would be forced to find a lawyer to represent them on a contingency basis.

22.    Representing Plaintiffs on a contingency fee basis would not only be risky, it would be a poor business decision.  If Plaintiffs lost, O&G or another lawyer would recover nothing.  Even if Defendants offered to settle Plaintiffs' claims on the eve of an arbitration hearing, unless Defendants agreed to pay O&G's fees in full on top of Plaintiffs' damages, which is extremely unlikely and unusual in my experience, O&G would most likely recover the standard contingency fee of one-third of each Plaintiff's damages – far less than their actual attorneys' fees would likely be at that point.

23.    The Opt-In Plaintiffs who signed Defendants' Binding Arbitration Agreement stand to recover between approximately $5,224 and $27,633, without liquidated damages, by our calculations.  Plaintiffs' most optimistic estimates of their FLSA damages, including liquidated damages (which are far from certain) and overtime at time-and-a-half (which is against the weight of authority), are as follows:

a.    Hyman: $109,272

b.    Johnson: $33,000

c.    Krichman: $106,009

d.    Kaufmann: $99,197

**App.113**

    e.    Lammert: $78,046

    f.    Patey: $10,449

    g.    Piccoli: $48,515

    h.    VanHoogstraat: $50,625

    i.    Zaat-Hetelle: $55,266

24.    Although the Fair Labor Standards Act provides for fee and cost-shifting to prevailing plaintiffs, this does not guarantee that O&G will be paid. O&G would still be required to risk losing and recovering nothing or recovering just a fraction of their fees if the case is resolved through settlement.

25.    In each arbitration, each Plaintiff would be required to demonstrate that he or she was improperly classified as exempt from overtime. This legal issue not only requires an analysis of numerous factors, but is also not settled. Based upon my research, whether financial advisors qualify as exempt under the FLSA has been addressed by few district courts and no courts of appeal.

26.    Even if each Plaintiff prevailed, it is not certain that the arbitrators would shift Plaintiffs' costs to Defendants. The arbitration agreement that Chase argues applies to Opt-In Plaintiffs Johnson, Zaat-Hetelle, VanHoogstraat, Piccoli, and Patey provides that each party is to bear its own costs, except for administrative costs, including fees and travel expenses for a single arbitrator, hearing room expenses, and any witnesses produced at the arbitrator's request. *See, e.g.*, Emmert Decl. Ex. A (Johnson BAA) ¶ 7(a). Although the agreement appears to provide for fee- and cost-shifting in the event that Plaintiffs prevail, *see id.* ("[e]xcept as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them"), even if Plaintiffs prevail, the arbitrators might not shift Plaintiffs' attorneys' fees on to Defendants at all or might shift just

**App.114**

a portion of their fees onto them. This has been the experience of plaintiffs' counsel in other arbitrations. Ex. B (Folkenflik Decl.) ¶ 26.

27.     As discussed above, the time and labor that O&G would have to expend to arbitrate each Plaintiff's individual wage and hour claim would be substantial, while the prospect of recovering its attorneys' fees and costs would be minimal. Moreover, O&G would not be able to benefit from the efficiencies of litigating wage and hour claims on a class or collective basis because they would be required to arbitrate each claim individually. For example, rather than filing one motion for summary judgment or one pre-hearing brief, O&G would be required to draft papers for each individual arbitration. Similarly, for each hearing, O&G would be required to recall witnesses, spend time preparing them, and pay any travel-related costs.

28.     Given the risk and the substantial upfront investment, no reasonable attorney would willingly represent Plaintiffs under these circumstances.

**Exhibits**

29.     Attached hereto as **Exhibit C** is a true and correct copy of the current version of FINRA Rule 13204 ("FINRA Rule 13204").

30.     Attached hereto as **Exhibit D** is a true and correct copy of FINRA Rule 13900.

31.     Attached hereto as **Exhibit E** is a true and correct copy of FINRA Rule 13902.

32.     Attached hereto as **Exhibit F** is a true and correct copy of FINRA Rule 13904.

33.     Attached hereto as **Exhibit G** is a true and correct copy of the FINRA Hearing Panel Decision issued in Disciplinary Proceeding 2011029760201 against Charles Schwab & Co., Inc. on February 21, 2013 ("Charles Schwab FINRA Hearing Decision").

34.     Attached hereto as **Exhibit H** is a true and correct copy of FINRA Regulatory Notice 12-28, dated June 2012 ("FINRA Regulatory Notice 12-28").

**App.115**

35.     Attached hereto as **Exhibit I** is a true and correct copy of a FINRA Interpretive Letter to Cliff Palesky, Esq., dated September 21, 1999 ("1999 Interpretive Letter").

36.     Attached hereto as **Exhibit J** is a true and correct copy of the complaint issued on February 28, 2013 by the National Labor Relations Board against JP Morgan Chase & Co. and JP Morgan Chase Bank, Case 02-CA-088471 ("Ryan NLRB Complaint").


        I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 29, 2013
        New York, New York


                                        */s/ Rachel Bien*
                                        Rachel Bien

                                        Outten & Golden LLP
                                        3 Park Avenue, 29th Floor
                                        New York, NY 10016
                                        (212) 245-1000

**App.116**

# Exhibit G

## FINANCIAL INDUSTRY REGULATORY AUTHORITY
## OFFICE OF HEARING OFFICERS

DEPARTMENT OF ENFORCEMENT,

                         Complainant,

      v.

CHARLES SCHWAB & COMPANY, INC.
 (CRD No. 5393),

                     Respondent.

Disciplinary Proceeding
No. 2011029760201

Hearing Officer—LOM

**HEARING PANEL DECISION
GRANTING IN PART AND DENYING
IN PART THE PARTIES' CROSS-
MOTIONS FOR SUMMARY
DISPOSITION**

February 21, 2013

     The first two causes of action in this disciplinary proceeding against Respondent, Charles Schwab & Company, Inc., charge that new provisions in Respondent's customer agreements by which a customer waives any ability to assert a claim by means of a judicial class action conflict with and violate FINRA Rules 2268(d)(1) and (d)(3) and NASD Rules 3110(f)(4)(A) and (4)(C). These Rules operate to preserve judicial class actions as an alternative to arbitration, even when there is a pre-dispute arbitration agreement between a FINRA member firm and its customer. The Hearing Panel concludes that Respondent's new language does conflict with and violate these Rules. The Hearing Panel further concludes, however, that these Rules may not be enforced. Enforcement is foreclosed by the Federal Arbitration Act, as construed by the Supreme Court in *Concepcion* and other decisions. Those decisions hold that adjudicators must enforce agreements to go to arbitration to resolve disputes and must reject any public policy exception that disfavors arbitration, unless Congress itself has indicated an exception to the Act. Accordingly, the Hearing Panel dismisses the first two causes of action.

     The third cause of action charges that other new language in Respondent's customer agreements requiring customers to agree that arbitrators have no power to consolidate more than one party's claims in arbitration violates FINRA Rule 2268(d)(1) and NASD Rule 3110(f)(4)(A) by attempting to "limit" and "contradict" FINRA Arbitration Rule 12312. FINRA Arbitration Rule 12312 specifies circumstances in which arbitrators may arbitrate consolidated claims. The Hearing Panel concludes that the new language purporting to limit the powers of FINRA arbitrators violates FINRA Rule 2268(d)(1) and NASD Rule 3110(f)(4)(A) in two respects: (i) the consolidation language undermines the fundamental operation of Rule 12312

1

and, in fact, the overall operation of FINRA Arbitration Rules generally, by depriving FINRA of its authority to grant and circumscribe the powers of arbitrators in FINRA's forum; and (ii) the consolidation language contravenes the specific authority given to the arbitrators to join individual claims in specified circumstances. The Hearing Panel further concludes that the Federal Arbitration Act does not bar enforcement of these Rules, because the Act does not dictate how an arbitration forum should be governed and operated or prohibit the consolidation of individual claims.

In each cause of action, Enforcement also alleged that, by virtue of the other alleged Rule violations, Schwab violated FINRA Rule 2010. The Hearing Panel concludes that by virtue of the violation found in the third cause of action, Respondent also violated FINRA Rule 2010.

For the violations found as to the third cause of action (NASD Rule 3110(f)(4)(A) and FINRA Rules 2268(d)(1) and 2010), Respondent is ordered to take corrective action, which includes removing the violative language from customer agreements, and sending promptly to all customers whose customer agreements were amended or created with the violative language a notice indicating that the prior limitation on the powers of FINRA arbitrators is not effective. The notice should reiterate that Schwab agrees to arbitrate in accord with FINRA Arbitration Rules, as amended from time to time, and indicate that consolidation is available in arbitration pursuant to those Rules. In addition, Respondent is ordered to pay a fine of $500,000 and the hearing costs.

## I.    INTRODUCTION AND PROCEDURAL STATUS OF THE CASE

The Financial Industry Regulatory Authority, Inc. ("FINRA") Department of Enforcement ("Enforcement") brought this disciplinary action against Respondent, Charles Schwab & Company, Inc. ("Schwab" or "Respondent")[1] challenging the enforceability of new provisions in Schwab's customer account agreements relating to the arbitration of customer claims. Those new provisions are found in Schwab's pre-dispute arbitration agreements with

---

[1] FINRA, which is responsible for regulatory oversight of securities firms and associated persons who do business with the public, was formed in July 2007 by the consolidation of NASD and the regulatory arm of the New York Stock Exchange ("NYSE"). FINRA is developing a new "Consolidated Rulebook" of FINRA Rules that includes NASD Rules. The first phase of the new consolidated rules became effective on December 15, 2008. *See* FINRA Regulatory Notice 08-57 (Oct. 2008). Because the Complaint in this case was filed after December 15, 2008, FINRA's Procedural Rules apply to the proceeding. The applicable FINRA and NASD Conduct Rules are those that existed when the conduct in issue occurred. FINRA's Rules (including NASD Rules) are available at www.finra.org/Rules. References here to FINRA include NASD.

**App.119**

customers under the heading "Waiver of Class Action or Representative Action" ("Waiver"). The Waiver would, in effect, require any customer claim against Schwab to be arbitrated and to be arbitrated solely on an individual, case-by-case basis.

The Complaint was filed on February 1, 2012. It states three causes of action, but only two aspects of the new provisions are in issue.

*First*, Schwab's Waiver imposes an agreement that customers "waive any right to bring a class action, or any type of representative action" against Schwab or any related third party "in court." This new language would eliminate judicial class actions. As a result, all customer claims would go to arbitration, without exception; and, because FINRA Arbitration Rules separately prohibit class actions in arbitration, the new language also would have the effect of barring any class actions against Schwab in any forum. The issue is whether the elimination of judicial class actions violates FINRA Rules that operate to preserve a customer's option to participate in a judicial class action, even when a FINRA member's customer agreement contains a pre-dispute agreement to arbitrate (Causes One and Two).

*Second*, Schwab's Waiver also imposes on customers an agreement that "the arbitrator(s) shall have no authority to consolidate more than one parties' [sic] claims" in arbitration. This new language would deprive FINRA arbitrators of any authority to join or consolidate individual claims in arbitration by requiring a Schwab customer to agree that an arbitrator shall have no such power.[2] The issue here is two-fold: (i) whether this language violates FINRA Rules that give FINRA the authority to determine the powers of its arbitrators by promulgating Rules granting and circumscribing the arbitrators' powers, and, (ii) more specifically, whether this language violates FINRA Rules that expressly provide for consolidation of individual claims and

---

[2] The new provisions also bind Schwab to assert any claim against the customer as an individual claim in arbitration, but that aspect of the agreement is not in issue.

3

**App.120**

give arbitrator panels final authority as to whether to go forward on a consolidated basis (Cause Three).

The Parties agree that the material facts regarding the alleged violations are not in dispute, and each Party contends that it is entitled to summary disposition based on those facts as a matter of law.[3] On May 30, 2012, the Hearing Panel held a non-evidentiary hearing and heard oral argument on the motions for summary disposition. That oral argument primarily focused on whether Schwab had committed any violation in connection with its new Waiver. On August 28, 2012, the Hearing Officer issued an Order informing the Parties that the Hearing Panel had determined to dismiss the first two Causes of Action but to find a violation with respect to the third Cause of Action. Pursuant to a later scheduling Order, the Parties then submitted briefs in

---

[3] The Parties filed a joint stipulation of undisputed facts on May 2, 2012, and opposing motions for summary disposition on May 4, 2012. Each Party supported its motion with exhibits and provided an additional statement of undisputed facts. Each Party filed an opposition to the other's motion on May 16, 2012. The Parties also filed reply briefs in support of their own motions on May 25, 2012.

The following abbreviations are used here for those initial filings:

(1) Joint Stipulation Of Undisputed Facts For Motions For Summary Disposition ("Jt. Stip.");

(2) Enforcement's submissions:
   a. Department of Enforcement's Motion for Summary Disposition and Department of Enforcement's Memorandum Of Points And Authorities In Support Of Its Motion For Summary Disposition (together, "Enf. Motion");
   b. Exhibit A, Department Of Enforcement's Statement Of Undisputed Facts, Filed In Support Of Its Motion For Summary Disposition ("Enf. Statement Of Facts"), with Exhibits CX-1 through CX-5 ("CX-1" etc.);
   c. Department Of Enforcement's Opposition To Schwab's Motion For Summary Disposition ("Enf. Opp. To Schwab");
   d. Department Of Enforcement's Reply To Schwab's Opposition To Enforcement's Motion For Summary Disposition ("Enf. Reply Supporting Its Motion");

(3) Schwab's submissions:
   a. Charles Schwab & Co., Inc.'s Motion For Summary Disposition ("Schwab Motion");
   b. Statement Of Undisputed Facts In Support Of Schwab's Motion For Summary Disposition ("Schwab Statement Of Facts");
   c. Declaration of Gilbert R. Serota In Support Of Charles Schwab & Co., Inc.'s Motion For Summary Disposition ("Serota Decl.") with Exhibits A through W ("Ex. A" etc.);
   d. Charles Schwab & Co., Inc.'s Opposition To Department Of Enforcement's Motion For Summary Disposition ("Schwab Opp. To Enf.");
   e. Charles Schwab & Co., Inc.'s Reply In Support Of Its Motion For Summary Disposition ("Schwab Reply Supporting Its Motion").

**App.121**

October 2012 regarding the appropriate sanctions for the violation found in connection with Cause Three.[4]

This is the Hearing Panel's decision, explaining its conclusions and reasoning with respect to the violations alleged and the sanctions.[5]

## II.  OVERVIEW OF THE CASE AND THE HEARING PANEL'S DECISION

Causes One and Two concern the elimination of judicial class actions as an alternative to arbitration, while Cause Three concerns the attempt to deprive arbitrators of the power to consolidate individual claims.  Enforcement maintains that the analysis begins and ends with whether the Waiver violates FINRA Rules.  Schwab maintains that the Federal Arbitration Act ("FAA") preempts enforcement of the FINRA Rules in issue, regardless of whether the Waiver violates FINRA Rules.

The Hearing Panel concludes that the Waiver violates FINRA Rules.  However, the Hearing Panel further concludes (i) that the FAA bars FINRA from preserving judicial class

---

[4]  The following abbreviations refer to the filings on sanctions:

> (i) Department Of Enforcement's Brief Regarding Sanctions For The Third Cause Of Action ("Enf. Sanctions Br.");
> (ii) Respondent's Brief Regarding The Appropriate Remedy For The Panel's Finding On The Third Cause Of Action ("Resp. Sanctions Br."), accompanied by Declaration of Lowell Haky In Support Of Respondent's Brief Re The Appropriate Remedy For The Panel's Finding On The Third Cause Of Action ("Haky Decl."); and
> (iii) Department Of Enforcement's Reply Brief Regarding Sanctions For The Third Cause Of Action ("Enf. Sanctions Reply").

[5]  In the interim between the briefing on sanctions and the issuance of this decision, Schwab filed a supplemental declaration indicating that it had removed from its account agreements the phrase that is in issue in Cause Three. Schwab further explained in the supplemental declaration that it has begun the process of revising and replacing the relevant language in some 100 different hard-copy account application forms.  Schwab believes that process will be completed by the end of the first quarter of 2013.  Supplemental Declaration of Lowell Haky Re: Third Cause Of Action, filed on January 11, 2013 (which supplements the Haky Declaration filed by Schwab along with its brief on sanctions).

This decision, however, concerns the charges filed in the Complaint and the language of Schwab's Waiver at that time.  For purposes of determining whether the language violated FINRA Rules, the decision discusses the consolidation language without regard for Schwab's subsequent actions to remove that language from its account agreements and application forms.

5

**App.122**

actions as an option despite a customer's pre-dispute agreement to arbitrate claims, but (ii) that the FAA does not bar FINRA from granting, circumscribing, or modifying the powers of FINRA arbitrators.

### A. The Causes Of Action And The Parties' Contentions As To Rule Violations

(1) *Cause One: Alleged Conflict With Rules Prohibiting Any "Limit" On The Ability To File A "Claim" In Court That The Arbitration Forum Permits To Be Filed In Court, Because FINRA Arbitration Rule 12204(d) Preserves The Option To File A Customer Claim As Part Of A Judicial Class Action*

According to the Complaint, the new customer agreement language waiving the ability to bring or participate in judicial class actions is prohibited by NASD Rule 3110(f)(4)(C), which applied when Schwab introduced its Waiver, and FINRA Rule 2268(d)(3), which applies now.[6] These Rules prohibit a member from imposing "limits" on the ability of a party to file a "claim" in court if the rules of the forum where the claim might otherwise be filed "permit" filing in court.  FINRA Rule 12204(d) of the Code of Arbitration Procedure for Customer Disputes ("Arbitration Rule 12204(d)")[7] provides that an individual claim may not go forward in arbitration while that claim is simultaneously included in a judicial class action.

Enforcement argues that Arbitration Rule 12204(d) "permits" the filing of "class action claims" in court and therefore concludes that the complete waiver of any ability to file class action claims in court constitutes a prohibited "limit" on a "claim" within the meaning of FINRA 2268(d)(3).  Schwab's main argument against finding any conflict with subsection (d)(3) is that a class action is a type of procedure and not a "claim."  Therefore, Schwab reasons, the reference

---

[6] NASD Rule 3110 applied prior to December 5, 2011, and FINRA Rule 2268 applied from that date forward.  The provisions of these two Rules allegedly violated are identical.  Reference here to one of these Rules includes reference to the other.  Generally, the current FINRA Rule is cited.

[7] FINRA Arbitration Rule 12204(d) was in effect throughout the period in issue.

to permitted "claims" has nothing to do with class action procedure, and the elimination of that

procedure does not "limit" FINRA's Rule.

### (2) *Cause Two: Alleged Conflict With Rules Prohibiting Any "Condition" That "Limits" Or "Contradicts" A FINRA Rule, Because FINRA Arbitration Rule 12204(d) Preserves The Option To File A Customer Claim As Part Of A Judicial Class Action*

The Complaint separately alleges that the waiver of the ability to bring or participate in

judicial class actions violates NASD Rule 3110(f)(4)(A) and FINRA Rule 2268(d)(1), which

prohibit "any condition" in a pre-dispute arbitration agreement that "limits or contradicts"

FINRA Rules. Enforcement reiterates its view that Arbitration Rule 12204(d) permits the filing

of class actions in court, and argues that the Waiver, by doing away with judicial class actions,

constitutes an impermissible "limit" on or "contradiction" of Arbitration Rule 12204(d). Schwab

argues that this Rule does not authorize class actions but rather provides only that *if* a claim is

included in a judicial class action the claimant may not simultaneously pursue the claim in an

arbitration proceeding. Accordingly, Schwab argues that its Waiver does not "limit" or

"contradict" the Rule.

### (3) *Cause Three: Alleged Conflict With Rules Prohibiting Any "Condition" That "Limits" Or "Contradicts" A FINRA Rule, Because FINRA Arbitration Rule 12312 Authorizes Consolidation Of Individual Claims In Arbitration*

The Complaint also challenges other new language in the Schwab customer agreement

that purports to limit the authority of the arbitrators in any dispute between Schwab and its

customers. Pursuant to the new language, Schwab and the customer agree that "the arbitrator(s)

shall have no authority to consolidate more than one parties' [sic] claims."

FINRA Arbitration Rule 12312,[8] however, provides that one or more parties in an

arbitration proceeding may submit multiple claims jointly. The Rule grants the Director of

---

[8] FINRA Arbitration Rule 12312 was in effect throughout the period in issue.

Arbitration the power, prior to the appointment of a panel of arbitrators, both to separate claims submitted jointly and to initiate consolidation of individual claims. After the appointment of a panel of arbitrators, the Rule authorizes the panel of arbitrators to override any decision of the Director regarding consolidation. Thus, arbitrators have final authority to decide whether to arbitrate on a consolidated basis. Since Rule 12312 authorizes consolidation but FINRA Arbitration Rule 12204(a) expressly prohibits arbitration on a class action basis, it is clear that consolidation is a non-representative type of procedure, distinguished from class actions.

Enforcement contends that Schwab's imposition of an agreement to limit the power of arbitrators in FINRA proceedings to consolidate multiple individual claims is an impermissible "limit" on or "contradiction" of Arbitration Rule 12312 in violation of NASD Rule 3110(f)(4)(A) and FINRA Rule 2268(d)(1). Schwab contends that its Waiver does not affect the ability of customers to submit claims jointly or the power of the Director. Schwab explains that it intended the language in issue to prevent arbitrators from rendering the Waiver ineffective by using consolidation to create class actions.

## B. The Parties' Contentions Regarding The Federal Arbitration Act

Enforcement argues that if Schwab's Waiver contradicts and violates FINRA's Rules then the analysis ends there – sanctions must be imposed. According to Enforcement, the FAA is irrelevant. To the contrary, Schwab argues, even if the Waiver contradicts and violates FINRA's Rules, the FAA applies and forecloses enforcement of the Rules. According to Schwab, the FAA requires that Schwab's arbitration agreement, including the new Waiver, be given effect.

**App.125**

## C. The Hearing Panel's Conclusions

As discussed more fully below, the Hearing Panel concludes that the specified provisions of Schwab's Waiver contradict and violate FINRA's Rules. The elimination of judicial class actions conflicts with FINRA Rules that are designed to preserve the option of pursuing customer claims in judicial class actions in preference to arbitration. The language depriving arbitrators of the power to consolidate claims in arbitration conflicts with the fundamental operation of FINRA's Rules governing its arbitration forum and with specific Rule provisions relating to consolidation.

Supreme Court precedent, however, compels the Hearing Panel to conclude that the FAA bars enforcement of FINRA's Rules to the extent that the Rules require that customers be given the option to bring their claims in court in the form of judicial class actions, despite any pre-dispute agreement to resolve disputes in arbitration. Rules that override an agreement to arbitrate and allow a party to an arbitration agreement to avoid arbitration represent the kind of "hostility" to arbitration that the Supreme Court has repeatedly found inappropriate and unenforceable under the FAA. In *Shearson/American Express Inc. v. McMahon*[9] and *Rodriguez de Quijas v. Shearson/American Express, Inc.,*[10] the Supreme Court established that securities law claims are no exception to the FAA's mandate that a party to an arbitration agreement must go to arbitration to resolve any claim subject to the agreement. In *AT&T Mobility LLC v. Concepcion*[11] the Court established that class actions are no exception either, holding that a party to an arbitration agreement has no right to participate in a class action instead of arbitration on an individual basis.

---

[9] *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987).

[10] *Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989).

[11] *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 2011 U.S. LEXIS 3367 (2011).

**App.126**

The Hearing Panel reads these and other Supreme Court precedents to mean that countervailing policy concerns that might counsel against arbitration of a particular kind of dispute – whether state or federal, statutory or regulatory – cannot override the FAA's mandate, unless there is a clear expression of *congressional* intent to carve out an exception to the FAA. Without an indication that Congress itself wished to create an exception to the FAA, other policy makers must give way to the FAA. In the case at hand, the Hearing Panel finds no such clear expression of *congressional* intent to preserve judicial class actions as an option for customer claims against a securities broker-dealer in direct contradiction of an agreement to arbitrate those claims.

The FAA does *not*, however, preclude enforcement of FINRA's Rules governing the powers of FINRA arbitrators and the procedures for FINRA arbitration. The FAA is focused on requiring those who have agreed in advance to resolve their disputes by arbitration to go to arbitration after a dispute arises and enforcing any decision the arbitrators may reach, not on regulating the governance of arbitration forums or arbitration procedures. The consolidation language in Schwab's Waiver does not have to do with avoiding arbitration. Rather, the consolidation language concerns how FINRA's arbitration forum will be governed and operated and the manner in which arbitration will be conducted. Accordingly, the Hearing Panel concludes that the consolidation of claims provision in the Waiver improperly attempts to circumscribe the power of FINRA arbitrators.

The Hearing Panel grants Schwab's motion for summary disposition on the first two Causes of Action (concerning judicial class actions), and dismisses them. The Hearing Panel finds a violation as alleged in the third Cause (concerning consolidation), and grants Enforcement's motion for summary disposition as to that Cause. The Panel imposes sanctions

with respect to the third Cause only.[12] The basis for the Panel's decision is set forth more fully below.

### III. SUMMARY DISPOSITION STANDARD

Pursuant to FINRA Procedural Rule 9264(a), any party may file a motion for summary disposition prior to the hearing on the merits. Such a motion may seek disposition of any or all causes of action. If the decision on a motion for summary disposition does not fully adjudicate the matter, a hearing may still be necessary. If that is the case, the hearing panel is authorized to take various steps pursuant to FINRA Procedural Rule 9264(c) to narrow the issues in dispute and direct further proceedings "as are just." FINRA 9264(e) sets forth the standard for deciding any motion for summary disposition:

> The Hearing Panel ... may grant the motion for summary disposition if there is no genuine issue with regard to any material fact and the Party that files the motion is entitled to summary disposition as a matter of law.[13]

---

[12] As noted in the synopsis, the Complaint alleges that Schwab violated FINRA Rule 2010 by virtue of the other Rule violations alleged in the Complaint. Compl. ¶¶ 20, 26, and 32. Because the alleged Rule 2010 violations turn on whether the underlying conduct violated other FINRA Rules, the FINRA Rule 2010 violations are not separately discussed in this decision, except to note here that the violation of other Rules found in connection with Cause Three is also a violation of FINRA Rule 2010. It is inconsistent with the duties imposed by Rule 2010 to violate other NASD and FINRA Rules, as the Securities and Exchange Commission has consistently held. *See Alvin W. Gebhart*, Exchange Act Rel. No. 53136, 2006 SEC LEXIS 93, at *54 n.75 (Jan. 18, 2006), *rev'd and remanded in part on other grounds sub. nom. Gebhart v. SEC*, 2007 U.S. App. LEXIS 27183 (9th Cir. Nov. 21, 2007). *See also Richard F. Kresge*, Exchange Act Rel. No. 55988, 2007 SEC LEXIS 1407, at *42 (June 29, 2007).

[13] FINRA Procedural Rule 9264(e) also provides that: "the facts alleged in the pleadings of the Party against whom the motion is made shall be taken as true, except as modified by stipulations or admissions made by the non-moving Party, by uncontested affidavits or declarations, or by facts officially noticed pursuant to Rule 9145." The facts set forth in the Parties' joint stipulation are deemed true. The Parties also have submitted exhibits such as Schwab customer agreements and amendments to those agreements, as well as publicly available history of the promulgation of FINRA's Rules and other materials. The existence, authenticity, and content of those materials are not disputed.

The summary disposition standard is based on the standard for summary judgment motions in

civil litigation, and federal judicial decisions on summary judgment motions provide guidance.[14]

The courts have long held that summary judgment should be granted where there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[15]

## IV.    JURISDICTION

There is no dispute that FINRA has jurisdiction over Schwab in this disciplinary

proceeding alleging violations of FINRA Rules.  Schwab has been a FINRA member firm since

1970.[16]  In its application for membership and subsequent amendments to that application,

Schwab agreed to abide by and adhere to FINRA's Rules.[17]  FINRA Rule 0140 expressly states:

"The Rules shall apply to all members and persons associated with a member," and courts have

recognized that FINRA membership constitutes an agreement to adhere to FINRA's Rules.[18]

---

[14] *See, e.g., Dep't of Enforcement v. Claggett,* No. 20050006315101, 2007 FINRA Discip. LEXIS 2, at *8 n.2 (NAC Sept. 28, 2007) (stating that Federal Civil Procedural Rule 56 is guidance on a summary disposition motion); *Dep't of Enforcement v. U.S. Rica Fin., Inc.,* No. C01000003, 2003 NASD Discip. LEXIS 24, at *12 (NAC Sept. 9, 2003) (stating that federal law provides significant guidance in cases involving motions for summary disposition); Order Approving a Proposed Rule Change by the National Association of Securities Dealers, Inc. Relating to Amendments to the Code of Procedure and Other Provisions, Exchange Act Rel. No. 43102, 2000 SEC LEXIS 1584, at *7 (Aug. 1, 2000) (approving proposal "to modify NASD Rule 9264(a) to track the language in the [Federal Rules of Civil Procedure] . . . ."). *See also Dep't of Enforcement v. Harvest Capital Investments LLC,* 2007 FINRA Discip. LEXIS 6 (OHO Sept. 27, 2007).

[15] *See, e.g., Celotex v. Catrett,* 477 U.S. 317 (1986); *Shuler v. Bd. of Trustees. Of Univ. of Ala.,* 2012 U.S. App. LEXIS 13525, at *7-8 (11th Cir. July 3, 2012); *Regions Bank v. Law Offices of Sherin Thawer, P.C.,* 2012 U.S. Dist. LEXIS 50120, at *7-9 (N.D. Tex. Apr. 10, 2012).

[16] Jt. Stip. ¶ 1; Complaint ¶ 10; Answer ¶ 10.  The Securities Exchange Act of 1934 ("Exchange Act") requires broker-dealers to become members of a self-regulatory organization ("SRO") (such as FINRA), to abide by the rules of the SRO, and to be subject to the SRO's disciplinary process.  *See* Sections 15(b), 15A(b), and 19(e) of the Exchange Act, 15 U.S.C. § 78o(b), § 78o(A)(b), and § 78s(b).

[17] Complaint ¶ 11; Answer ¶ 11.

[18] *See, e.g., In re American Express Financial Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011).

**App.129**

## V.    THE FINRA AND NASD RULES IN ISSUE

### A.  The Prohibition On "Limits:"  FINRA Rule 2268(d) And NASD Rule 3110(f)(4)

FINRA Rules 2268(d)(1) and (d)(3), and their predecessors, NASD Rules 3110(f)(4)(A) and (4)(C), are identical in relevant part.  FINRA Rules 2268(d)(1) and (d)(3) provide:

> No predispute arbitration agreement shall include any condition that:
>
> (1) limits or contradicts the rules of any self-regulatory organization;
>
> ....
>
> (3) limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement;

The prohibition on "limit[ing]" (and, in the case of subsection (d)(1), also on "contradict[ing]") SRO Rules ensures that investor disputes with broker-dealers are handled in a consistent fashion, according to rules that have been reviewed and approved by the Securities and Exchange Commission ("SEC") as contributing to investor protection and the public interest, and subject to efficient and effective oversight by SROs such as FINRA.

In 1989, the arbitration rules of NASD and other SROs were amended to prohibit "any language" in a pre-dispute arbitration agreement that "limits or contradicts the arbitration rules of any self-regulatory organization."[19]  The SEC explained in the approving release for the 1989 amendments that the Rules are designed to "strengthen investor confidence in the arbitration systems at the SROs, both by improving the procedures for administering the arbitrations and by

---

[19] *See* Order Approving Proposed Rule Changes by the New York Stock Exchange, Inc., National Association of Securities Dealers, Inc., and the American Stock Exchange, Inc. Relating to the Arbitration Process and the Use of Predispute Arbitration Clauses, Exchange Act Rel. No. 26805, 1989 SEC LEXIS 843 (May 10, 1989) (1989 Approving Release).  NASD members were informed in an August 1989 Notice To Members that the amendments included an express prohibition on the use of language that would "limit" or contradict" an SRO's arbitration rules. NTM 89-58, 1989 NASD LEXIS 107, at *2-3 (Aug. 1989).

creating clear obligations regarding the use by SRO members of predispute arbitration clauses."[20] The SEC repeated that SRO arbitration should provide for "equitable and efficient administration of justice."[21] With respect to the provision that ultimately became FINRA Rule 2268(d)(1), the SEC expressly stated that it "believe[d] that the new provision in the rule prohibiting firms from including in their agreements any condition which limits or contradicts the rule of any SRO ... benefits investors."[22]

### B. Class Actions: FINRA Arbitration Rule 12204

FINRA Arbitration Rule 12204(a) provides that "[c]lass action claims may not be arbitrated under the Code."[23] However, other portions of Rule 12204 contemplate that claims can be brought as class actions in court. Rule 12204(b) provides that "[a]ny claim that is based

---

[20] 1989 Approving Release, 1989 SEC LEXIS 843, at *63-64. As the NASD explained in a Notice To Members, the amendment prohibited "the use in any agreement of any language that limits or contradicts the arbitration rules of any self-regulatory organization, limits the ability of a party to file a claim in arbitration, or limits the ability of the arbitrators to make an award under the arbitration rules of a self-regulatory organization and applicable law." NTM 89-58, 1989 NASD LEXIS 107, at *1. The NASD and other SROs, along with the SEC, sought to address "issues regarding the fairness and efficiency of the arbitration process administered by the SROs." 1989 Approving Release, 1989 SEC LEXIS 843, at *1.

[21] 1989 Approving Release, 1989 SEC LEXIS 843, at *64.

[22] Id. at *61. The SEC also noted that the provision was "a clear statement of existing law," citing to NASD, NYSE, and AMEX arbitration rules. Id. at n.57.

[23] FINRA's general approach to claims brought on a representative basis on behalf of a group has been consistent. FINRA declines to arbitrate representative claims brought on behalf of groups. For example, Arbitration Rule 12205 for customer-industry disputes provides that "[s]hareholder derivative actions may not be arbitrated under the Code." Arbitration Rule 13205 for intra-industry disputes contains a parallel provision regarding shareholder derivative actions.

Similarly, for intra-industry disputes, FINRA has refused to arbitrate so-called "collective actions" that may be brought by employees against employers under the Fair Labor Standards Act, the Age Discrimination Act, and the Equal Pay Act of 1963, treating them as a form of class action. NTM 12-28, 2012 FINRA LEXIS 35 (June 2012). Some federal courts, however, compelled arbitration of collective actions, holding that collective actions are distinct from class actions and not covered by FINRA's Rules regarding class actions. In response, FINRA proposed amendments to its Arbitration Rules for intra-industry disputes that would prohibit arbitration of collective actions. The SEC approved those amendments and they became effective July 9, 2012. Id. at *2. Like the class action provisions for customer claims, the new provisions regarding collective actions provide that a claim that is part of a collective action being pursued in court may be arbitrated on an individual basis only if the individual provides evidence that he or she is not participating in the group action. Id. at *5.

**App.131**

upon the same facts and law, and involves the same defendants" as a court-certified or putative

class action either in court or in another arbitration forum will not be arbitrated under the

Customer Arbitration Code unless the claimant provides evidence that he or she will not

participate in any class action recovery. Rule 12204(c) then sets forth procedures for

determining any dispute over whether a claim is covered by class action.

Finally, Rule 12204(d) prohibits enforcement of an arbitration agreement as to any

"claim" that is the subject of a certified or putative "class action" until one of four events occurs

that takes the claim out of the class action. Arbitration of the claim can only be compelled after

class certification is denied, the class is decertified, a court excludes the class member from the

class, or the class member withdraws from the class. This is the provision that Enforcement cites

as the basis for its argument that FINRA Rules "permit" claims to be filed as judicial class

actions.[24]

The SROs first expressly addressed class actions in the early 1990s, based on rule

changes developed by the Securities Industry Conference on Arbitration for the Uniform Code of

Arbitration. In 1992, NASD introduced the provisions now found in FINRA Arbitration Rules

12204(a) and 12204(d), providing that class actions may not be arbitrated and that members may

not move to compel arbitration of any claim included in a judicial class action unless and until

the claim is removed from the class action.[25] In response to comments on the proposed

amendments, NASD declared, "[T]he bar on class actions in arbitration was designed to provide

investors with access to the courts, which already have developed the procedures and the

---

[24] Arbitration Rule 13204 for intra-industry disputes contains identical provisions concerning class actions.

[25] SEC approving release for amendments to NASD Code of Arbitration Procedure and Rules of Fair Practice, Exchange Act Rel. No. 31371, 1992 SEC LEXIS 2767, 57 Fed. Reg. 42659 (Oct. 28, 1992).

**App.132**

expertise for managing class actions."[26] The SEC said in its adopting release, "The Commission agrees with the NASD's position that, in all cases, class actions are better handled by the courts and that investors should have access to the courts to resolve class actions efficiently."[27] It reiterated, "The Commission believes that investor access to the courts should be preserved for class actions...."[28]

### C. Consolidated Claims: FINRA Arbitration Rule 12312

FINRA Arbitration Rule 12312 grants and circumscribes the powers of the Director of Arbitration and FINRA arbitrators to join multiple claims. These are not representative claims brought on behalf of a group, but, rather, similar individual claims brought by individual claimants. In contrast to FINRA's consistent practice of not arbitrating claims brought on a representative basis (such as class actions, derivative actions, and collective actions), FINRA expressly provides for the arbitration of individual claims on a consolidated basis. Rule 12312 provides, in full:

> (a) One or more parties may join multiple claims together in the same arbitration if the claims contain common questions of law or fact and:
>
> • The claims assert any right to relief jointly and severally; or
>
> • The claims arise out of the same transaction or occurrence, or series of transactions or occurrences.
>
> (b) After all responsive pleadings have been served, claims joined together under paragraph (a) of this rule may be separated into two or more arbitrations by the Director before a panel is appointed, or by the panel after the panel is appointed. A party whose claims

---

[26] *Id.* at *5-6.

[27] *Id.* at *8-9.

[28] *Id.* at *9.

16

**App.133**

were separated by the Director may make a motion to the panel in
the lowest numbered case to reconsider the Director's decision.[29]

NASD arbitrators were first expressly granted final decision-making authority with respect to consolidation in 1984.[30] NYSE expressly granted its arbitrators final authority over consolidation in 1990, codifying prior practice.[31] During the same period, other SROs adopted similar amendments that expressly authorized arbitrators to determine issues relating to permissive joinder and consolidation.[32]

---

[29] Two other Arbitration Rules empower the Director of Arbitration and arbitrators to deal with multiple parties and claims in customer-industry disputes. FINRA Arbitration Rule 12313 provides that multiple respondents may be named in the same arbitration if questions of law or fact are common to all the respondents and the claims assert a right to relief against the respondents jointly and severally or arise out of the same transaction or occurrence or series of events. Under Rule 12313, the Director and the panel have the same powers as to multiple respondents as they do under Rule 12312 as to multiple claimants. Prior to appointment of a panel, the Director may separate claims joined together under Rule 12313, but after a panel is appointed it may reconsider any decision by the Director to separate the claims. FINRA Arbitration Rule 12314 separately empowers the Director of Arbitration to "combine separate but related claims into one arbitration" prior to receiving panel rankings. It also provides that "[o]nce a panel has been appointed, the panel may reconsider the Director's decision upon motion of a party."

[30] In 1984, after SEC approval, FINRA's predecessor, NASD, promulgated amendments to its Uniform Code of Arbitration (which included the procedures for all arbitrations, whether between customers and industry members or solely among members of the industry). These amendments included language granting the Director of Arbitration the authority to make a preliminary determination whether multiple parties should proceed in the same or separate arbitrations but expressly empowering the arbitrators to make "[a]ll final determinations with respect to joining, consolidation and multiple parties." NTM 84-51, 1984 NASD LEXIS 330, at *9 (Sept. 28, 1984).

[31] In 1990, the SEC approved a proposed amendment of NYSE Rule 612 concerning the initiation of arbitration proceedings. The SEC declared that the amendment concerning consolidation "should avoid confusion" regarding when consolidation or joinder was appropriate because the amendment set forth the standard for making that judgment. Exchange Act Rel. No. 28421, 1990 SEC LEXIS 3095, at *2-4 (Sept. 10, 1990). See also NYSE Info. Memo 90-46, 1990 NYSE Info. Memo LEXIS 24, at *2 (Oct. 2, 1990) ("The amendment to Rule 612 codifies the Exchange's practice of permitting parties to join in an arbitration if there exist common questions of law or fact.").

[32] See, e.g., the SEC's approving release for amendments to the arbitration code of the American Stock Exchange, Inc., Exchange Act Rel. No. 29087, 1991 SEC LEXIS 710, at *2-3 (Apr. 15, 1991).

App.134

## VI.    THE FEDERAL ARBITRATION ACT

The FAA was enacted in 1925 to prevent parties to arbitration agreements from evading their commitment to arbitrate disputes and ensure the enforcement of valid arbitration agreements.[33]  Three provisions of the FAA are particularly critical to the enforcement of arbitration agreements.  Section 2 provides that any "written provision" in a "contract evidencing a transaction in commerce" whereby the parties agree "to settle by arbitration a controversy thereafter arising out of such contract or transaction" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[34]  Section 3 provides that where an issue "referable to arbitration" is nevertheless submitted to a federal court, the court shall stay trial of the action upon application of a party until arbitration is completed in accord with the agreement to arbitrate.[35]  Section 4 provides that where a party to an arbitration agreement refuses to go to arbitration to resolve a dispute the other party to the agreement may petition a federal district court for an order to compel arbitration.  If the court is satisfied that the dispute is subject to an agreement to arbitrate, the court is authorized to issue an order directing the parties to proceed with arbitration.[36]

---

[33] An Act:  To make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations, commonly known as the Federal Arbitration Act, Pub. L. 68-401, 43 Stat. 883 (1925) (codified at 9 U.S.C. § 1 *et seq.*).

[34] 9 U.S.C. § 2.

[35] 9 U.S.C. § 3.

[36] 9 U.S.C. § 4.

18

**App.135**

## VII.   FACTS

### A. Schwab's New Pre-Dispute Arbitration Language Bars Judicial Class Actions And Deprives FINRA Arbitrators Of Any Power To Consolidate Individual Claims

The material facts are not in dispute. During the first week of October 2011, Schwab sent over 6.8 million existing account holders their September 2011 monthly account statements, accompanied by amendments to the customers' account agreements with Schwab. The amendments included the Waiver. Under the terms of the account agreements, the amendments were effective upon notification to Schwab's customers.[37] Schwab also included the Waiver in account agreements for new accounts opened with it from October 1, 2011, onward. Tens of thousands of customers agreed to the Waiver in opening accounts with Schwab.[38] Schwab used the same version of the Waiver in all these account agreements.[39]

The Waiver provides as follows:

> Neither you nor Schwab shall be entitled to arbitrate any claims as a class action or representative action, and the arbitrator(s) shall have no authority to consolidate more than one parties' [sic] claims or to proceed on a representative or class action basis.
>
> You and Schwab agree that any actions between us and/or Related Third Parties shall be brought solely in our individual capacities. You and Schwab hereby waive any right to bring a class action, or any type of representative action against each other or any Related Third Parties in court. You and Schwab waive any right to participate as a class member, or in any other capacity, in any class action or representative action brought by any other person, entity or agency against Schwab or you.[40]

---

[37] Jt. Stip. ¶¶ 2-3.

[38] Jt. Stip. ¶ 5.

[39] Jt. Stip. ¶¶ 4, 6.

[40] Complaint ¶ 13; Answer ¶ 13; Jt. Stip. ¶ 4; Enf. Statement of Facts, CX-2, at. 2-3.

**App.136**

## B. Schwab's Agreements Incorporate FINRA Arbitration Rules And Also Specify That The Federal Arbitration Act Applies

Schwab produced 13 pre- and post-amendment customer agreements for various types of accounts to provide a context for the introduction of the Waiver.[41] Both before and after the Waiver, Schwab's customer agreements provide the same explanation of the effect of signing the Arbitration Agreement. All claims will be resolved by arbitration:

> All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.[42]

---

[41] Documents produced by Schwab pursuant to Office of Hearing Officer's May 14, 2012 Order for Production ("Schwab Binder of Agreements"). The October 2011 amendments with the new language of the Waiver were sent to customers as part of a 40-page document entitled "Important account information you need to know." Schwab Binder of Agreements, Item 1. Amendments appear on pages 27 through 40 and include other matters in addition to the arbitration amendments. *Id.* at 27-40. The Waiver in issue is one of five amendments to the arbitration provisions of Schwab's customer agreements. *Id.* at 29-30. All five arbitration amendments take up less than two pages of the 40-page document sent to customers. *Id.* An introductory letter to the investor explains that the amendments will become effective immediately and "replace and supersede" previous portions of the customer agreement to which the amendments applied. *Id.* at 28. That letter specifies that in the event of any inconsistency or conflict between the new and old agreements, the terms of the new agreement would apply. *Id.* The Waiver appears in the post-amendment January 2012 customer agreement and other post-amendment customer agreements at the end of the Arbitration Agreement. Schwab Binder of Agreements, Item 3, at 22-23. *See also* Schwab Binder of Agreements, Item 5, at 54; Item 7, at 24; Item 9, at 22; and Item 13, at 20.

[42] *E.g.*, Schwab Binder of Agreements, Item 2, at 19; Item 3, at 19. Other post-amendment customer account agreements similarly specify that "[a]ny controversy or claim" will be "settled by arbitration," and that "[s]uch arbitration will be conducted by, and according to the securities arbitration rules then in effect of [FINRA]" (or in appropriate circumstances one of the alternative arbitration forums). *See, e.g.*, Schwab Binder of Agreements, Item 11, at 18-21.

**App.137**

Schwab's Arbitration Agreements make clear that FINRA's Arbitration Rules will apply to any claim submitted to FINRA arbitration:

> The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.[43]

Schwab's customer agreements also expressly state that the FAA is the governing law with regard to Schwab's arbitration agreements.[44]

### C. Schwab Introduced The Waiver As A Result Of The U.S. Supreme Court's Decision In *Concepcion*, Upholding A Class Action Waiver

Schwab's introduction of the Waiver in fall of 2011 was no accident. It occurred shortly after the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*,[45] in which the Court overturned a decision of the Ninth Circuit Court of Appeals that had held an arbitration agreement unconscionable and unenforceable under what was known as the *Discover Bank* doctrine, after a 2005 decision by the California Supreme Court.

In the *Discover Bank* case, the California Supreme Court had held that a class action waiver in a consumer contract of "adhesion" was unenforceable where the small amounts of

---

[43] *E.g.*, Schwab Binder of Agreements, Item 2, at 19. The Arbitration Agreements further reiterate that disputes will be resolved by arbitration and that the rules of the arbitration forum will apply, by specifying that any "controversy or claim arising out of or relating to" the customer agreement or any other agreement or relationship with Schwab or related third parties, including service providers, "will be settled by arbitration," and that the "arbitration will be conducted by, and according to the securities arbitration rules and regulations then in effect" of FINRA, or, if Schwab is a member, the arbitration rules of any national securities exchange that provides an arbitration forum. *Id.* at 19-20. If arbitration before FINRA or an eligible national securities exchange is for any reason "unavailable or impossible," then arbitration will take place under the rules of the American Arbitration Association ("AAA"). Failing AAA arbitration, the Arbitration Agreement provides for a court to appoint arbitrators. *Id.* at 20. *See also* Schwab Binder of Agreements, Item 3, at 20-23.

[44] *E.g.*, Schwab Binder of Agreements, Item 3, at 18 ("Governing Law").

[45] *Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 2011 U.S. LEXIS 3367 (2011).

App.138

money involved in individual claims meant, in practical terms, that the party with superior

bargaining power could insulate itself from customer claims.[46]  Under the *Discover Bank*

doctrine, class actions were required to be available for cases where the small amount of an

individual claim created too little incentive for the individual claimant to assert his or her rights

in court.  California courts frequently applied the *Discover Bank* doctrine to find consumer

arbitration agreements containing class action waivers unconscionable and unenforceable.[47]

In essence, the California courts created a public policy exception to the mandate in the

FAA that disputes covered by an agreement to arbitrate must be resolved by arbitration in accord

with the agreement.  The California courts declined to enforce arbitration agreements that

eliminated class actions because they viewed it better public policy to preserve class actions for

some types of claims.

In *Concepcion*, the Supreme Court viewed the *Discover Bank* doctrine as insisting on the

availability of class-wide procedures despite the existence of an arbitration agreement providing

otherwise.[48]  The Court rejected that insistence and instead enforced the agreement to arbitrate.

The Court held in *Concepcion* that Section 2 of the FAA preempts the *Discover Bank* doctrine

and requires the enforcement of arbitration agreements according to their terms – even where

that means that class-wide procedures will be unavailable.  The Court described Section 2 of the

FAA as "reflecting both a 'liberal federal policy favoring arbitration' … and the 'fundamental

principle that arbitration is a matter of contract.'"[49]

---

[46] *Discover Bank v. Superior Court*, 30 Cal. Rptr. 3d 76 (2005).

[47] *Concepcion*, 2011 U.S. LEXIS 3367, at **12-13.

[48] *Id.* at ***23-24.

[49] *Id.* (citations omitted).

**App.139**

Schwab, with its headquarters based in California, typically includes a California choice-of-law provision in its customer agreements.[50] Accordingly, California arbitration law was, and is, of significant concern to Schwab.[51] The Supreme Court's decision in *Concepcion* rejecting the California courts' public policy exception to the FAA caused Schwab to re-examine its pre-dispute arbitration agreement for customer accounts, and ultimately led Schwab to amend its customer agreements in fall 2011 to include the Waiver.[52]

With this background, the Hearing Panel now addresses whether the Waiver violates FINRA Rules, and, if so, whether the FAA bars enforcement of those Rules.

## VIII.  SCHWAB'S WAIVER VIOLATES FINRA RULES

### A. Schwab's Waiver Bars Judicial Class Actions That Arbitration Rule 12204 Is Designed To Preserve, In Violation Of FINRA Rule 2268(d)(1) and (d)(3) and NASD Rule 3110(f)(4)(A) and (4)(C) -- Causes One And Two

The first two Causes of Action raise essentially the same issue: whether, by eliminating any ability to bring or participate in judicial class actions, Schwab's Waiver deprives a customer of the ability to do something that FINRA's Rules permit the customer to do.[53] The Hearing Panel concludes that the Waiver does deprive the customer of the ability to bring or participate in

---

[50] *See* Schwab Motion at 4 and n.6. *See also* the "Governing Law" provisions of the Schwab customer agreements, Schwab Binder of Agreements, Item 2, at 18, 67; Item 3, at 18; Item 4, at 50; Item 5, at 50-51; Item 6, at 20; Item 7, at 20; Item 8, at 18; Item 9, at 18; Item 10, at 16; Item 11, at 17; Item 12, at 16; and Item 13, at 16.

[51] Oral Arg. Tr. at 7-8. Arguably, because Schwab unilaterally imposes arbitration agreements and amendments on its customers, as described above in the context for the Waiver in issue, Schwab's agreements might be considered consumer contracts of "adhesion" that would be covered by the *Discover Bank* doctrine.

[52] Schwab Opp. To Enf. at 20-21 (arguing that Schwab created the Waiver based on a good faith interpretation of the Supreme Court's decision in *Concepcion*); Oral Arg. Tr. at 7-9; Enf. Statement of Facts, CX-3, at 1-4 (background and argument by Schwab's outside counsel regarding Schwab Waiver). *See also Charles Schwab & Co. v. Financial Industry Regulatory Authority Inc.*, 2012 U.S. Dist. LEXIS 72788, at *9-10 (N.D. Cal. May 11, 2012).

[53] Rule 2268(d)(1) prohibits a pre-dispute arbitration agreement that "limits" or "contradicts" any SRO (including any FINRA) Rule. Rule 2268(d)(3) prohibits a pre-dispute arbitration agreement that "limits" a customer's ability to file a "claim" in court that FINRA Rules "permit" to be brought in court. Both Causes allege a "limit" or "contradiction" of FINRA Rule 12204(d), which provides that a customer cannot be compelled to arbitrate a claim while that claim is part of a judicial class action.

23

**App.140**

a judicial class action, as permitted by FINRA Rule 12204, in a violation of both subsection (d)(1) and subsection (d)(3) of FINRA Rule 2268.

A common sense reading of FINRA Rule 12204 in conjunction with FINRA Rules 2268(d)(1) and (d)(3) supports the conclusion that Schwab's Waiver does "limit" and "contradict" FINRA Rule 12204 in violation of Rules 2268(d)(1) and (d)(3).[54] FINRA Rule 12204 contemplates that a customer claim may be adjudicated in a judicial class action or in an arbitration proceeding. It is clearly premised on the availability of judicial class actions, and allows customer claims to be pursued in that manner in a judicial forum, rather than by arbitration.

The history of Rule 12204 also indicates that it was intended and designed to preserve judicial class actions as an option. In 1992, when NASD proposed the provisions now found in Rule 12204 concerning class action claims, NASD said that those provisions were developed in response to suggestions by former SEC Chairman David S. Ruder that NASD "consider adopting procedures that would give investors access to the courts in appropriate cases, including class actions."[55] Later in 1992, when the SEC approved what is now Rule 12204, the SEC explained that it believed that investors should have access to courts for resolution of class actions.[56]

---

[54] The Parties have argued Cause One and Cause Two separately because the subsections of 2268(d) contain different language. In connection with Cause One, which involves FINRA Rule 2268(d)(3), Enforcement argues that "class action claims" are a subcategory of "claims" that the Rule preserves for resolution in court. Schwab argues that a "class action" is a type of procedure, not a "claim," and that nothing in section (d)(3) bars a waiver of judicial class action procedures. Each Party has some textual support for its views, but neither position is wholly free of ambiguity.

The Hearing Panel rests its decision instead on the operation, design, and history of Rules 2268(d)(1) and (d)(3) and Arbitration Rule 12204. The Rules operate together and were clearly intended – and have been understood – to preserve customers' option to participate in a judicial class action despite any pre-dispute arbitration agreement.

[55] Notice of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to Improvements in the NASD Code of Arbitration Procedure, Exchange Act Rel. No. 30882, 1992 LEXIS 1566, at *5-6 (July 1, 1992).

[56] SEC approving release for amendments to NASD Code of Arbitration Procedure and Rules of Fair Practice, Exchange Act Rel. No. 31371, 1992 SEC LEXIS 2767, 57 Fed. Reg. 42659 (Oct. 28, 1992).

**App.141**

The force of Rule 12204 is preserved by FINRA Rules 2268(d)(1) and (d)(3). Both are designed to prevent a FINRA member firm from putting into its customer arbitration agreements terms different from what FINRA's Rules provide. Subsection (d)(1) broadly encompasses any limitation or contradiction of any Rule. Subsection (d)(3) more narrowly specifies that a member firm may not limit the ability of a customer to file a claim in court that FINRA permits to be filed in court. These provisions operate in conjunction with Rule 12204 to preserve the option for customer claims to be resolved in court in a class action.

If construed otherwise, Rule 2268(d)(3) would have no purpose and would be meaningless. If Rule 2268(d)(3) and its prohibition of any agreement not to bring a "claim" in court that the arbitration forum "permits" to be filed in court, is not viewed to refer to "class action claims" protected by Rule 12204, it does not refer to anything. This is because there is nothing in the Customer Arbitration Code that preserves or "permits" a right to go to court to assert any other type of "claim." Rather, Rule 12200 mandates arbitration of any dispute between a customer and a FINRA member that has to do with the member's business, without exception.

For two decades, the industry has understood these Rules to operate together to preserve customers' ability to bring or participate in judicial class actions. NASD, FINRA's predecessor, made clear in a December 1992 Notice To Members concerning Rule 2268 that no customer could be compelled to arbitrate a claim while that claim was subject to a class action. NASD declared, "Accordingly, neither members nor their associated persons may use an existing arbitration agreement to compel a customer to arbitrate a claim included in a class action."[57] This language indicates that NASD believed that customers retained the right to pursue claims in

---

[57] NTM 92-65, 1992 NASD LEXIS 23 (Dec. 1992).

**App.142**

judicial class action proceedings and that the Rules protected that right by prohibiting members from compelling customers to arbitrate unless and until they were no longer involved in a class action. By this Notice To Members, NASD made plain its interpretation of these Rules, and promoted a common understanding among its members.

The absence of class action waivers in broker-dealer pre-dispute arbitration agreements with customers until now, despite decades of class-action securities litigation in the courts, further demonstrates that the industry has understood the Rules to prohibit class action waivers in customer agreements. Schwab did not venture to impose such a waiver on customers until the Supreme Court's decision in *Concepcion* led it to believe that it had a basis for challenging FINRA's ability to impose the prohibition embodied in FINRA's Rules.[58]

Because Schwab's Waiver would bar customers from bringing or participating in judicial class actions, the Hearing Panel finds that the Waiver violates FINRA Rule 2268(d)(3) and NASD Rule 3110(f)(4)(C), as alleged in Cause One, and violates FINRA Rule 2268(d)(1) and NASD Rule 3110(f)(4)(A), as alleged in Cause Two. However, the conclusion that Schwab's Waiver violated these Rules does not end the analysis. The question remains whether the Rules are enforceable under the FAA, which is discussed below.

---

[58] Interpretation of the intra-industry version of these Rules has not been as consistent. *Compare, e.g., Good v. Ameriprise*, 2007 U.S. Dist. LEXIS 9298 (D. Minn. 2007) (held in context of intra-industry dispute that predecessor to Rule 12204 preserved the ability to pursue a claim by judicial class action) *with Cohen v. UBS Fin. Services, Inc.*, 2012 U.S. Dist. LEXIS 174700 (S.D.N.Y. Dec. 4, 2012) (held in context of intra-industry dispute that FINRA Rule 13204, the parallel Rule to Rule 12204 in customer disputes, does not prohibit a waiver of judicial class actions as an alternative to arbitration). In *Cohen*, the District Court found that enforcement of an arbitration agreement waiving any right to proceed by class or collective action was not inconsistent with FINRA's Rules for intra-industry disputes. Regardless of whether that conclusion is correct, it does not apply to customer-industry disputes, where the industry has long understood that judicial class actions were not merely permitted but were intended to be preserved as a customer option.

**App.143**

**B. Schwab's Waiver Deprives FINRA Arbitrators Of Authority That FINRA Arbitration Rule 12312 Grants Them, In Violation Of FINRA Rule 2268(d)(1) – Cause Three**

Cause Three involves the provision of Schwab's Waiver that declares "the arbitrator(s) shall have no authority to consolidate more than one parties' [sic] claims." This provision expressly requires a customer to agree to limit the authority of the arbitrators in connection with any claim covered by the pre-dispute arbitration agreement. The provision has nothing to do with class actions. Nor does it disfavor arbitration as a means of dispute resolution. It only comes into play once a claim has been submitted to arbitration, and it has to do with the powers of the arbitrators and the procedures of the arbitration forum.

Enforcement alleges that this provision "limits or contradicts" Rule 12312 in violation of FINRA Rule 2268(d)(1). As more fully set forth above, Rule 12312 permits one or more parties to join multiple claims together in the same arbitration and, if the Director of Arbitration separates the claims prior to the appointment of a panel of arbitrators, the arbitrators are empowered to re-join the claims and proceed with multiple claims in arbitration. NASD arbitrators first were granted express authority to consolidate or join claims in 1984, and NYSE arbitrators gained such express authority in 1990. Although the precise language of the Rules has changed over time, it has been plain for decades that arbitrators have the power to make all final determinations with respect to joining and consolidating the claims of multiple parties.

Schwab argues that Enforcement has misread the Waiver, and that the Waiver does not "limit or contradict" the authority of the arbitrators under Rule 12312. Rather, Schwab contends, customers continue to be able to submit multiple claims for arbitration in one proceeding as

**App.144**

provided in Rule 12312, and the Waiver only limits the ability of the arbitrators to create a class action in arbitration.[59]

As discussed below, the Hearing Panel finds that this provision of the Waiver "limits" and "contradicts" FINRA Rule 12312 for two separate, independent reasons. Schwab's arguments to the contrary are unpersuasive. The Hearing Panel therefore finds that Schwab violated FINRA Rule 2268(d)(1).

### (1) *Schwab's Attempt To Limit The Powers Of The Arbitrators "Contradicts" The Fundamental Operation Of Arbitration Rule 12312 And FINRA's Authority To Specify And Modify The Powers Of Its Arbitrators*

By its terms, Schwab's Waiver imposes a limitation on the power of the arbitrators. It specifies that the arbitrators "shall have no authority." The Waiver purports to determine by private agreement the scope of the arbitrators' authority, regardless of what FINRA's arbitration Rules might provide, now or in the future. Indeed, Schwab does not contest that the Waiver circumscribes what arbitrators may do. Instead, Schwab argues that the limitation does not conflict with other provisions of Rule 12312 governing what customers and the Director of Arbitration can do, an argument dealt with separately below.

Regardless of the specific limitation imposed by the Waiver, the attempt to dictate the powers of the arbitrators is inconsistent with the fundamental operation of FINRA Arbitration Rule 12132 and, indeed, the most basic FINRA requirement that members must comply with FINRA's Rules as amended from time to time.[60] FINRA Arbitration Rule 12132 governs procedures for joining the claims of multiple parties, and grants and circumscribes the powers of the arbitrators relating to the joinder of claims. As made plain in FINRA Arbitration Rule

---

[59] Schwab Motion at 29-30; Oral Arg. Tr. at 18-19, 31-34.

[60] *See* FINRA Conduct Rule 0140 and FINRA By-Laws, Art. IV, Sec. 1.

**App.145**

12200, members must arbitrate "under the Code." This means that every member, including Schwab, is bound to arbitrate under the same Rules, as modified by FINRA from time to time pursuant to SEC oversight of the rulemaking process. Schwab cannot carve out for itself a different set of procedures from those specified by FINRA.

Public policy concerns for the protection of investors and efficiency concerns of the forum are both served by this conclusion. Otherwise each member firm could impose its own arbitration rules on customers, undercutting FINRA's ability to ensure that customer-member disputes are resolved in a fair and consistent manner and destroying FINRA's ability to manage its own forum efficiently. The SEC oversight of SRO arbitration forums that formed the basis of the Supreme Court's decisions in *Shearson* and *Rodriguez* (as discussed below) would also be severely undermined.

### (2) *Schwab's Prohibition Against "Consolidation" Also Specifically "Limits" And "Contradicts" Arbitration Rule 12312, Which Authorizes Arbitrators To Make The Final Decision On Joinder Of Multiple Claims In Arbitration*

By its express language, Arbitration Rule 12312 authorizes arbitrators to arbitrate multiple consolidated claims and makes them the final decision-makers as to whether claims may be arbitrated jointly. Schwab's Waiver expressly deprives the arbitrators of any ability to "consolidate" multiple claims in arbitration.[61] On its face, the Waiver "limits" and "contradicts" Arbitration Rule 12312 in violation of Rule 2268(d)(1).

That FINRA arbitrators are empowered to determine whether to arbitrate on a consolidated basis is confirmed by examination of the history of consolidation in FINRA arbitration. The predecessor to Rule 12312, Rule 10314, also provided that once an arbitration

---

[61] The term "consolidate" refers to the joining together of separate claims. *See Davey v. First Command Financial Services, Inc.*, 2010 U.S. Dist. LEXIS 10483, at *8 (N.D. Tex. 2010) ("The very first dictionary definition of the word consolidate is 'to join together (as two or more items into one unit or whole)'").

29

**App.146**

panel was appointed, it had authority to make final determinations with respect to joinder, consolidation and multiple parties. When NASD proposed the 2007 amendments restructuring and rewriting its Arbitration Rules, it commented in support that the proposed Rules relating to joinder were not intended to differ in substance from the predecessor Rule.[62] In approving the 2007 amendments, the SEC reiterated that an arbitration panel has authority to reconsider whatever the Director has done with respect to consolidation of claims.[63] This is consistent with the way earlier versions of the Arbitration Rules were interpreted. As a court said, in holding that consolidation issues are procedural issues for the arbitrators to decide, "[T]he *final* power to make any decisions as to joinder, consolidation and multiple parties is vested by [NYSE] Rule 612(d)(4) in the arbitration panel that is actually assigned to decide the parties' disputes."[64]

Notably, consolidation and joinder serve the interests of the forum as well as the parties, by allowing the forum to treat similar claims and issues efficiently and consistently in a single proceeding. Rule 12312, like Rule 20 of the Federal Rules of Civil Procedure, provides for permissive joinder,[65] which is generally encouraged where there is a substantial relationship between the transactions or occurrences at issue in the interest of judicial economy[66] under

---

[62] Order Approving Proposed Rule Change and Amendments, Exchange Act Rel. No. 55158, 2007 SEC LEXIS 141 (Jan. 24, 2007).

[63] *Id.*

[64] *Merrill Lynch, Pierce, Fenner & Smith v. Burchman*, 916 F. Supp. 845, 857 (N.D. Ill. 1996) (interpreting a predecessor of Rule 12312).

[65] Rule 12314, which authorizes the Director of Arbitration to combine claims even if the parties have not submitted them jointly, similarly has a corresponding provision in the Federal Rules of Civil Procedure, Rule 42(a). Rule 42(a) gives a court broad discretion to join claims together when common issues of law or fact, regardless whether the parties seek or object to consolidation. *See Connecticut General Life Ins. Co. v. Sun Life Assur. Co. of Canada*, 210 F.3d 771 (7th Cir. 2000); *Disher v. Citigroup Global Markets, Inc.*, 486 F. Supp. 2d 790 (S.D. Ill. 2007). Thus, consolidation, unlike class actions, and consistent with the FAA, is focused on what makes sense from the perspective of the forum and what will serve the goal of streamlining the resolution disputes.

[66] *See, e.g., Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("[A]ll reasonably related claims for relief by or against different parties [should] be tried in a single proceeding.").

30

**App.147**

different standards than for certifying a class action under Rule 23.[67] By depriving FINRA arbitrators of the flexibility to determine for themselves whether consolidation would be appropriate in a particular case, the Waiver conflicts with FINRA's own policy determination regarding the conduct of the arbitration proceeding, *i.e.*, that consolidation should be available in appropriate cases and that the arbitrators are in the best position to make the ultimate decision regarding consolidation.

### (3) *Schwab's Arguments Against Finding That The Waiver Specifically "Limits" And "Contradicts" Arbitration Rule 12312, Are Unpersuasive*

Schwab's arguments against finding a specific conflict with Arbitration Rule 12312 are unpersuasive. Schwab mainly argues that there is no "limitation" or "contradiction" within the meaning of Rule 2268(d)(1) because, under Schwab's reading of the Waiver, customers retain the ability to submit their claims jointly and the Director of Arbitration retains the ability to separate or join claims. The argument has no merit. Regardless of what the claimants and the Director of Arbitration may do, the Waiver nevertheless is written to deprive arbitrators of some power – and that is a "limitation" or "contradiction" of the Rule. Moreover, depending on one's interpretation of the Waiver, the limitation on the arbitrators' powers may affect the availability of consolidation. If the Waiver deprives arbitrators of any power at all to proceed on a consolidated basis, then permitting claimants to submit claims jointly would be a futile act. If the Waiver deprives arbitrators only of the power to determine whether claims are appropriate for consolidation despite a different determination by the Director, then the Waiver takes away from the arbitrators the flexibility to proceed in the manner they think best. Schwab's argument also fails to recognize the likely effect of the Waiver on customers, who are less likely to attempt

---

[67] *See, e.g., Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011) (permissive joinder, unlike a class action, does not require that common question predominate).

31

**App.148**

to join or consolidate claims when the agreement provides that arbitrators have no power to consolidate claims. Furthermore, even if customers request consolidation, if their interpretation of the effect of the Waiver is different than Schwab's, then further costly and inefficient litigation may be required to resolve the precise meaning and effect of the consolidation language in the Waiver.

Schwab further argues that the term "consolidate" should be interpreted in accord with what Schwab represents was its intent in drafting the Waiver. It says that this language was intended to prevent arbitrators from forming class actions in arbitration by the "roundabout method of" joining multiple claims.[68] However, the express language of the provision, which does not mention class actions, does not support the construction Schwab gives the provision. Importantly, Schwab's purported prohibition on the arbitrators creating class actions is unnecessary. FINRA already has a Rule prohibiting class actions in arbitration, Rule 12204(a). If arbitrators were to attempt to create a class action in arbitration, Schwab would always have the right to object that the arbitrators have no such authority under the Arbitration Rules.

Schwab also argues that the consolidation language is not a violation because Schwab "does not intend to apply this provision in any manner to limit the power of arbitrators or the Director [of Arbitration] with respect to combining claims that have been validly submitted to FINRA arbitration by customers."[69] Whether the Waiver conflicts with and violates FINRA's Rules cannot turn on how Schwab might enforce the provision in the future, and certainly it cannot turn on Schwab's determination as to whether claims have been "validly submitted" as consolidated claims. Schwab's Waiver must be interpreted as written. The courts consistently

---

[68] *Schwab Motion at 29.*

[69] Schwab Motion at 30.

hold that the words of a contract, including an arbitration agreement, "must be given their usual and ordinary meaning."[70]

Schwab's Waiver cannot be harmonized with the unambiguous language and operation of Rule 12312. The Waiver violates FINRA Rule 2268(d)(1).[71] Again, however, the question arises whether the FAA applies, and, if so, whether the statute forecloses FINRA from enforcing its Rules regarding consolidation.

## IX.  THE FEDERAL ARBITRATION ACT APPLIES HERE AND FORECLOSES FINRA FROM ENFORCING RULES THAT WOULD ALLOW CUSTOMERS TO AVOID GOING TO ARBITRATION

### A. The FAA Applies

The FAA applies to Schwab's agreement because Section 2 of the FAA expressly states that the Act applies to every written agreement to arbitrate contained in a contract "evidencing a transaction involving commerce."[72] Schwab's Arbitration Agreement is an agreement involving transactions in commerce.

---

[70] *See Davey*, 2010 U.S. Dist. LEXIS 10483, at *8 *(quoting Robin v. Sun Oil Co.,* F.2d 554, 557 at 7 (5th Cir. 1997)).

[71] As written, the attempt to limit the powers of the arbitrators may also conflict with FINRA Rule 2268(a)(7), which provides that the rules of the arbitration forum are incorporated into a member's pre-dispute arbitration agreement, along with any *amendments*. The limitation on the power of arbitrators to join or consolidate claims might be interpreted as an agreement to fix permanently the powers of the arbitrators, regardless of later amendments. Language agreeing to limit the powers of the arbitrators is inconsistent with the fundamental principle that FINRA develops Rules, including the Arbitration Rules regarding the powers of FINRA arbitrators, through the rulemaking process.

This conflict with FINRA Rule 2268 (a)(7) arises not only in connection with the consolidation language but also with respect to Schwab's attempt to limit the authority of FINRA arbitrators "to proceed on a representative or class action basis." While this language does not conflict with FINRA's current Rules regarding class actions, it is an impermissible attempt to fix permanently, by agreement, the powers of FINRA arbitrators, regardless of any future modifications of FINRA's Rules.

[72] 9 U.S.C. § 2; *Concepcion*, 2011 U.S. LEXIS 3367, at ***10.

App.150

Even aside from the statute, Schwab's customer agreements themselves expressly state

that the FAA governs Schwab's Arbitration Agreements.[73] This language evidences the intent of

the Parties to apply the FAA to Schwab's Arbitration Agreements. That such language has long

been included in Schwab's customer agreements without objection by FINRA, also suggests,

given FINRA's close regulation of what can and cannot be included in a member firm's

customer agreements, that FINRA has understood the FAA to apply to such agreements. Finally,

courts have recognized that FINRA's Arbitration Rules themselves constitute an agreement to

arbitrate that is covered by the FAA, even separate from a customer-member agreement.[74]

Accordingly, the incorporation of FINRA's Arbitration Rules into Schwab's Arbitration

Agreements only confirms that the FAA is applicable.

### B. The FAA Requires A Party To An Arbitration Agreement To Go To Arbitration, Despite Any Countervailing Policy Concerns – Unless Congress Itself Has Created An Exception To The FAA

The Supreme Court has repeatedly held that the FAA requires a party to an arbitration

agreement to go to arbitration to resolve any claim covered by the agreement, unless Congress –

and Congress alone – has created an exception to the FAA. As the Court explained in

*Shearson*,[75] the FAA "mandates enforcement of agreements to arbitrate statutory claims" unless

"overridden by a contrary *congressional* command."[76] The Court further declared that "[t]he

---

[73] See note 44 above.

[74] *See, e.g., Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4ᵗʰ Cir. 2004) (NASD Code constitutes an agreement under the Federal Arbitration Act that binds a member to submit an eligible dispute to arbitration, regardless of whether there is a signed customer agreement to arbitrate). *See also Morgan Keegan & Co. v. Silverman*, 2013 U.S. App. LEXIS 2412, *3-4 (4ᵗʰ Cir. Feb. 4, 2013) ("[I]n the absence of a separate arbitration agreement, a party can compel a FINRA member to participate in FINRA arbitration if [the party is a customer of the FINRA member or an associated person of the FINRA member and the dispute involves their business activities].").

[75] *Shearson*, 482 U.S. 220, 226.

[76] *Id.* (emphasis supplied).

**App.151**

burden is on the party opposing arbitration ... to show that *Congress* intended to preclude a waiver of judicial remedies for the statutory rights at issue .... If *Congress* did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' ... or from an inherent conflict between arbitration and the statute's underlying purposes."[77]

In *Concepcion*, where the Court held that the FAA preempted the California state law doctrine known as the *Discover Bank* rule, the Court made plain that no state policy against arbitration can supersede Congress's statute favoring arbitration. The Court said, "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:

---

[77] *Id.* at 227 (emphasis supplied). The Court reiterated that only Congress can create an exception to the FAA, concluding that parties arguing that they should be allowed to go to court despite their agreement to arbitrate have the burden of "demonstrat[ing] that *Congress* intended to make an exception to the Arbitration Act for claims arising under RICO and the Exchange Act, an intention discernible from the text, history, or purposes of the statute." *Id.* (emphasis supplied).

35

**App.152**

The conflicting rule is displaced by the FAA."[78]  It further reiterated, "[O]ur cases place it

beyond dispute that the FAA was designed to promote arbitration.  They have repeatedly

described the Act as 'embod[ying] [a] national policy favoring arbitration.'"[79]

In the short time since the Supreme Court's decision in *Concepcion*, the Court has four

more times expressly reiterated that the FAA establishes a "federal policy in favor of arbitral

dispute resolution."[80]  *These decisions instruct that claims subject to an arbitration agreement*

---

[78] *Concepcion* at *°° 13-14.

[79] *Id.* at ***21.  The Ninth Circuit has read *Concepcion* to mean that "unrelated policy concerns, however worthwhile, cannot undermine the FAA." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. Mar. 16, 2012). According to that Court of Appeals, federal preemption *requires* that state law bend to conflicting federal law – no matter the purpose of the state law.  Indeed, the Ninth Circuit could not have been more direct when it said in another case, "Although [a rule requiring judicial resolution of a claim rather than arbitration] may be based upon the sound public policy judgment of the California legislature, we are not free to ignore *Concepcion's* holding that state public policy cannot trump the FAA when that policy prohibits the arbitration of a 'particular type of claim.'" *Kilgore v. Keybank, N.A.*, 673 F.3d 947, 963 (9th Cir. Mar. 7, 2012).

*See also Miguel v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 16865, at *6 (C.D. Cal. Feb. 5, 2013) (compelling arbitration of California labor law claims, and stating: "[T]he FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). In *Miguel*, the district court expressly declared "[T]he Ninth Circuit [has] interpreted the Supreme Court's holding in *Concepcion* to mean that banning class action waivers would be inconsistent with the FAA." *Id.* at *19.

Where confronted with the contention that a class action waiver is unenforceable as contrary to public policy, "the overwhelming majority of courts have enforced class action waivers." *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 959 (E.D. Ohio 2009). *See also Luchini v. Carmax, Inc.*, 2012 U.S. Dist. LEXIS 102198, at *10-11 (E.D. Cal. July 23, 2012) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.").  "[A]rguments asserting the importance of maintaining the availability of class actions" are policy concerns that "cannot undermine the FAA." *Brokers' Services Marketing Group v. Cellco Partnership d/b/a Verizon Wireless*, 2012 U.S. Dist. LEXIS 42721, at *12-13 (D.N.J. Mar. 28, 2012) (Not for Publication).

[80] *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. __, 133 S. Ct. 500, 503 (Nov. 26, 2012) (*per curiam*) (The FAA "declare[s] a national policy favoring arbitration") (*quoting Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)); *Marmet Health Care Center v. Brown*, 565 U.S. __, __, 132 S. Ct. 1201, 1203 (Feb. 21, 2012) (The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution") (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *Compucredit Corp. v. Greenwood*, 132 S. Ct. 665, at *669; 2012 U.S. LEXIS 575, at *5 (Jan. 10, 2012) (Section 2 of the FAA establishes "a liberal federal policy favoring arbitration agreements"); *KPMG LLP v. Cocchi*, 565 U.S. __, __, 132 S. Ct. 23, 25 (Nov. 7, 2011) (*per curiam*) ("The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'") (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

**App.153**

covered by the FAA must be sent to arbitration for resolution, and that countervailing policy concerns cannot override that mandate.

Like *Concepcion*, three of the recent cases involved the application of the FAA to override state law policy concerns. In *KPMG LLP v. Cocchi*,[81] for example, the Court expressly declared that arbitrable claims must be arbitrated "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."[82] The Court thus vacated and remanded a Florida state court decision refusing to compel arbitration of two claims because two other related claims were not subject to arbitration. In *Marmet Health Care Center v. Brown*,[83] the Court held that pre-dispute arbitration agreements in connection with personal injury and wrongful death claims against nursing homes must be enforced pursuant to the FAA despite a state court ruling that such arbitration agreements were unenforceable as a matter of public policy under West Virginia law. Citing *Concepcion*, the Supreme Court stated that a prohibition on arbitration of a particular type of claim is contrary to the FAA, and the FAA "displaced" the contrary state law.[84] In *Nitro-Lift Technologies, L.L.C. v. Howard*, the Court vacated an Oklahoma court decision holding non-compete agreements unenforceable under Oklahoma law because the employee contract contained valid arbitration agreement and the FAA

---

[81] *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23 (Nov. 7, 2011) (*per curiam*).

[82] *Id.* at 26.

[83] *Marmet Health Care Center v. Brown*, 565 U.S. ___, 133 S. Ct. 500 (Feb. 21, 2012).

[84] *Id.* at 504.

**App.154**

required that the issue be resolved by arbitration. The Court said that the Oklahoma court "must abide by the FAA, which is 'the supreme Law of the Land,' U.S. Const., Art. VI, cl. 2, and by the opinions of this Court interpreting that Law."[85]

The fourth recent decision, *Compucredit Corp. v. Greenwood*,[86] demonstrates that the same analysis applies in the context of federal statutory claims. That case involved the Credit Repair Organizations Act ("CROA"). The Court declared that the FAA governs "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'"[87] *The Court found no contrary congressional command in CROA even though that statute created a "right to sue" for violations of CROA and a "nonwaiver" provision as to any "right."* The Court described the "right to sue" as a term contemplating the ability to bring a claim and not a limitation on the forum where the claim could be brought. The Court held, "Because the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms."[88]

---

[85] *Nitro-Lift*, 568 U.S. ___, ___, 133 S. Ct. 500, 503 (Nov. 26, 2012).

[86] *Compucredit Corp. v. Greenwood*, 565 U.S. ___, 132 S. Ct. 665 (Jan. 10, 2012).

[87] *Id.* at 669 (*quoting Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

[88] *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. Jan. 7, 2013) ("[G]iven the absence of any 'contrary congressional command' from [the Fair Labor Standards Act] that a right to engage in class actions overrides the mandate of the FAA in favor of arbitration, we reject [the assertion that class action waivers are unenforceable with respect to FLSA claims.]"); *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 2012 U.S. Dist. LEXIS 52538, at *26 (N.D. Cal. Apr. 13, 2012) (*Compucredit* demonstrates that the Supreme Court's "statement of the meaning and purposes of the FAA [in *Concepcion*] applies equally in the context of determining which federal statute controls").

*Similarly see King v. Capital One Bank (USA), N.A.*, 2012 U.S. Dist. LEXIS 163562, at *27-34 (W.D. Va. Nov. 15, 2012), where the Court concluded that CROA does not provide a nonwaivable right to bring a class action. The plaintiff in that case had argued that a class action was a "protection" that CROA preserved from waiver. Based on *CompuCredit*, the Court rejected the argument. It said, "[T]he mere fact that the statute mentions a particular concept or procedure does not mean that such concept or procedure is a "right" or "protection" that cannot be waived." *Id.* at *32.

**App.155**

Thus, the Supreme Court has consistently held that the mandate of the FAA cannot be overridden by other policy makers. Only Congress can create an exception to the FAA.[89]

That FINRA's Rules are in issue here instead of state or federal statutes or regulations does not make a difference. FINRA promulgates its Rules pursuant to delegated authority from the SEC and subject to the SEC's oversight and approval, as part of its mission to protect investors and promote market integrity. While the Rules have the force and effect of federal

---

[89] The Hearing Panel recognizes that, despite the Supreme Court decisions discussed above, the interplay of arbitration and class actions remains controversial. The Second Circuit, for example, refused for the third time to enforce a class action waiver after considering briefing on the impact of *Concepcion*, and a sharply divided court of appeals declined to reconsider the panel's decision *en banc*, with both a concurring and a dissenting opinion. *See In re American Express Merchants' Litig., Italian Colors Restaurant v. American Express Trav. Related Servs. Co.*, 667 F.3d 204, 219 (2d Cir. Feb. 1, 2012) ("*Amex III*"), *reh'g en banc denied*, 681 F.3d 139, 2012 U.S. App. LEXIS 10815 (2d Cir. May 29, 2012). The *Amex III* panel held that a class action waiver in an arbitration agreement is not enforceable if the practical effect would be to preclude the plaintiffs' ability to vindicate federal statutory rights. *See also In re Electronic Books Antitrust Litig.*, 2012 U.S. Dist. LEXIS 90190 (S.D.N.Y. June 27, 2012) (arbitration clauses held unenforceable where high cost of pursuing antitrust claims individually was so prohibitive that individuals could not vindicate their rights under the federal antitrust laws). The Supreme Court has granted *certiorari* to review the decision in *AMEX III*. *American Express Co. v. Italian Colors Restaurant*, No. 12-133, 568 U.S. __, 133 S. Ct. 584 (Nov. 9, 2012) (paraphrase of question presented: whether courts may invalidate an arbitration agreement because it does not allow class arbitration of federal statutory claim) (oral arg. scheduled Feb. 27, 2013).

The Hearing Panel doubts that *AMEX III* can stand in the face of *Concepcion* and subsequent Supreme Court decisions, but, in any event, the theory of *AMEX III* would not provide a basis for holding here that judicial class actions must be preserved as a customer option. A holding based on that theory would require a finding that SRO arbitration is insufficient to protect investors' substantive rights, a finding that would fly in the face of decades of judicial, legislative, and regulatory history endorsing the securities industry arbitration system.

regulation and may preempt state law,[90] FINRA's Rules can only be enforced to the extent that

they are not inconsistent with federal law.[91] Federal law includes the FAA. Accordingly,

FINRA's Rules may not be enforced to the extent they are inconsistent with the FAA, unless

*Congress* has created a relevant exception.[92]

### C. Congress Has Created No Exception To The FAA That Would Bar Arbitration Of Schwab Customer Claims Or Require The Availability Of Judicial Class Actions

The critical issue on which this case turns is whether Congress has created an exception

from the FAA either for FINRA's Rules or for the subject matter of those Rules – judicial class

actions in securities disputes between customers and industry members. The Hearing Panel

concludes that Congress has created no such exception.

---

[90] *See Credit Suisse First Boston v. Grunwald*, 400 F.3d 1119, 1128-32 (9th Cir. 2005) (where the Court held that SRO Rules approved by the SEC, including specifically Arbitration Rules, preempt state law when the two are in conflict. *See also McDaniel v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 79975, at *5-7 (N.D. Cal. July 22, 2011) (Securities Exchange Act created a system of self-regulation in which SROs are the primary regulators of securities broker-dealers and use delegated government power to promulgate Rules and enforce compliance); *Heilimann v. Bank of America Corp.*, 2011 U.S. Dist. LEXIS 68155, at *4 (N.D. Cal. 2011) (NYSE Rule may have same preemptive effect as a federal statute or regulation); *Bloemendaal v. Morgan Stanley Smith Barney LLC*, 2011 U.S. Dist. LEXIS 61772, at *22-23 (N.D. Cal. 2011) (SROs have been delegated government power to enforce compliance with both the Exchange Act and ethical standards going beyond those requirements).

[91] *See Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004) (federal regulation cannot do what federal statute forbids); *In re Watson v. Proctor*, 161 F.3d 593, 598 (9th Cir. 1998) ("A federal regulation in conflict with a federal statute is *invalid* as a matter of law.").

[92] Recent developments in the field of labor relations law highlight the need to find a contrary congressional command in order to invalidate an agreement to arbitrate that eliminates class, collective, or representative actions. The NLRB has taken the position that the statute it administers overrides the FAA, but courts have concluded that the National Labor Relations Act does not contain a clear congressional command to override the FAA. *Compare In re D.R. Horton, Inc.*, 2012 NLRB LEXIS 11 (Jan 3, 2012) (on appeal to the Fifth Circuit) (invalidating class action waiver in employer-employee agreement) *with Delock v. Sec. Services USA, Inc.*, 2012 U.S. Dist. LEXIS 107117, at *5-6, 10 (E.D. Ark. Aug. 1, 2012) (noting "unmistakable" trend in the law to enforce arbitration agreements unless "overridden by a contrary congressional command."). *See also Torres v. United Healthcare Services, Inc.*, 2013 U.S. Dist. LEXIS 14200, *24-25 (E.D.N.Y. Feb. 1, 2013) (NLRB's interpretation of FAA is outside its expertise and not entitled to deference); *Noffsinger-Harrison v. LP Spring City, LLC*, 2013 U.S. Dist. LEXIS 16442 (E.D. Tenn. Feb. 7, 2013) (labor relations statute (Norris-LaGuardia Act) did not repeal FAA or render arbitration agreement unenforceable); *Neil C. Andrus v. D.R. Horton, Inc.*, 2012 U.S. Dist. LEXIS 169687, at *21 (D. Nev. Nov. 5, 2012) ("The Federal Arbitration Act ("FAA") requires courts to compel arbitration of any controversy covered by the terms of a valid written agreement to arbitrate."); *Oliveira v. Citicorp North America, Inc.*, 2012 U.S. Dist. LEXIS 69573, at *6-7 (M.D. Fla. May 18, 2012) (collecting cases).

*See also Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 479 (5th Cir. 2002) and *Davis v. Southern Energy Homes Inc.*, 305 F.3d 1268, 1275 (11th Cir. 2002) (finding no congressional intent to except Magnuson-Moss Warranty Act claims from the FAA).

**App.157**

Enforcement has identified nothing in the securities laws that would give FINRA's Rules priority over the FAA. Nor has Enforcement identified any congressional intent to preserve judicial class actions as an option in customer securities claims even where there is a predispute arbitration agreement. To the contrary, judicial precedents point in the opposite direction. The Supreme Court has already held that under the FAA securities claims under the Exchange Act (in *Shearson*) or the Securities Act (in *Rodriguez*) must go to arbitration if they are covered by a predispute arbitration agreement. Furthermore, as made plain in *Concepcion, Marmet*, and other Supreme Court decisions, arbitration is generally favored over judicial class actions as a simpler, more efficient means of resolving disputes. In *CompuCredit* the Court expressly stated, "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."[93]

FINRA's promulgation of a Rule pursuant to SEC approval and oversight that preserves judicial class actions as an option is not the same as a *congressional* command creating an exception to the FAA. Rather, the Rule represents only a determination by FINRA, pursuant to its general authority to promulgate Rules, to make an exception to the FAA. FINRA's general authority to promulgate Rules is not a *congressional* command to promulgate the *particular* Rule carving out an exception to the FAA.

In sum, the Hearing Panel concludes that the FAA requires that Schwab's Waiver be enforced to require customers to go to arbitration and that any FINRA policy determination that judicial class actions should remain available to customers must give way to the FAA's mandate.

---

[93] *Concepcion*, 131 S. Ct. 1740, 1748.

41

**App.158**

## X. THE FEDERAL ARBITRATION ACT DOES NOT BAR FINRA FROM ENFORCING ITS RULES REGARDING THE POWERS OF FINRA ARBITRATORS OR JOINDER AND CONSOLIDATION

The FAA does not specify that arbitrators should have specified powers or that arbitration must follow a particular procedure, although, as noted above, the Supreme Court has expressed the view that class actions are inconsistent with the underlying purpose of the FAA to streamline the resolution of disputes. As the Supreme Court first explained in *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*[94] and later reiterated in *Mastrobuono v. Shearson Lehman Hutton, Inc.*,[95] the FAA does not require that arbitration agreements follow any particular rules or procedures. Rather, it requires that parties arbitrate if they agreed in writing to arbitrate; and it requires the federal courts to send matters to arbitration if those matters are subject to an arbitration agreement.

Once it is clear that a particular dispute falls within the scope of an arbitration agreement, procedural questions regarding how the arbitration should proceed are determined by the arbitrators.[96] The Supreme Court made this point clear in *Howsam v. Dean Witter Reynolds, Inc.*,[97] where it held that interpretation of an NASD Arbitration Rule concerning a six-year eligibility limit was an issue to be determined by the arbitrators, not a court. The Court said, "[P]arties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters."[98] The Court reiterated the point in *Green*

---

[94] *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 479 (1989).

[95] *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

[96] *Dockser v. Schwartzberg*, 433 F.3d 421, 426-27 (4th Cir. 2006). *See also SAL Financial Services, Inc. v. Nugent*, 2007 U.S. Dist. LEXIS 17441 (N.D. Tex. 2007) (interpretation and application of NASD arbitration rules was for NASD arbitration panel).

[97] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).

[98] *Id.* at 86.

**App.159**

*Tree Fin. Corp. v. Bazzle*, where it held that arbitrators should decide whether class arbitration was permitted by the arbitration agreement in issue. The Court said, "The question here – *whether the contracts forbid class arbitration – … concerns neither the validity of the arbitration* clause nor its applicability to the underlying dispute between the parties…. It concerns contract interpretation and arbitration procedures." The Court concluded that that type of question is for the arbitrators to decide.[99]

The lower courts have specifically held that the issue whether to consolidate individual claims is a procedural issue concerning how an arbitration will be conducted.[100] For example, relying on *Howsam*, the Seventh Circuit declared in *Employers Ins. Co. of Wausau v. Century Indemnity Co.*, "[P]rocedural issues are presumptively for the arbitrator to decide. Consolidation is a procedural issue."[101]

Accordingly, nothing in the FAA prohibits FINRA from authorizing arbitrators to consolidate multiple claims or prohibits FINRA from barring members from specifying different procedures that conflict with FINRA Rules.

In fact, consolidation – in contrast to class action procedure – is consistent with the goals of the FAA, because consolidation concerns considerations of efficiency and streamlined resolution of similar issues. Consolidation – unlike class action procedure – does not involve

---

[99] *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003).

[100] *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 587 (3d Cir. 2007).

[101] *Employers Insurance Co. of Wausau v. Century Indemnity Co.*, 443 F.3d 573, 581 (7ᵗʰ Cir. 2006).

**App.160**

complex issues of notice and fairness to absent parties. As the district court in *Markel Int'l Ins. Co. v. Westchester Fire Ins. Co.*,[102] recognized, "[P]rinciples of efficiency strongly favor a single arbitration panel's determination of whether consolidation is appropriate [under the agreements in issue]." The ability of the forum to consolidate when appropriate and to clarify in a consistent way the applicable law contributes to FINRA's ability to perform its regulatory mission and protect investors.

Indeed, it is the highly regulated nature of securities industry arbitration that contributed to the Supreme Court's decision in *Shearson* that securities law claims under the Exchange Act are subject to the FAA. The Court explained that "the mistrust of arbitration that formed the basis" for its earlier jurisprudence on arbitration was "difficult to square with the assessment of arbitration that has prevailed since that time," and that this was "especially so in light of the intervening changes in the regulatory structure of the securities laws."[103] The Court emphasized the SEC's "expansive power to ensure the adequacy of the arbitration procedures employed by the SROs" as a result of 1975 amendments to the Exchange Act.[104] It concluded, "In short, the Commission has broad authority to oversee and to regulate the rules adopted by the SROs relating to customer disputes, including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights."[105] To permit FINRA members like Schwab to write themselves out of FINRA's Rules would undercut the

---

[102] *Markel Int'l Ins. Co. v. Westchester Fire Ins. Co.*, 442 F. Supp. 2d 200, 204 (N.D.N.J. 2006) (consolidation is a procedural issue to be resolved by the arbitrators). *See also Twist v. Arbusto*, 2007 U.S. Dist. LEXIS 42337 (S.D. Ind. 2007) (consolidation is a procedural issue to be resolved by the arbitrators).

[103] *Shearson*, 482 U.S. 220, 233.

[104] *Id.*

[105] *Id.* at 233-234.

44

**App.161**

basis for the decision in *Shearson* that arbitration does not deprive customers of substantive protections under the securities laws.

## XI.  SANCTIONS

There are no specific FINRA Sanction Guidelines ("Sanction Guidelines") applicable here.[106]  Enforcement argues that the Hearing Panel should be mindful of General Principle No. 1 of the Sanction Guidelines,[107] which provides that "sanctions are to remediate misconduct by preventing the recurrence of misconduct, improving overall standards in the industry, and protecting the investing public."[108]  Importantly, a FINRA sanction is intended to "remediate" misconduct, not just by deterring the particular respondent from future misconduct, but by deterring others in the industry from engaging in similar misconduct and improving overall business conduct.  Enforcement argues that the violation is "on a very large scale" because Schwab has inserted the Waiver into nearly seven million customer agreements.[109]  Enforcement also highlights that Schwab's introduction of the Waiver was a deliberate action, rather than accident or inadvertence.[110]  Enforcement initially requested a fine of $10 million in the aggregate, a censure, and an Order requiring Schwab to correct its Waiver to the extent that it violates FINRA's Rules.[111]  In briefing on the appropriate sanction for the violation alleged in

---

[106] FINRA Sanction Guidelines (2011), available at www.finra.org/oho (then follow "Enforcement" hyperlink to "Sanction Guidelines").

[107] Oral Arg. Tr. at p. 51.

[108] Sanction Guidelines, General Principle No. 1, at p. 2.

[109] Enf. Motion at 25-26; Oral Arg. Tr. at 40, 50-51.

[110] Enf. Motion at 26.

[111] Enf. Motion at 28-29.

Cause Three, Enforcement repeated its request for a correction and a censure, but reduced the requested fine to $500,000.[112]

Schwab argues that if a violation is found it does not warrant more than a direction to correct the Waiver. Schwab believes that there has been insufficient notice to members that class-action waivers like the one adopted by Schwab violate FINRA Rules.[113] Schwab also contends that it acted in "good faith" upon an interpretation of FINRA's Rules in light of the Supreme Court's decision in *Concepcion* and subsequent judicial developments.[114] Finally, Schwab asserts that no customers were harmed by its actions in amending its customer agreements.[115]

The Hearing Panel focuses on the precise nature of the violation – an attempt to circumscribe the powers of FINRA arbitrators. With that in mind, the Hearing Panel finds that four factors weigh in favor of a substantial sanction.

*First*, the Hearing Panel rejects Schwab's contention that there has been insufficient notice that it is a violation of FINRA's Rules to attempt to circumscribe the powers of FINRA arbitrators. FINRA's Rules clearly insist on compliance with the Rules, as they may be amended from time to time, and FINRA's Arbitration Rules clearly grant and circumscribe the powers of FINRA arbitrators. Moreover, FINRA plainly gives its arbitrators the final word on whether a matter may go forward on a consolidated basis.

*Second*, Schwab overreached when it attempted to circumscribe the powers of the arbitrators. It introduced language into its customer agreements that directly contradicts

---

[112] Enf. Sanctions Br. at 5-7.

[113] Oral Arg. At 68-69.

[114] Resp. Sanctions Br. at 4.

[115] Resp. Sanctions Br. at 7-8.

46

**App.163**

unambiguous Rules governing the authority of FINRA arbitrators and the procedures for consolidation in particular. This overreaching was unnecessary, even if it was intended only to ensure that no claims would be arbitrated as class actions. FINRA already prohibits the arbitration of class actions in its forum.

*Third*, Schwab may have acted in "good faith" in the sense that it focused on the evolution of Supreme Court jurisprudence relating to judicial class actions when drafting and issuing its Waiver, but it failed to recognize that nothing in that jurisprudence supports the elimination of consolidation as an arbitration procedure. Furthermore, in focusing on the language of class action waivers outside the context of the highly regulated securities industry, Schwab disregarded its particular responsibility to comply with FINRA Rules. While an unregulated entity may draft its arbitration agreements as it pleases, subject only to the FAA and judicial interpretations of that statute, a regulated entity must also look to the rules particularly governing its arbitration agreements.

*Fourth*, it is important to deter Respondent and others from rewriting their arbitration agreements in ways that challenge the authority of FINRA to promulgate Arbitration Rules for the industry as a whole. Compliance with Rules promulgated pursuant to the SEC's detailed oversight in the rulemaking process is essential to FINRA's ability to perform its self-regulatory duties and investor protection mission. Members' customer agreements, including their arbitration agreements, must be consistent with industry-wide requirements.

On balance, the Hearing Panel concludes that both corrective action and a fine of $500,000 are appropriate. The Hearing Panel does not impose a censure because it believes the corrective action and fine to be sufficiently remedial.

**App.164**

## XII. CONCLUSION AND ORDER

The Hearing Panel finds that the remedial purposes of FINRA sanctions require that Schwab be **ORDERED** to do the following: (i) cease using the portion of the Waiver purporting to delimit the authority of the arbitrators and complete the process of removing that language from customer agreements and account applications; (ii) notify in writing all current customers and any former customers who received the Waiver (in language consistent with this decision) that the prior limitation on the powers of arbitrators is not effective; (iii) notify and reiterate to all current customers and any former customers who received the Waiver that Schwab's agreement to arbitrate includes an agreement to arbitrate subject to FINRA Arbitration Rules, as amended from time to time, and, in particular, that consolidation is available in arbitration; (iv) pay a fine of $500,000; and (v) pay the costs of the non-evidentiary hearing. Those costs are $ 1318.25, which include an administrative fee of $750 and the cost of the transcript. These sanctions shall become effective on a date set by FINRA, but not earlier than 30 days after the date this decision becomes the final disciplinary action in this proceeding by FINRA.[116]

Lucinda O. McConathy
Hearing Officer
For the Hearing Panel

Copies to:  Gilbert R. Serota, Esq. (via electronic and first-class mail)
Deborah S. Schlosberg, Esq. (via electronic and first-class mail)
Lowell Haky, Esq. (via electronic and first-class mail)
Thomas B. Lawson, Esq. (via electronic and first class-mail)
Daniel L. Gardner, Esq. (via electronic mail)
David R. Sonnenberg, Esq. (via electronic mail)

---

[116] The Hearing Panel has considered and rejected any arguments of the parties that are inconsistent with this decision.

# Exhibit H

# Regulatory Notice

## 12-28

## Collective Action Claims

### SEC Approves Amendments to Rule 13204 of the Industry Code to Preclude Collective Action Claims from Being Arbitrated Under the Code

**Effective Date: July 9, 2012**

### Executive Summary

The SEC approved amendments to FINRA Rule 13204 of the Code of Arbitration Procedure for Industry Disputes (Industry Code) to preclude collective action claims by employees of FINRA member firms under the Fair Labor Standards Act (FLSA),[1] the Age Discrimination in Employment Act (ADEA)[2] or the Equal Pay Act of 1963 (EPA)[3] from being arbitrated under the Industry Code.[4]

The amendments are effective on July 9, 2012, for any claims that are part of a certified or putative collective action under the FLSA, ADEA or EPA. The text of the amendments is set forth in Attachment A.

Questions concerning this *Notice* should be directed to:

► Kenneth L. Andrichik, Senior Vice President, Chief Counsel and Director of Mediation and Strategy, Dispute Resolution, at (212) 858-3915 or *ken.andrichik@finra.org*; or

► Mignon McLemore, Assistant Chief Counsel, Dispute Resolution, at (202) 728-8151 or *mignon.mclemore@finra.org*.

### Background and Discussion

The Code of Arbitration Procedure for Customer Disputes (Customer Code) and the Industry Code (together, Codes) prohibit a claim that is part of a class action from being arbitrated in FINRA's Dispute Resolution forum.[5] Specifically, the class action rules provide that any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, shall not be arbitrated, unless the party bringing the claim files with FINRA one of the following:

### June 2012

#### Notice Type
► Rule Amendment

#### Suggested Routing
► Compliance
► Legal
► Registered Representatives

#### Key Topics
► Arbitration
► Code of Arbitration Procedure
► Collective Action
► Industry Code

#### Referenced Rules & Notices
► Rule 13204



**App.167** 1

Case 1:13-cv-09605-JTS-HBP Document 79-8 Filed 03/29/13 Page 3 of 6

▶ a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

▶ a notice that the party will not participate in the class action or in any recovery that may result from the class action.[6]

FINRA issued an interpretive letter (FINRA letter) in 1999 that stated that its class action rules should include collective action claims brought under the FLSA and, thus, considered these claims ineligible for arbitration in its forum.[7] Despite that interpretation, a district court decision found that an FLSA collective action is not a class action for purposes of Rule 13204 of the Industry Code and compelled arbitration of the claim in FINRA's dispute resolution forum.[8] FINRA is, therefore, amending Rule 13204 of the Industry Code to preclude expressly collective actions from being arbitrated in its dispute resolution forum.[9]

Under the amendments, Rule 13204(b)(1) provides that collective action claims under the FLSA, the ADEA or the EPA may not be arbitrated under the Code.

Second, Rule 13204(b)(2) states that any claim that involves similarly-situated[10] plaintiffs against the same defendants, such as a court-certified collective action or a putative collective action,[11] or that is ordered by a court for collective action at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action. Thus, under the rule, if an associated person opts in to a collective action, that person would be precluded from arbitrating the same claims in FINRA's arbitration forum.

Third, Rule 13204(b)(3) provides that the director will refer to a panel any dispute as to whether a claim is part of a collective action, unless a party asks the court or other forum hearing the collective action to resolve the dispute within 10 days of receiving notice that the director has decided to refer the dispute to a panel. The rule gives arbitrators the authority to decide disputes about whether a claim is part of a collective action, unless a court or other forum resolves the dispute.

Finally, Rule 13204(b)(4) prohibits a member firm or associated person from enforcing an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until either the collective certification is denied or the group is decertified. This rule clarifies that the existence of a certified or putative collective action nullifies any pre-dispute arbitration agreements with respect to claims involving that collective action. If, however, a court denies a plaintiff's request to certify a collective action or the court decertifies the collective action, the pre-dispute arbitration agreement would be enforceable.

## Effective Date Provisions

The amendments are effective on July 9, 2012, for any claims that are part of a certified or putative collective action under the FLSA, ADEA or EPA.

## Endnotes

1.  *See* 29 U.S.C. § 201 *et seq.*

2.  *See* 29 U.S.C. §§ 621 *et seq.* The relief provisions of the ADEA incorporate Section 16 of the FLSA, which outlines the penalties for violations of the statute, and state that the ADEA shall be enforced by the "powers, remedies and procedures" of the FLSA. *See* 29 U.S.C. § 626(b).

3.  *See* 29 U.S.C. § 206(d). The EPA, which is part of FLSA as amended, is administered and enforced by the United States Equal Employment Opportunity Commission. The relief provisions of the EPA also incorporate Section 16 of the FLSA.

4.  *See* Securities Exchange Act Rel. No. 66774 (April 9, 2012), 77 FR 22374 (April 13, 2012) (Notice of Filing of Amendment No. 1 and Order Granting Accelerated Approval of a Proposed Rule Change as Modified by Amendment No. 1, Amending Rule 13024 of the Code of Arbitration Procedure for Industry Disputes To Preclude Collective Action Claims From Being Arbitrated) (File No. SR-FINRA-2011-075).

5.  *See* Rule 12204 of the Customer Code and Rule 13204 of the Industry Code (class action rules).

6.  In its April 2012 Approval Order, the SEC states that "Rule 13204 of the Industry Code generally provides that any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, shall not be arbitrated." *See supra* note 4 at p. 22374. FINRA notes that, under its class action rules, claims based on the same facts and law and involving the same defendants may be arbitrated in FINRA's forum provided that the party bringing the claims meets certain criteria. *See supra* note 5.

7.  *See, e.g., FINRA Interpretive Letter to Cliff Palefsky, Esq.,* dated Sept. 21, 1999.

8.  *Hugo Gomez et al. v. Brill Securities, Inc. et al.,* No. 10 Civ. 3503, 2010 U.S. Dist. LEXIS 118162 (S.D.N.Y. Nov. 2, 2010); *see also Velez v. Perrin Holden & Davenport Capital Corp., Nelson Braff, Jody Eisenman and Perter Hoffman,* No. 10 Civ. 3735, 2011 U.S. Dist. LEXIS 16678 (S.D.N.Y. Feb. 3, 2011).

9.  The Customer Code would not be amended because, for the FLSA, ADEA or EPA to apply, there must be an employment relationship between an employer and employee. See U.S. Department of Labor, "*What does the Fair Labor Standards Act require?*", elaws—Fair Labor Standards Act Advisor.

10. The FLSA statute uses the term "similarly-situated" to describe the type of plaintiffs who file a collective action claim. *See* 29 U.S.C. § 216(b).

11. Before a collective action is certified, courts often refer to the case as a *putative* collective action.

© 2012 FINRA. All rights reserved. FINRA and other trademarks of the Financial Industry Regulatory Authority, Inc. may not be used without permission. *Regulatory Notices* attempt to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding, the rule language prevails.

## ATTACHMENT A

New language is underlined; deleted language is in brackets.

### Code of Arbitration Procedure for Industry Disputes

**Industry Code**

**13204.  Class Action <u>& Collective Action</u> Claims**

**(a)  Class Actions**

<u>(1)</u>  Class action claims may not be arbitrated under the Code.

<u>(2)</u>  Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

<u>(i)</u>  a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

<u>(ii)</u>  a notice that the party will not participate in the class action or in any recovery that may result from the class action.

<u>(3)</u> The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

<u>(4)</u> A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;
- The class is decertified;
- The member of the certified or putative class is excluded from the class by the court; or
- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

**(b)  Collective Actions**

(1)  Collective action claims under the Fair Labor Standards Act, the Age Discrimination in Employment Act, or the Equal Pay Act of 1963 may not be arbitrated under the Code.

(2)  Any claim that involves plaintiffs who are similarly-situated against the same defendants as in a court-certified collective action or a putative collective action, or that is ordered by a court for collective action at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action.

(3)  The Director will refer to a panel any dispute as to whether a claim is part of a collective action, unless a party asks the court or other forum hearing the collective action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(4)  A member or associated person may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified.

[This] These subparagraphs do[es] not otherwise affect the enforceability of any rights under the Code or any other agreement.

Case 1:11-cv-09605-LTS-HBP Document 79-14 Filed 07/29/14 Page 7 of 7

# Exhibit I



Industry Professionals > Regulation > Guidance > Interpretive Letters

**Fair Labor Standards Act class actions are ineligible for arbitration in the NASD Regulation forum.**

September 21, 1999

Cliff Palefsky, Esq.
National Employment Lawyers Association
c/o McGuinn, Hillsman, and Palefsky
535 Pacific Avenue,
San Francisco, CA 94133

Dear Mr. Palefsky:

This is in response to your letter of June 22, 1999, which was referred to this office from the Office of Dispute Resolution, and our subsequent conversation of July 15, 1999.

In a prior letter sent jointly to George Friedman, Senior Vice President and Director, Office of Dispute Resolution, NASD Regulation, and to Robert Clemente, Director of Arbitration, New York Stock Exchange (NYSE), dated April 16, 1999, you asked that the NASD and NYSE "formally consider and clarify the applicability of the 'class action' exception to class actions brought under the FLSA" (Fair Labor Standards Act). You expressed the view that, even though FLSA actions are "opt in" rather than "opt out" class actions, the policy considerations underlying the class action exception are applicable to these claims as well. You stated that exchanges do not have rules or procedures to handle these complicated representative actions. In addition, you indicated that the statute of limitations on FLSA class claims is not tolled upon the filing of the complaint, but rather, is tolled only after individuals actually opt in. You contended that this enhances the need for expedited notice procedures whereby the employer is compelled to identify the potential class members and to supervise the distribution of appropriate notice.

In his response to you, dated June 15, 1999, Mr. Friedman noted that your question involves NASD Rule 10301(d), which is attached for your reference. Rule 10301(d), adopted in 1992, is based on the Uniform Code of Arbitration. The Uniform Code has been developed and updated over many years by the Securities Industry Conference on Arbitration (SICA), which includes the NASD and the exchanges that offer arbitration forums, as well as representatives of the public and the securities industry (staff of the Securities and Exchange Commission (SEC) attend as non-voting invitees). Rule 3110(f)(6), adopted at the same time, added a corresponding notice to the requirements for predispute arbitration agreements for customers. (Rule 3110(f) does not apply to associated persons.) Mr. Friedman's letter also referred you to the Approval Order issued by the SEC for the above rules, which contained a discussion of the purpose of the class action rules. Exchange Act Release No. 31371 (File No. SR-NASD-92-28) (Oct. 28, 1992).

I have reviewed the above SEC Approval Order and related materials. The NASD's 1992 rule filing indicates that the proposed rule change developed from a suggestion made to all self-regulatory organizations (SROs) in a letter dated July 13, 1988, from the then-Chairman of the SEC, David S. Ruder. Chairman Ruder asked the SROs to consider adopting procedures that would give investors access to the courts in appropriate cases, including class actions. The National Arbitration Committee of the NASD (now known as the National Arbitration and Mediation Committee) initially believed that special rules for class actions were unnecessary in light of the broad discretion that the Code of Arbitration Procedure (Code) gives arbitrators and the Director of Arbitration to defer certain arbitration proceedings to the remedies provided by applicable law. Later, this matter was discussed at meetings of SICA. SICA determined that it would be preferable for each SRO to clarify the treatment of class actions in its forum, and adopted model language in its Uniform Code of Arbitration. The NASD subsequently adopted that language, currently found in Rules 3110(f)(6) and 10301(d).

Rule 10301(d)(1) provides that a claim submitted as a class action is ineligible for arbitration under the Code. This language is broad enough to encompass any type of class action filed in arbitration. Paragraph (d)(2) provides that a claim filed by a member of a class is ineligible for arbitration if it is encompassed in the class action, unless the claimant has elected not to participate in the class action or has withdrawn from the class. Paragraph (d)(2) also

**App.173**

provides that disputes over whether a claim is encompassed by the class action may be referred either to a panel of arbitrators or to the court with jurisdiction over the class action. Paragraph (d)(3) provides that no member or associated person may seek to enforce an arbitration agreement against a party who is part of a class action in court unless the class certification is denied, the class is decertified, the party is excluded from the class, or the party elects not to participate in the class or withdraws from the class.

In its 1992 Approval Order (referenced above), the SEC noted that the judicial system has already developed the procedures to manage class action claims, and that entertaining such claims through arbitration at the NASD would be "difficult, duplicative and wasteful." The Approval Order stated, "The Commission agrees with the NASD's position that, in all cases, class actions are better handled by the courts and that investors should have access to the courts to resolve class actions efficiently."

Although Rule 10301(d) was designed to address investor class actions filed under Rule 23 of the Federal Rules of Civil Procedure, the underlying rationale would also cover other types of class actions. Therefore, FLSA class actions, like class actions under Rule 23, should likewise be considered to be ineligible for arbitration in the NASD Regulation forum.

Please note that the opinions expressed herein are staff opinions only and have not been reviewed or endorsed by the Board of Directors of NASD Regulation, Inc. This letter responds only to the issues you have raised based on the facts as you have described them in your letter, and does not necessarily address any other rule or interpretation of the NASD or all the possible regulatory and legal issues involved.

Very truly yours,

Jean I. Feeney
Assistant General Counsel

Attachment: Excerpt from Code of Arbitration Procedure Regarding Class Actions in Arbitration

Cc:   Linda D. Fienberg
      Alden S. Adkins
      George H. Friedman
      Robert A. Love (SEC)

---

**Excerpt from NASD Code of Arbitration Procedure**
**Regarding Class Actions in Arbitration**

**10301. Required Submission**

* * *

(d) Class Action Claims

   (1) A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

   (2) Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration. However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

   Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action to resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators.

**App.174**

(3) No member or associated person shall seek to enforce any agreement to arbitrate against a customer, other member or person associated with a member who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer, other member or person associated with a member is excluded from the class by the court; or (D) the customer, other member or person associated with a member elects not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

©2013 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.

**App.175**